

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 10, 2014**

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 14-30699-11 |
| BUFFET PARTNERS, L.P., et al., § | |
| § | CHAPTER 11 |
| DEBTORS.[1] § | |
| § | (Joint Administration Requested) |
| § | |

### INTERIM ORDER AUTHORIZING USE OF
### CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363

On February 4, 2014, Debtors Buffet Partners, L.P. and Buffet G.P., Inc. ("Debtors") filed their Motion to Approve Interim and Final Orders (I) Authorizing Use of Cash Collateral and (II) Adequate Protection to the Prepetition Secured lender Pursuant to 11 U.S.C. § 363 (Dkt. No. 10) (the "Motion").[2] The Court finds that the Motion is well-taken and approves the interim use of cash collateral as follows:

---

[1] The Debtors in these chapter 11 cases are Buffet Partners, L.P. and Buffet G.P., Inc.
[2] Unless otherwise defined herein, capitalized terms shall have the same meaning as these given in the Motion.

737351-v8\DALDMS

A. **Loan Documents.**

The Motion describes and defines the Loan Documents under which cash collateral rights are asserted. Under the Loan Documents, Chatham Credit Management III, LLC, not individually, but as agent for Chatham Investment Fund QPIII, LLC and Chatham Investment Fund III, LLC, as administrative agent for the Lenders (as such term is defined in the Loan Documents) ("Chatham") asserts a properly perfected first priority security interest in and lien upon the Pre-Petition Collateral, consisting of substantially all assets of the Debtors, including all rents, profits, and proceeds derived therefrom (the "Cash Collateral") to secure all debt under the Loan Documents.

B. **Pre-Petition Debt**. As of February 4, 2014 (the "Petition Date"), the principal amount of the indebtedness owed by Debtors under the Loan Documents is approximately $39,528,229, exclusive of interest, costs, attorneys' fees, and other amounts chargeable to Debtors under the Loan Documents.

C. **Need for Use of Cash Collateral.** Debtors assert that they require the use of Cash Collateral to continue operating their business. Debtors assert that serious and potentially irreparable harm to Debtors, their creditors and their estates may occur absent authorization for the use of Cash Collateral. Chatham is willing to consent to the use of its Cash Collateral, subject to the terms and conditions outlined herein.

Based on the foregoing facts, the Court approves the interim use of cash collateral as follows:

1. **Grant of Motion.** The Motion is *granted* as hereinafter set forth.

2. **Authority to Use Cash Collateral.**

a. Upon entry of this Interim Order, Debtors may use Cash Collateral for a period of thirty (30) days (the "<u>Interim Period</u>") in accordance with the budget attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>"). With respect to the total expenses listed in the Budget, expenditures of Cash Collateral shall not exceed the amount set forth in the Budget by more than 15% for any line item per month, or in the aggregate, per month (except for utilities, for which Debtors will pay the actual amount due) without further Order of Court or consent of Chatham.

b. Debtors shall not use, sell or expend, directly or indirectly, Cash Collateral or any proceeds, products, or offspring thereof, except as expressly authorized in this Interim Order or any other order of the Bankruptcy Court, after notice and a hearing, allowing such expenditure.

c. Until expended by Debtors, all Cash Collateral shall remain subject to the asserted liens and claims of Chatham under the Loan Documents.

3. **<u>Adequate Protection Granted to Chatham</u>**. During the Interim Period, Chatham shall be entitled to adequate protection as follows:

a. **<u>Adequate Protection Liens</u>**. As adequate protection for the Debtor's use of Cash Collateral or Pre-Petition Collateral, including any diminution resulting from the use of Cash Collateral on or after the Petition Date pursuant to this Interim Order, Chatham is hereby granted a lien (the "<u>Post-Petition Lien</u>") in the Debtors' assets acquired post-petition, including the DIP Bank Accounts, as defined herein (the "<u>Post-Petition Collateral</u>," and together with the Pre-Petition Collateral, the "<u>Collateral</u>") to the same extent, validity, and priority as Chatham's Prepetition Liens to secure all of the debt under the Loan Documents. Upon the entry of this Order, the Post-Petition Lien shall be

3

automatically deemed perfected. Although not required, Chatham is authorized to file and record any instruments or documents necessary to perfect the security interest and liens granted by this Order and any such actions taken by Chatham shall not be deemed a violation of the automatic stay. Nothing in this Order is or shall be considered a determination as to the priority or perfection of any party's prepetition security interest in property of the Debtors. The purpose of this grant is to eliminate the effect of 11 U.S.C. § 552(a) so as to reinstate all after-acquired property provisions of the Loan Documents. No lien in chapter 5 actions is granted by this Interim Order.

