John E. Mitchell, SBT # 00797095
Rosa A. Shirley, SBT # 24056313
**BAKER & McKENZIE LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201
Tel:  (214) 978-3000
Fax: (214) 978-3099
Email: john.mitchell@bakermckenzie.com
rosa.shirley@bakermckenzie.com

**PROPOSED ATTORNEYS FOR THE DEBTORS**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-30699-11 |
| | § | |
| **BUFFET PARTNERS, L.P., et al.**[1] | § | **CHAPTER 11** |
| | § | |
| DEBTORS. | § | Jointly Administered |
| | § | |
| | § | (Hearing:  March 4, 2014 at 10:00 am) |

**MOTION FOR ORDER ESTABLISHING PROCEDURES FOR
<u>INTERIM COMPENSATION AND REIMBURSEMENT OF PROFESSIONALS</u>**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OR THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON MARCH 3, 2014, WHICH IS AT LEAST 23 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE DEBTORS PRIOR TO THE DATE AND TIME SET FORTH HEREIN.  IF A RESPONSE IS FILED, A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

---

[1] The Debtors in these chapter 11 cases are Buffet Partners, L.P. and Buffet G.P., Inc.

**MOTION FOR ORDER ESTABLISHING PROCEDURES FOR
INTERIM COMPENSATION AND REIMBURSEMENT OF PROFESSIONALS – Page 1**
736795-v2\DALDMS

**IF A RESPONSE IS FILED, A HEARING WILL BE CONDUCTED ON THE RELIEF REQUESTED HEREIN ON MARCH 4, 2014 AT 10:00 A.M. (PREVAILING CENTRAL TIME) BEFORE THE HONORABLE HARLIN D. HALE, UNITED STATES BANKRUPTCY JUDGE FOR THE NORTHERN DISTRICT OF TEXAS, 1100 COMMERCE STREET, COURTROOM 3, 14TH FLOOR, DALLAS, TEXAS 75242-1496.**

Buffet Partners, L.P. and Buffet G.P., Inc., the above-captioned debtors and debtors-in-possession (the "Debtors") hereby file this *Motion for Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* (the "Motion") pursuant to 11 U.S.C. §§ 105(a) and 331 establishing procedures for interim compensation and reimbursement of expenses for professionals. In support of this Motion, the Debtors respectfully represent as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over this chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

2. On February 4, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), thereby commencing these chapter 11 cases (the "Cases"). The Debtors continue in possession of their property and they are operating and managing their business as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

3. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

## Company History and Overview

4. Headquartered in Plano, Texas, Buffet Partners, L.P., d/b/a Furr's Fresh Buffet ("Furr's," the "Company" or the "Debtor(s)"), is a well-recognized, value oriented restaurant chain with 29 restaurants in Arizona, Arkansas, New Mexico, Oklahoma and Texas, generating in excess of $100 million in revenue. With a rich, 65+ year operating history and strong brand awareness, Furr's operates straight-line and scatter-bar buffet units that feature a wide variety of "all-you-can-eat," "home-cooked," high quality foods served with personalized service at an affordable price ($9.00 average guest check).

5. Furr's provides a compelling price-to-value relationship which results in high average sales per restaurant, relatively low labor costs and attractive unit economic returns. The Company enjoys a unique competitive advantage through its Dynamic Foods division ("Dynamic Foods" or "Dynamic"), a fully integrated food processing, manufacturing, warehousing and distribution operation centrally located in Lubbock, Texas, that services Furr's restaurants and a host of external customers.

6. Furr's is one of the longest-tenured and most recognized restaurant brands in the Southwest. The restaurant was founded in 1946 by Roy Furr, and expanded to approximately 60 locations as a family-owned business for over 35 years. In 1980, it was acquired by Kmart Corporation. Kmart ultimately sold Furr's in a leveraged buy-out which subsequently went public in 1986. Following a take private transaction, the Company entered a period of decline due to its debt burden, culminating in a restructuring and reorganization under chapter 11 in 2003

in Dallas, Texas (*In re Cafeteria Operators, L.P.*, Case No. 03-30179-HDH-11, BANKR. N.D. Tex).

7. Recognizing the strength of the brand, attractive restaurant locations and vertically integrated food processing capabilities, Buffet Partners, L.P. was formed to purchase Furr's in September of 2003. Under Buffet Partners' ownership, management systematically shifted the business to the Furr's Fresh Buffet (scatter-bar) concept while closing underperforming straight-line units. Furr's hired CEO Barry Barron in May, 2013, a seasoned restaurant industry veteran, to oversee the next phase of the Company's growth. Additionally, Furr's has a highly experienced and committed management team with over 160 years of combined restaurant experience and an average of 14 years with Furr's.

