**ROBERT YAQUINTO, JR.**
**SBN 22115750**
**SHERMAN & YAQUINTO, LLP**
**509 N. MONTCLAIR AVE.**
**DALLAS,TEXAS 75208**
**TELEPHONE 214 942 5502**
**FACSIMILE 214 946 7601**

**KATE ELLIS, ESQ.**
**MCCARRON & DIESS**
**4530 WISCONSIN AVENUE, N.W., SUITE 301**
**WASHINGTON, DC  20016**
**(202 364-0400   FAX (202) 364-2731**
*PRO HAC VICE TO BE FILED*

**ATTORNEYS FOR PACA CREDITORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **In re:** | **CASE NO. 14-30699-11** |
| **BUFFET PARTNERS, L.P., et al.** | **CHAPTER 11** |
| **Debtors.** | **(Jointly Administered)** |

**OMNIBUS OBJECTION OF PACA CREDITORS TO (A) DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER AND (B) DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 1107(a) AND 7 U.S.C. § 499a *ET SEQ.* TO ESTABLISH CRITICAL VENDOR AND PACA VENDOR PAYMENT PROCEDURES**

COME NOW, Food Services of America, Inc., Go Fresh Produce, Inc., Hardies Fruit and Vegetable Company Houston, LP, Hardies Fruit and Vegetable Company South LP, Hardies Fruit and Vegetable Company, LP, Loffredo Fresh Produce Co., Inc., Potato Specialty Co., Segovias Distributing, Inc., and Stern Produce Company, Inc. (collectively, the "PACA Creditors"), through undersigned counsel, and hereby file their Omnibus Objection to the relief requested in the following motions: Debtors' Emergency Motion for Interim and Final Orders (I)

Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B), and (II) Granting Adequate Protection to the Prepetition Secured Lender (the "Cash Collateral Motion") [Doc. 10]; and Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105(a) and 1107(a) and 7 U.S.C. § 499a *et seq.* to Establish Critical Vendor and PACA Vendor Payment Procedures (the "PACA Motion") [Doc. 8]. In support of their Omnibus Objection, PACA Creditors state as follows:

## BACKGROUND

1. On February 4, 2014 (the "Petition Date"), Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Bankruptcy Court. Debtors are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. On February 4, 2014, Debtors filed their Cash Collateral Motion and PACA Motion, both of which were granted on an interim basis on February 10, 2014. *See* Interim Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 ("Interim Cash Collateral Order") [Doc. 55] and Interim Order Pursuant to 11 U.S.C. §§ 105(a) and 1107(a) and 7 U.S.C. § 499a et seq. to Establish Critical Vendor and PACA Vendor Payment Procedures ("Interim PACA Order") [Doc. 52].

3. Prior to the Petition Date, PACA Creditors supplied Debtors with perishable agricultural commodities ("produce") having an aggregate value of $218,683.43, all of which was accepted by Debtors and remains due and owing, as follows:

| PACA Creditor | PACA License No. | Total Principal PACA Amount Due | Exhibit |
|---|---|---|---|
| Food Services of America, Inc. | 19084418 | $ 3,471.04 | 1 |
| Go Fresh Produce, Inc. | 20021556 | $ 21,132.19 | 2 |
| Hardies Fruit and Vegetable Company Houston, LP | 20100903 | $ 6,828.79 | 3 |
| Hardies Fruit and Vegetable Company South LP | 20061060 | $ 35,308.98 | 4 |
| Hardies Fruit and Vegetable Company, LP | 20070038 | $ 50,163.96 | 5 |
| Loffredo Fresh Produce Co., Inc. | 19741494 | $ 2,444.41 | 6 |
| Potato Specialty Co. | 19821875 | $ 46,585.80 | 7 |
| Segovias Distributing, Inc. | 20010272 | $ 47,265.01 | 8 |
| Stern Produce Company, Inc. | 19750817 | $ 5,483.25 | 9 |

Statements of Account and Invoices for each PACA Creditor are attached hereto as Exhibits 1-9.[1] PACA Creditors remain unpaid for this prepetition balance. PACA Creditors are PACA licensees holding the license numbers reflected above. PACA Creditors preserved their rights as beneficiaries of the statutory trust created under the Perishable Agricultural Commodities Act of 1930, as amended 7 U.S.C. §499e(c) ("PACA") by placing the language on their invoices as allowed by 7 U.S.C. §499e(c)(4).[2] *See* Invoices attached as Exhibits 1-9.