  b. Notwithstanding anything to the contrary in this Interim Order or any financing agreements or documents, (a) with respect to the Debtors' non-residential real property leases that are not presently encumbered by valid liens or security interests of Chatham, no liens or encumbrances shall be granted on or extend to such unencumbered real property leases themselves, but rather, any liens granted shall extend only to the proceeds of such real property leases; and (b) upon an event of default, the rights of any of Chatham, or its agents or representatives, to enter onto the Debtors' leased premises to access and/or liquidate any pre-petition or post-petition collateral shall be limited to (i) any such rights agreed to in writing by the applicable landlord prior to entry onto the leased premises, (ii) any rights that Chatham, or its agents or representatives, have under applicable non-bankruptcy law, or (iii) such rights as may be granted by the Bankruptcy Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

  c. **Administrative Priority Claim**. In addition to the liens and security interests granted to Chatham herein, Chatham shall be entitled to an administrative

priority claim under Section 507(b) of the Bankruptcy Code for the amount, if any, by which the protections afforded to Chatham for the Debtors' use of the Collateral proves to be inadequate, and such claim shall have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 364(c), 503(b), 506(c), 507(a), or 726 of the Bankruptcy Code and shall at all times be senior to the rights of the Debtors and any creditors or claimants in this proceeding or any subsequent proceeding under the Bankruptcy Code, with the exception of (a) all statutory fees of the United States Trustee; (b) the allowed attorneys' fees and expenses of the Debtors' counsel; and (c) costs of the Clerk of Court.

4. **Carveout.** Subject to the Carveout (defined herein) and the terms and conditions of Paragraph 9 of this Order, Chatham consents to payment of the fees and expenses of the Debtors' court approved counsel and professionals, to the extent such fees are accrued up to and including the termination of this Order, in each case subject to prior approval pursuant to the terms of a Court ordered interim and final fee procedures order.  If no such interim procedure is established, payment of any amounts under the Carveout (defined herein) will be subject to Court approval following a hearing on at least twenty (20) days notice to each of the Lenders, the U.S. Trustee and other parties-in-interest entitle to notice.  Additionally, Chatham expressly reserves the right to object to any fee application filed in these Cases on any basis.

5. Chatham will allow the Debtors' counsel and the Debtors' other Court approved professionals to retain any retainers held as of the Petition Date as security for payment of authorized and allowed fees and expenses through termination hereof.  Additionally, Chatham shall allow the Debtors' lead counsel, Baker & McKenzie LLP, a $100,000 "carveout" (the

5

737351-v8\DALDMS

"Carveout") of Chatham's Collateral in the event any retainer held by Baker & McKenzie LLP is insufficient to fully secure such firm's outstanding fees and expenses.

6. **Reporting**. Debtors shall file their monthly operating report with the Court each month as required by the U.S. Trustee. Additionally, within five (5) business days upon receiving a request from Chatham, the Debtors shall provide to Chatham such financial reports, in substance and form acceptable to Chatham, substantially similar to all reports required by the Loan Documents and previously provided to Chatham by the Company and its advisors, pre-petition.

7. **Emergency Hearing Available Upon Default.** In the event the Debtors default or violate the terms and conditions of this Order, Chatham shall be entitled to request an emergency hearing to prohibit the Debtors' continued use of Cash Collateral and to enforce Chatham's rights and remedies hereunder.

8. **DIP Account(s).** The Debtors shall sequester and deposit all the Cash Collateral collected, received, generated, or derived from their businesses in one or more segregated bank accounts established and maintained in accordance with Section 363(c)(4) of the Bankruptcy Code (the "DIP Bank Accounts"). Except as otherwise expressly authorized herein, the Debtors shall at all times during the pendency of these bankruptcy cases keep all Cash Collateral generated from their businesses that come into the Debtors' possession, custody, or control, together with all proceeds, products, or profits thereof, separate and distinct from all other property of the Debtors or the estates. Subject to the foregoing sentence and the Carveout, all funds on deposit in the DIP Bank Accounts that constitute Cash Collateral shall at all times be subject to the senior liens and security interests of Chatham as provided herein.

9. **No Further Liens.** The Debtors agree not to create, permit, or assume any lien or security interest, in favor of any person or entity other than Chatham on any property of the Debtors, except (a) any liens or security interests that existed prior to the Petition Date, (b) the liens of Chatham on the Cash Collateral, the DIP Bank Accounts, and the Post-Petition Collateral, or (c) any liens or security interests expressly consented to in advance in writing by Chatham.