## Operations and Financial Performance

8. Today, the Company operates 29 restaurants, of which 12 are scatter-bar concepts and 17 are straight-line concepts, in five states throughout the Southwest. All restaurants are Company owned, and all are assets of Buffet Partners, L.P., including Dynamic Foods. Restaurants are supported by Dynamic Foods, a captive, vertically integrated food processing and distribution operation. Approximately 2100 persons are employed at the restaurants, 182 are employed by Dynamic Foods, and approximately 20 persons are employed at the corporate headquarters in Plano, Texas.

9. Furr's continues to strategically convert its restaurant portfolio to the Furr's Fresh Buffet (scatter-bar) concept that generates over $4 million in average annual unit volume, and higher profit per store. Additionally, Dynamic's sales have nearly doubled since 2009, and with capacity utilization only near 50%, Dynamic and the Company have substantial upside growth opportunities, to service both an increased number of Furr's units as well as external customers.

10. For the year ending December 2013, Furr's total net sales for restaurant operations exceeded $100 million. Dynamic's total net sales for the same period exceeded $59 million, with over $14 million from external customers. Furr's serviced almost 11 million guests in 2013, with an unadjusted EBITDA for 2013 of $2.7 million. In 2012 the Company's EBITDA approximated $5.8 million and guest count approximated 12.8 million. Reduction in sales, EBITDA and guest count are attributed in part to the closure of several stores.

### Assets, Liabilities, & Capital Structure

11. Furr's assets consist primarily of the 29 operating restaurants, each leased from multiple different landlords, and the real estate, personal property, vehicles, and other assets at the Lubbock, Texas, Dynamic Foods facility, and the Plano corporate headquarters. Furr's liabilities consist primarily of $39 million in senior, secured debts of Chatham Capital Partners ("Chatham"), and its affiliated funds, as well as approximately $4 million in trade payables to miscellaneous vendors, suppliers and other parties, and undetermined liabilities to landlords of closed store locations. All of Furr's assets, to include its cash, are pledged to Chatham on a senior, secured basis. Upon belief, the value of the Company's assets, whether valued in a liquidation or as a going concern, are materially below the aggregate amount of the Chatham debt.

### Reasons for Filing Chapter 11

12. Furr's has weathered the macro-economic storm that began in 2008, but the credit constraints resulting from the financial crisis impacted the Company's ability to finance growth and improvements in process, and subjected the Debtors to higher interest and leasing rates. Further, commodity and transportation prices increased, and the recessionary climate limited the Company's ability to raise prices to cover increasing costs, and impacted guest counts. Certain

locations began to suffer and the Company became increasingly undercapitalized. One of the most successful cash flow locations was lost in an eminent domain proceeding, and a major competitor began direct attacks on the Company. Specific locations subject to these factors began to lose money. The Company did not act to close stores quickly while assessing losses and duration of the recession, wanting to preserve jobs, investment and store locations. The economic climate and onerous lease terms however could not sustain continued operation of stores producing losses, and these stores were closed.

13. Furr's has begun implementation of a footprint rationalization strategy to streamline its restaurant portfolio and focus on its strongest locations, while maintaining strong revenue of $113 million for the year ending 2013. In implementing this strategy, net store closures of 16 units in the last three years resulted in a decrease in revenues of approximately $19.6 million. The decline was offset partially by new, high revenue Furr's Fresh Buffet units and strong external sales at Dynamic. While gross margin remained flat at around 60%, EBITDA decreased approximately $3.0 million from $5.8 million to $2.7 million in 2013 due primarily to the effect of the store closures, a drop in guest count of almost 2 million, increased G&A expense, deferred maintenance, and continuing economic uncertainty.

14. Overall liquidity was impacted by capital spending on new stores in support of expansion of the scatter-line buffet concept and needed maintenance that had been deferred on older stores. In December the Texas market suffered an ice storm and unusually cold weather, causing a significant loss in guest count and hundreds of thousands of dollars in lost profit. This was detrimental to already tenuous liquidity, and with no available line of credit, the Debtor was unable to continue to weather the financial storm, eventually leading to the chapter 11 filing.

15. Under the leadership of Barry Barron, new operating initiatives and cost saving programs are positively impacting sales and operating profits at the restaurants. The Company is developing and implementing strategies to buy more efficiently, and improve credit and terms with its vendor base. Dynamic Foods external sales continue to be strong and the business is actively pursuing several opportunities with new customers.

16. On December 31, 2013, the Company decided to retain Bridgepoint Consulting, LLC ("Bridgepoint") as financial advisor, to assist the Company with cash management, restructuring analysis and other similar financial advisory services. While Bridgepoint's expertise in these areas greatly improved the Company's cash management, the ongoing liabilities of the Company were deemed unsustainable with the current diminished cash flow and lack of vendor credit. Accordingly, on February 4, 2014, the Company commenced these proceedings to afford it an opportunity to restructure its affairs.

17. Furr's believes that the core, operating business is sustainable and will be successful over the long term, so long as it has the ability to restructure its balance sheet and de-lever the Company.

### III.
### RELIEF REQUESTED

18. By this Motion, the Debtors seek entry of an order establishing and approving certain procedures for interim compensation and reimbursement of expenses for professionals retained by the Debtors and any Committee (defined below), if one is appointed.