---

[1] Due to the volume of invoices and the short time-frame for filing of this Omnibus Objection, representative sample copies of invoices are provided for Potato Specialty Co. and Segovia's Distributing, Inc.

[2] Debtors incorrectly assert that a produce seller must file a notice of intent to preserve trust benefits with the Secretary of Agriculture. PACA Motion ¶ 24. PACA was amended in 1995 to allow a produce seller which is licensed under the PACA to use its ordinary and usual invoice to provide notice of its intent to preserve the trust. It is not necessary to file any notice with the Secretary of Agriculture. The invoice must contain the language set out in 7 U.S.C. § 499e(c)(4). *See In re Kelly Food Products, Inc.*, 204 B.R. at 20. Here, PACA Creditors utilized this "invoice method" to preserve their trust rights.

## I.     SUMMARY OF OBJECTIONS

4.     PACA Creditors object to the relief requested in Debtors' Cash Collateral Motion and PACA Motion, and granted in the interim orders thereon, on the grounds that such relief violates the trust provisions of PACA and is prejudicial to their rights under the PACA trust. Neither Motion, nor the Interim Orders thereon, provide adequate protection for the PACA Creditors' interests.

5.     In the Cash Collateral Motion and Interim Cash Collateral Order, there is no adequate protection given to the PACA Creditors for the diminution of PACA trust assets while cash collateral, which is presumed to be a PACA trust asset, is being used to fund ongoing operations. Debtors are using PACA trust assets to continue operations and pay professionals, but will not guarantee that there will be sufficient PACA trust funds available to pay PACA Creditors. The trust interests of PACA Creditors must be preserved and protected by segregation of assets equal to the total amount of the prepetition PACA trust claims owed by Debtors.

6.     In the PACA Motion and Interim PACA Order, payment of trust funds to trust creditors would be contingent upon Debtors deciding to do so in their "business judgment," and on the trust creditor continuing to provide credit to Debtors under terms of at least 30 days from the date of invoice. Because Debtors are in possession of trust funds, they must be required to turn those funds over to their trust beneficiaries without such contingencies or demands. In addition, there is no timeline provided for payment of trust funds, much of which are already past due. Debtors have already violated the prompt payment provision of PACA, and seek court authority to continue to do so.

## II. ARGUMENT

### A. PACA Creates a Statutory Trust for the Benefit of Sellers of Produce.

7. PACA Creditors supplied Debtors, pre-petition, with wholesale quantities of produce worth the aggregate amount of $218,683.43. This sum remains outstanding despite Debtors' receipt and acceptance of the produce. Debtors are required by PACA, a federal statute co-equal with the Bankruptcy Code, to pay promptly for produce and to maintain sufficient assets in trust until full payment is made to all of its PACA trust beneficiaries, even in the event of the filing of bankruptcy. 49 Fed. Reg. at 45738. The rights of the PACA trust beneficiaries to assets impressed with the PACA trust are superior to the rights of Debtors and their secured creditors. 7 U.S.C. § 499e(c)(1); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505, 514 (Bankr. E.D. Penn. 1987). In fact, PACA trust assets are not considered part of the bankruptcy estate. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2nd Cir. 1996); 11 U.S.C. § 541(d).

8. The PACA trust provision provides that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *see also In re Kornblum & Co.*, 81 F.3d at 284; *Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993). "It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a *priority* status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and would be contrary to the

language of PACA and its accompanying regulations." *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483, 488 (2nd Cir. 2001).