10. **Restrictions on use of Cash Collateral.** During the Interim Period, the Debtors shall be authorized to use the Cash Collateral solely for the purpose of funding the ordinary and necessary costs of operating and maintaining its business and limited in kind and dollar amount to the line-item expenses set forth in the Budget.  During the Interim Period, the Debtors shall operate its business within the parameters of the Budget.  All disbursements shall be made in strict compliance with the terms of this Order and the Budget.  Cash Collateral shall not be disbursed or otherwise used by the Debtors for the payment of any expenses not specifically included in the Budget without the prior written approval of Chatham or further order of this Court; provided, however, the Cash Collateral shall not be used to pay any fees or expenses incurred by the Debtors or professionals retained by the Debtors in (i) preventing, hindering or delaying Chatham's enforcement or realization upon any of the Collateral upon the termination of this Order, (ii) using or seeking to use Cash Collateral or selling any other Collateral without Chatham's consent, or (iii) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Pre-Petition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Chatham, or in asserting any claims or causes of action, including, without limitation, any avoidance actions against Chatham.

737351-v8\DALDMS

11. Notwithstanding the expiration of the Debtors' right to use the Cash Collateral hereunder or any default by the Debtors causing an earlier cessation of the use of the Cash Collateral, the rights, security interests, liens, priorities and adequate protection provided to Chatham pursuant to the terms of this Order shall in any and all events continue in full force and effect. Chatham shall be entitled to rely upon the authority granted in this Order, and no priority, lien or security interest granted hereby shall be affected by any objection to or appeal from this Order.

12. The Debtors shall keep all insurance policies required by the Loan Documents in full force and effect at all times. Following the entry of this Order, the Debtors shall provide to Chatham copies of the binders and insurance policies reflecting Chatham as the loss payee under said insurance policies. The Debtors shall timely pay any and all ad valorem taxes coming due with respect to its real property during the Cash Collateral Period and shall provide Chatham with proof of any such payment within five (5) business days after payment is made.

13. The provisions of this Order shall be binding upon the Debtors and their successors and assigns. The rights, remedies, powers and privileges conferred upon Chatham pursuant to this Order shall be in addition to and cumulative with those rights, remedies, powers and privileges contained in the Loan Documents.

14. Notwithstanding the security interests and liens recognized or granted to Chatham under this Order, the Cash Collateral may be used by the Debtors to pay all statutory fees of the United States Trustee.

15. The Debtors are restrained and enjoined from using the Cash Collateral except as specifically provided in this Interim Order and the Budget. In no event shall the Debtors for themselves or their estates assert a claim that any costs or expenses of administration be imposed

upon Chatham or the Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Chatham, and no such consent shall be implied from any action, inaction, or acquiescence by Chatham.  Except for the items specified in paragraph 13 above, the Debtors hereby waive their rights of surcharge under Section 506(c) of the Bankruptcy Code with respect to Chatham or the Collateral.

16. It is understood and agreed that the Debtors shall be in default under this Order: (a) if the Debtors write any check(s) against any of their DIP accounts for expense(s) not set forth in the Budget or otherwise approved in writing by Chatham or authorized by final order of this Court; or (b) if the monthly total of checks written by the Debtors against its DIP Bank Accounts for any line item expense(s), or in the aggregate, exceeds by more than fifteen (15%) percent the total monthly amount budgeted for said expense(s) (or said aggregate amount) as set forth in the Budget.

17. The Debtors' authority to use the Cash Collateral as provided herein shall immediately and automatically terminate upon the earlier of (a) the dismissal or conversion of this bankruptcy case to a Chapter 7; (b) the appointment of a trustee or examiner in this bankruptcy case; (c) the entry of an order granting Chatham relief from the automatic stay provisions of Section 362 of the Bankruptcy Code; (d) the written agreement of Chatham and the Debtors; or (e) thirty (30) days after entry of this Order.  Thereafter, the Debtors' authority to use Cash Collateral may be continued only by further order of the Court or by a written stipulation signed by counsel for Chatham and the Debtors and filed with the Court.  The termination of this Order shall not affect or in any way impair any right, interest or lien granted to Chatham under this Order, or the Carveout.

18. The failure to enforce, at any time, any of the provisions of this Order or to require performance by the other party of any provision of this Order shall in no way be construed to be a waiver of said provision or affect either the validity of this Order or the right of any party to enforce each and every provision of this Order. Chatham reserves all of its rights and remedies under the Loan Documents, at law, and in equity and nothing herein shall be construed to be a waiver by Chatham of any such rights.

19. The terms and conditions for the Debtors' use of the Cash Collateral set forth herein have been negotiated at arms' length for reasonably equivalent value and are fair and reasonable. The parties have acted in good faith in connection with the negotiation of this Order.