19. Pursuant to section 331 of the Bankruptcy Code, all professionals are entitled to submit applications for interim compensation and reimbursement of expenses every one hundred

and twenty (120) days, or more often if permitted by the Court.[2] In addition, section 105(a) of the Bankruptcy Code provides "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20. The Debtors request that this Court enter an order establishing certain interim compensation and expense reimbursement procedures for the professionals retained in these cases by the Debtors and the official committee of unsecured creditors when, and if, formed (the "Committee") (individually, a "Professional" or collectively, the "Professionals"). Briefly stated, the requested procedures would require presentation (but not filing) of a detailed statement of services rendered and expenses incurred by each Professional for the prior month ("Monthly Statement") to the Debtors, counsel for the Debtors, counsel for the Committee, counsel to secured creditor Chatham Capital, and the Office of the United States Trustee (the "UST"). If no objection is timely made to the Monthly Statement, the Professional would be entitled to an interim payment (the "Interim Compensation Payments"), of eighty percent (80%) of requested fees and one-hundred percent (100%) of requested expenses, subject to final approval by the Court.

21. The Debtors propose that the monthly payment of compensation and reimbursement of expenses of the Professionals be structured as follows:

    a. On or before the twentieth (20th) day of each month following the month for which compensation and reimbursement of expenses is sought, each Professional shall submit a monthly statement that

---

[2] Section 331 of the Bankruptcy Code provides, in relevant part, as follows:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.

11 U.S.C. § 331.

       contains (i) a description of the services rendered, (ii) the time spent, (iii) the hourly rates charged, and (iv) the name of the attorney, accountant, other professional or paraprofessional performing the work (the "<u>Monthly Statement</u>") to the UST, the Debtors, counsel for the Debtors, counsel for Chatham Capital and counsel for any official committee (the "<u>Notice Parties</u>"). The Monthly Statement need not be filed with the Court.

b.    Each such recipient shall have until ten (10) business days from receipt of the Monthly Statement to object to the requested fees (the "<u>Objection Deadline</u>"). Except as to that portion of a Monthly Statement that is the subject of a Notice of Objection as provided in paragraph (d) below, within three (3) business days following the Objection Deadline, the Debtors shall pay an amount equal to 80% of all fees and 100% of all expenses set forth in the Monthly Statement (the "<u>Interim Compensation Payments</u>").

c.    If any of the Notice Parties determines that the compensation or reimbursement sought in a particular Monthly Statement is inappropriate or unreasonable, or that the numbers and calculations are incorrect, such Notice Party shall, on or before the Objection Deadline, file with this Court and serve on (i) the Professional whose statement is objected to, and (ii) except to the extent duplicative of the foregoing clause, the other Notice Parties, a Notice of Objection to the Monthly Statement (the "<u>Notice of Objection</u>"), with a declaration setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting party and the Professional whose statement is objected to shall confer and attempt to reach an agreement regarding the correct payment to be made. If an agreement cannot be reached, or if no conference takes place, the Professional whose Monthly Statement is the subject of an objection shall have the option of (i) filing a motion with the Court outlining the basis for the objection and seeking an interim ruling from the Court and requesting authorization for payment, or (ii) foregoing payment with respect to the disputed amount until the next fee application hearing, at which time, this Court shall consider and dispose of the objection if payment of the disputed amount is requested. Within three (3) business days following entry of an Order resolving an objection to a Monthly Statement, the Debtors shall pay any outstanding portion of the fees and expenses authorized for payment by such Order.

d.    The existence of an application or a Court order that payment of compensation or reimbursement of expenses was improper as to a particular statement shall not disqualify a Professional from the

   future payment of compensation or reimbursement of expenses as set forth above.

e. Neither the payment of, nor the failure to object, in whole or in part, to the payment of Interim Compensation Payments as provided herein shall bind any party in interest or the Court with respect to the allowance of formal fee applications for compensation and reimbursement of expenses as to any such Professionals.

## IV.
## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an Order granting the relief requested herein and awarding the Debtors such other and further relief that this Court deems just and proper.

Dated: February 7, 2014    Respectfully submitted,

              **BAKER & McKENZIE LLP**
              Trammell Crow Center
              2001 Ross Avenue, Suite 2300
              Dallas, Texas 75201
              Tel: (214) 978-3000
              Fax: (214) 978-3099
              Emails: john.mitchell@bakermckenzie.com
                   rosa.shirley@bakermckenzie.com

              By: */s/ John E. Mitchell*
                 John E. Mitchell, SBT # 00797095
                 Rosa A. Shirley, SBT #24056313

              **PROPOSED ATTORNEYS**
              **FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

   This is to certify that on February 7, 2014, a copy of the foregoing document was served on the parties registered to receive electronic notification via the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, and on those parties on the Master Service List.

                  */s/ Rosa A. Shirley*
                   Rosa A. Shirley