9. The PACA was enacted in 1930 to encourage fair trading in the marketing of produce and to prevent unfair and fraudulent practices in an industry peculiarly susceptible to such practices. See, H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 <u>U.S. Code Cong & Admin News</u> 405, 406. In the early 1980's Congress recognized a significant payment problem which had increased in recent years. *Id.*, p. 406. The USDA estimated that an additional ten percent (10%) was added to the consumer's purchase price of fruits and vegetables to make up the losses due to nonpayment for produce. *Id.*, p. 412. In view of this problem, Congress amended the PACA in 1984 by adding Section 5(c), 7 U.S.C. § 499e(c), "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *Id.*, p. 406.

10. To achieve this purpose, the amendment established a statutory trust under which a receiver of produce holds as a fiduciary its produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables of proceeds from the sale thereof, and any assets purchased or co-mingled with such proceeds (the "PACA Trust Assets"), until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *In re Kornblum & Co., Inc.*, 81 F.3d 280; *Sanzone-Palmisano Company*, 986 F.2d 1010; and *Frio Ice, S.A.*, 918 F.2d 154. The trust provision is "a self-help tool that will enable (suppliers) to protect themselves against the abnormal risk of losses resulting from slow-pay and non-pay practices by buyers and receivers of fruits and vegetables." 49 F.R. 45736, Nov. 20, 1984. (See also *Frio Ice, S.A.*, 918 F.2d at 156 ["In the early 1980s, Congress determined that the increase in non-payment and delinquent

payment by produce dealers threatened the financial stability of produce growers."]) Thus, the goal of the law is to assure payment to produce suppliers from the proceeds of their produce.

11. Congress explained in the statute itself that the main roadblock to this goal was the diversion of produce proceeds to secured lenders. The statute's first clause states that secured financing arrangements in which produce proceeds are used as security and diverted from the suppliers to lenders are against the public interest and a burden on commerce and that the purpose of this law is to remedy this burden on commerce. 7 U.S.C. § 499e(c)(1).

12. Congress also specifically directed that the failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(e)(1). Dissipation of trust assets is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

13. Subsection 2 of §499e(c), defines the corpus of the trust as all produce including all <u>inventories of food or other produces</u> derived from produce, and all receivables or <u>proceeds from the sale of produce or its products</u>. 7 U.S.C. §499e(c)(2) (emphases added). The trust also extends to all inventory of produce a buyer obtained with a commingled account, *Sanzone-Palmisano Company*, 986 F.2d 1010, and to any other assets acquired with PACA trust funds. *In re Kornblum*, 81 F.3d 280; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990). Thus, in the present case, the assets Debtors seek to use as cash collateral, namely

"substantially all assets of the Debtors, including all rents, profits, and proceeds derived therefrom," are clearly impressed with the PACA trust. Interim Cash Collateral Order, p. 2.

14. The Regulations provide that "[i]f a buyer or receiver declares bankruptcy. . . , trust assets are not to be considered part of the estate to be distributed to other Creditors or sold unless all trust beneficiaries have been paid." 49 Fed. Reg. at 45738. There is no question that PACA trust assets are not property of the bankrupt's estate and must be set aside for distribution to trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 48 B.R. 926 (Bankr. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D.Cal. 1988); see also 11 U.S.C. § 541(d) (property in which debtor holds legal title, but not an equitable interest, does not become part of the estate).

15. Furthermore, PACA Creditors are entitled to immediate turnover of trust funds upon the commencement of the bankruptcy. *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D.Pa 1987); *In re Fresh Approach*, 51 B.R. 412 (Bankr. N.D.Tex. 1985). Unpaid produce suppliers are entitled to immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D.Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D.Fla. 1989), or by immediate payment. *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Debtors required to immediately pay trust assets to the PACA trust creditors). Accordingly, as PACA trust

beneficiaries, PACA Creditors are lawfully entitled to immediate turnover of their PACA trust assets. *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505; and *In re Fresh Approach, Inc.*, 51 B.R. 412.