20. All of the terms and provisions of this Interim Order, including but not limited to the security interests and liens created and perfected hereby, in the priority established hereby, shall be binding upon the Debtors. The Debtors shall serve a copy of this Order by First Class Mail to the United States Trustee, counsel for Chatham, and the creditors included on the list filed pursuant to Fed.R.Bankr.P. 1007(d) no later than three (3) calendar days after the entry of this Order.

21. **<u>Order Immediately Effective</u>**. Notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise, the effectiveness of this Interim Order shall not be stayed, and this Interim Order shall be immediately effective upon entry. This order may be extended upon agreement of the parties, or by order of this Court, after notice and a hearing. The entry of this Order is without prejudice to Chatham's right to seek such other and further relief as it may deem appropriate.

Pursuant to the above, it is hereby

ORDERED that the Debtor's Motion to Use Cash Collateral is *approved*. It is further

ORDERED that this Interim Order shall expire on February 23, 2014.  It is further

ORDERED that all relief not expressly granted herein is denied.

# # # END OF ORDER # # #

737351-v8\DALDMS

**Buffet Partners, LP**                                                                                            **Exhibit A**
**13 Week Rolling Cash Flow**
**(US$ in 000s)**

| Week ending | Week 1 Forecast 2/11/14 | Week 2 Forecast 2/18/14 | Week 3 Forecast 2/25/14 | Week 4 Forecast 3/4/14 | Total Cumulative |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| Furrs - Store Receipts | 1,543.2 | 1,648.0 | 1,201.1 | 1,815.9 | 6,208.2 |
| Furrs - Catering | 13.6 | 11.7 | 18.9 | 18.8 | 62.9 |
| Dynamic Foods - External Receipts | 217.2 | 162.6 | 257.3 | 207.6 | 844.7 |
| Sales Tax (Furrs Stores) | 124.5 | 132.8 | 97.6 | 146.8 | 501.7 |
| **Total Receipts** | **1,898.6** | **1,955.1** | **1,574.9** | **2,189.0** | **7,617.5** |
| **Operating Disbursements** | | | | | |
| Payroll | 549.9 | 242.0 | 549.9 | 242.0 | 1,583.8 |
| Payroll Taxes | 128.2 | 205.6 | 168.5 | 200.6 | 703.0 |
| Rent | – | – | – | 501.0 | 501.0 |
| Marketing | 75.3 | 75.3 | 75.3 | 75.3 | 301.0 |
| Furr's A/P (corp/utilities/R&M) | 248.0 | 300.0 | 325.0 | 325.0 | 1,198.0 |
| Dynamic A/P (corp/utilities/R&M) | 740.0 | 740.0 | 740.0 | 740.0 | 2,960.0 |
| Real Estate & PP Tax | – | – | 2.1 | – | 2.1 |
| Sales Tax (a) | – | – | – | – | – |
| Insurance Premiums / Claims | 25.0 | 25.0 | 77.0 | 25.0 | 152.0 |
| Bank Fees | – | 19.0 | – | – | 19.0 |
| Capital Lease Payments | 33.0 | – | – | – | 33.0 |
| Utility Deposit (b) | – | 200.0 | – | – | 200.0 |
| Principal Payments | – | – | – | – | – |
| Interest Payments | – | – | – | – | – |
| **Subtotal Operating Disb.** | **1,799.3** | **1,806.9** | **1,937.7** | **2,108.9** | **7,652.8** |
| **Non-Operating Disbursements** | | | | | |
| CAPEX Stores, DF & CT | 30.0 | 30.0 | 30.0 | 30.0 | 120.0 |
| Restructuring Costs © | – | – | – | 64.0 | 64.0 |
| **Subtotal Non-Operating Disb.** | **30.0** | **30.0** | **30.0** | **94.0** | **184.0** |
| **Net Receipts/(Disbursements)** | 69.3 | 118.2 | (392.8) | (13.9) | (219.3) |
| **Beginning Cash Balance** | 491.6 | 560.8 | 679.0 | 286.2 | 491.6 |
| Net Receipts / (Disbursements) | 69.3 | 118.2 | (392.8) | (13.9) | (219.3) |
| **Ending Cash Balance** | **560.8** | **679.0** | **286.2** | **272.3** | **272.3** |

**Notes**
( a ) Post-petition sales tax payments due March 21st.
( b ) $200k estimated adequate assurance deposits - equivalent to 1/2 month usage.
( c ) Restructuring costs represent 80% of estimated professional fees subject to fee procedures order.