### B. The Relief Requested in the Cash Collateral Motion Violates PACA.

16. Under PACA, a receiver of produce must hold its produce-derived assets in trust as a fiduciary until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *In re Kornblum & Co.*, 81 F.3d at 284; *Sanzone-Palmisano Co.,* 986 F.2d at 1012. In addition, under common law trust principles, the trust extends to any other assets acquired from a commingled account. *Sanzone-Palmisano Co.,* 986 F.2d at 1012*; In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990). Debtors contend that their secured lenders, Chatham Credit Management III, LLC, as agent for Chatham Investment Fund QPIII, LLC and Chatham Investment Fund III, LLC, as administrative agent for Debtors' lenders ("Chatham") have a first security interest in and lien on substantially all assets of the Debtors. The Cash Collateral Motion proposes that Chatham be granted adequate protection in the form of a post-petition lien on all of Debtors' assets acquired post-petition and all of Debtors' pre-petition assets. In addition, the Cash Collateral Motion extends an administrative priority claim to Chatham which would be senior to the rights of Debtors and their creditors, with the exception of a carve-out for U.S. Trustee fees, costs of the Clerk of the Court, and allowed attorneys' fees and expenses of Debtors' counsel.

17. However, the proposed adequate protection for Chatham's violates PACA because all of Debtors' assets are impressed with the PACA trust, absent evidence to the contrary. *See In re Kornblum & Co.*, 81 F.3d at 287 (Party challenging the trust has the burden of proving either: (1) no PACA trust existed when the disputed assets were acquired; (2) even

though a PACA trust existed at that time, the assets were not acquired with trust assets; or (3) although a PACA trust existed when the assets were acquired, and the assets were acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein). Debtors improperly propose to give Chatham a first priority lien in assets that Debtors and/or Chatham have failed to establish fall outside the scope of the PACA trust, which is a violation of the express provision of PACA to ensure that trust creditors are paid ahead of secured lenders. 7 U.S.C. § 499e(c)(1).

18. Further, while the Cash Collateral Motion addresses how Chatham will be provided with adequate protection, Debtors fail to provide adequate protection for its PACA trust creditors. The Cash Collateral Motion and Interim Order do not state how or when the PACA trust claims will be paid. Indeed, none of the monies in Debtors' proposed budget [Doc. 27] are earmarked for payment of PACA trust claims. Compounding the impropriety of the relief requested by Debtors is their inclusion of a professional fee "carve out" for Debtors' counsel and professionals. However, such amounts cannot be paid while PACA creditors are unpaid. *See C.H. Robinson*, 239 F.3d at 488 (payment to other creditors, including to PACA debtor's counsel, prior to payment to PACA trust creditors is not permitted under PACA).

19. In essence, Debtors are requesting that they be permitted to keep dissipating trust assets through their continued operations, with no provision made for payment of the pre-petition PACA trust debt. This is precisely the kind of risk that Congress decreed produce suppliers would not have to assume by enacting the trust provision of PACA. It is contrary to federal law to reorganize using PACA trust assets. Such trust assets must be segregated and "freely available" to satisfy sellers of produce.

C. *The Relief Requested in the PACA Motion Does not Adequately Provide Payment for Trust Claims.*

20.    In their PACA Motion, Debtors acknowledge that they are PACA trustees and that the claims of unpaid PACA creditors are entitled to a "superiority" status. PACA Motion ¶ 40. However, the relief requested in the PACA Motion does not ensure that Debtors' *bona fide* PACA trust creditors are actually paid. Nowhere in the PACA Motion or the Interim Order do the Debtors set out how or when PACA creditors will be paid. As addressed above, the budget filed by Debtors does not include any funds for payment of pre-petition PACA trust claims. Instead, while acknowledging their duties as PACA trustees, Debtors allege that they will be held "hostage" by the PACA creditors demanding payment of their prepetition claims. PACA Motion ¶ 40. The proposed PACA Order states that PACA claims will be paid to the extent an entity provides adequate written notice to Debtors, without setting out how such notice should be provided. In addition, Debtors state they will only pay PACA claims to the extent doing so is, in Debtors' business judgment, in the best interests of their estates. Further, Debtors propose that payment of trust claims will be conditioned on the PACA creditor agreeing to continue to provide "Customary Trade Terms" of not less than 30 days from the date of invoice.

21.    Payment of trust funds to *bona fide* trust beneficiaries cannot and should not be subject to conditions. This provision would cause produce sellers to waive their trust rights. The "prompt payment" provision of PACA states that credit can be extended only for 30 days from the date of <u>delivery</u> of the produce. 7 C.F.R. § 46.2(aa)(5). In some circumstances, a produce seller may deliver produce on one day, and then invoice the buyer on a subsequent day. Debtors' proposal of mandatory payment terms of 30 days from the <u>invoice</u> date may result in an extension of credit beyond this maximum time frame allowed by PACA, and therefore waive a seller's trust rights.

22. In addition, the proposed PACA Order provides that any entity provided with a copy of the PACA Order is "deemed on notice" that a refusal to provide goods postpetition because of Debtors' failure to pay prepetition debt, including produce subject to the PACA trust, despite assurance in the form of deposit or prepayment that funds will be available to pay for postpetition goods, will be considered a "willful violation of Section 362(a)(6)" of the Bankruptcy Code. Essentially, the PACA Order would require suppliers to continue to supply product to Debtors on credit. (PACA Creditors note that this provision does not appear in the Interim PACA Order.)

23. The Interim PACA Order allows Debtors to continue to violate the statute and continue to cause the very harms Congress intended to prevent by unlawfully delaying payment of PACA trust assets and using trust assets to reorganize instead of paying trust creditors. The funds necessary to satisfy Debtors' PACA obligations are clearly not freely available, and will be further dissipated through the relief granted in the Interim Cash Collateral Order and the Interim PACA Order. The relief requested by Debtors is a clear violation of PACA, 7 U.S.C. § 499e(c)(1). If the Debtors are authorized to use PACA Trust Assets, PACA Creditors are entitled to adequate protection of their statutory trust interests. PACA Creditors object to any final order that does not provide for adequate protection of their PACA trust interests.

### III. RELIEF REQUESTED

24. Debtors must be required to demonstrate how they will adequately protect the interests of their PACA creditors. *See* 11 U.S.C. §363(o). PACA Creditors request that Debtors be required to *immediately* set aside sufficient monies to adequately protect PACA Creditors, and other similarly situated PACA trust beneficiaries, in a segregated account to replace the PACA

Trust Assets Debtors have already dissipated and ensure sufficient funds are available to pay Debtors' PACA trust creditors.[3] The propriety of this remedy is demonstrated by the Order issued by the United States Bankruptcy Court for the District of Delaware in the case of *In re Fleming Companies, Inc., et al*, Case No. 03-10945 (MFW), wherein the Court granted the same relief that PACA Creditors are seeking herein, and required the Debtors to set aside $26 million for the benefit of the Debtors' PACA Creditors which were granted a replacement lien in the final financing order.  Similarly, the United States Bankruptcy Court for the Southern District of New York granted the same relief and required the Debtors to set aside $30 million for the benefit of the Debtors' PACA Creditors in the case of *In re Winn Dixie Stores, Inc., et al.*, Case No. 05-11063-RDD (subsequently transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division).  The adequate protection requested in this case is considerably less, but just as vital to protect the interests of PACA Creditors.

25.     Anything less than an actual segregation and timely payment of PACA trust assets contravenes the statutory and case law on this issue, and frustrates Congress' intent that PACA beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy.  Failure to do so will likely lead to the PACA trust creditors being left with no PACA Trust Assets, no means of securing payment and no other adequate remedy.

---

[3] PACA Creditors are entitled to payment of the full amount due under the PACA trust, which is the principal amount their PACA claims, plus interest and attorneys' fees as "sums owing in connection" with the PACA trust debt.  See *Coosemans Specialties, Inc. v. Garguilo*, 485 F.3d 701, 709 (2d Cir. 2007).

IV.    CONCLUSION

26.    For the foregoing reasons, PACA Creditors respectfully request that the Debtors be required to segregate sufficient funds to pay their PACA trust creditors and be directed to promptly pay their prepetition PACA trust debt, regardless of the ongoing credit extended by PACA Creditors.

Dated: February 14th, 2014.

                        Respectfully submitted,

                        SHERMAN & YAQUINTO, LLP

                    By:  /s/ Robert Yaquinto, Jr.
                        Robert Yaquinto, Jr.
                        509 N. Montclair Avenue
                        Dallas, Texas  75208-5498
                        (214) 942-5502
                        (214) 946-7601 – fax
                        rob@syllp.com

                        and

                        MCCARRON & DIESS

                        Kate Ellis, Esq.
                        4530 Wisconsin Avenue, N.W., Suite 301
                        Washington, DC  20016
                        (202 364-0400   fax (202) 364-2731
                        *Pro Hac Vice Motion to be Filed*
                        **ATTORNEYS FOR PACA CREDITORS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the  14th  day of February, 2014, a copy of the foregoing Omnibus Objection to the relief requested in the following motions: Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B), and (II) Granting Adequate Protection to the Prepetition Secured Lender (the "Cash Collateral Motion") [Doc. 10]; and Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105(a) and 1107(a) and 7 U.S.C. § 499a *et seq.* to Establish Critical Vendor and PACA Vendor Payment Procedures, was served by ECF or by U.S. mail, postage prepaid, to: (i) Debtors (ii) the Office of the United States Trustee; (iii) the Debtors' secured creditor, (iv) those parties appearing on the consolidated list of the twenty largest unsecured creditors of the Debtors; and (v) those parties who have filed and served on the Debtors a notice of appearance and request for service of documents in compliance with Fed. R. Bankr. P. 2002.

                                                        By:  /s/ Robert Yaquinto, Jr.
                                                              Robert Yaquinto, Jr.

| | | |
|---|---|---|
| Office of the U.S. Trustee<br>1100 Commerce Street<br>Room 976<br>Dallas, TX 75242 | Buffet Partners, LP.<br>2701 E. Plano Parkway, Suite 200<br>Plano, TX 75074 | John E. Mitchell<br>Baker & McKenzie LLP<br>2001 Ross Avenue, Suite 2300<br>Dallas, TX 75201 |
| Rosa A. Shirley<br>Baker & McKenzie LLP<br>2001 Ross Avenue, Suite 2300<br>Dallas, TX 75201 | Kevin M. Lippman<br>Munsch, Hardt, Kopf & Harr, P.C.<br>500 N. Akard Street., Suite 3800<br>Dallas, TX 75201-6659 | Deborah M. Perry<br>Munsch, Hardt, Kopf & Harr, P.C.<br>500 N. Akard Street., Suite 3800<br>Dallas, TX 75201-6659 |
| Robert L. LeHane, Esq.<br>Gilbert R. Saydah, Jr., Esq<br>Kelley Drye & Warren, LLP<br>101 Park Avenue<br>New York, NY 10178 | Jamie R. Welton<br>Deborah Deitsch-Perez<br>Lackey Hershman, LLP<br>3102 Oak Lawn Avenue, Suite 777<br>Dallas, TX 75219 | Bryan T. Glover<br>Burr & Forman LLP<br>171 Seventeenth Street NW, Suite 1100<br>Atlanta, GA 30363 |
| Joseph M. Coleman & Jason B. Binford<br>Kane Russell Coleman & Logan PC<br>3700 Thanksgiving Tower<br>1601 Elm Street<br>Dallas, TX 75201 | Dallas County & Tarrant County<br>c/o Elizabeth Weller<br>Linebarger Goggan Blair & Sampson,LLP<br>2777 N. Stemmons Freeway, Suite 1000<br>Dallas, TX 75207 | Richardson ISD & Arlington ISD<br>c/o Elizabeth Banda Calvo<br>Perdue Brandon Fielder Collins & Mott<br>P. O. Box 13430<br>Arlington, TX 76094-0430 |
| Hidalgo County & McAllen ISD<br>c/o John T. Banks<br>Perdue Brandon Fielder Collins & Mott<br>3301 Northland Drive, Suite 505<br>Austin, TX 78731 | Stephanie G. Houle<br>OGE Energy Corp<br>321 N. Harvey<br>Oklahoma City, OK 73102 | John R. Hardin, Esq.<br>Amanda N. Pennington, Esq.<br>K&L Gates LLP<br>1717 Main Street, Suite 2800<br>Dallas, TX 75201 |
| Barbara M. Barron<br>Lynn Saarinen<br>Barron & Newburger, P.C.<br>1212 Guadalupe Street, Suite 104<br>Austin, TX 78701 | Collin County Tax Assessor/Collector<br>c/o David B. McCall<br>Gay, McCall, Isaacks, Gordon & Roberts<br>777 East 15th Street<br>Plano, TX 75074 | Jeffrey N. Pomerantz, Esq<br>PACHULSKI STANG ZIEHL & JONES<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067 |
| Bradford J. Sandler, Esq<br>PACHULSKI STANG ZIEHL & JONES<br>P. O. Box 8705<br>Wilmington, DE 19899-8705 | The Richards Group, Inc.<br>Attn: Scot Dykema, CFO<br>8750 North Central Expressway<br>Dallas, TX 75231 | Wells Fargo Insurance Services<br>Attn: Gary Donofrio, Sr Client Executive<br>5151 Belt Line Road, Suite 200<br>Dallas, TX 75254 |
| Local & Westn of Texas, Inc.<br>Attn: Seth Schnittman, Natl Sales Mgr<br>5445 La Sierra, Suite 100<br>Dallas, TX 75231 | Ecolab, Inc.<br>Attn: Ken Kidwell<br>4855 International Blvd., Suite 103<br>Frederick, MD 21703 | Papercraft Southwest<br>Attn: Tony Wood<br>2005 Valley View Lane, Suite 120<br>Dallas, TX 75234 |
| National Retail Properties, LP<br>Attn: Christopher Tessitore<br>450 S. Orange Avenue, Suite 900<br>Orlando, FL 32801 | Pepsi-Cola<br>Attn: Todd Bass<br>4610 S. Ulster St., Ste 200<br>Denver, CO 80237 | Lynx Associates, LP<br>Attn: Ryan Epstein<br>NC1-002-18-16<br>Charlotte, NC 28255 |
| SAMP 2 L.L.C.<br>Attn: Ashvin Patel, Owner<br>1604 Chasewood Drive<br>Austin, TX 78727 | Valassis Dire<br>Attn: Mary Sanderson<br>600 North Cockrell Hill Road<br>Dallas, TX 75211 | National Frozen Foods Cor<br>Attn: Bob Ashmun, VP Sales<br>P. O. Box 9366<br>Seattle, WA 98109 |

N3 335 Plano TX LLC
Attn: Brenna Wadleigh, President
620 E. Southlake Blvd.
Southlake, TX 76092

QVD USA LLC
Attn: Sheri Sund, Sales Coordinator
15 Lake Bellevue Dr., Suite 109
Bellevue, WA 98005

ARC CafeUSA001,LLC
Attn: Cindy Dip, Portfolio Controller
200 Dryden Road, Suite 1100
Dresher, PA 19025

Mission Foods
Attn: Jane Bohley
5125 West Scott Drive
Greenwood, IN 46142

Okeene Milling Co.
Attn: Bob Ford, Owner
P. O. Box 1000
Okeene, OK 73763

Pacific Cheese Co., Inc.
Attn: Betty Laxton, Ntl Sales Mgr.
P. O. Box 56598
21090 Cabot Blvd.
Hayward, CA 94545

Inland Diversified Dallas Wheatland LLC
Attn: JoAnn McGuinness, President
Bldg. #65092
2901 Butterfield Rd.
Oakbrook, IL 60523

Rubin Sales
Attn: Rafi Rubin, Sales
2111 11th Avenue W
Seattle, WA 98119

Houlounnn LLC
Attn: Kirk Hermansen, Manager
5944 Luther Lane, Suite 725
Dallas, TX 75225