**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CASE NO. 14-30699-11** |
| **BUFFET PARTNERS, LP., *et al.*** | ) | |
| | ) | **CHAPTER 11** |
| **Debtors.** | ) | |
| | ) | **(Jointly Administered)** |
| | ) | |

**OBJECTION OF CONSOLIDATED EDISON SOLUTIONS, INC. TO THE DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDER PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**

Consolidated Edison Solutions, Inc. ("CES"), by counsel, hereby objects to the *Debtors' Emergency Motion For Interim and Final Order Providing Adequate Assurance of Utility Payments* (the "Utility Motion")[Docket No. 6], and sets forth the following:

**Introduction**

In 2005, Congress amended Section 366 of the Bankruptcy Code to add, among other things, Section 366(c) to address adequate assurance of payment requests in Chapter 11 cases. Prior to 2005, Section 366(b) governed adequate assurance of payment determinations in all bankruptcy cases. Section 366(b), which has not been modified, provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

As set forth above, courts had the authority under Section 366(b) to modify the amount of the deposit or other security that was necessary to provide adequate assurance of payment, which is significantly broader than the legal standard established in Sections 366(c)(2) and (3).

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

The significant difference between the two provisions is the pre-2005 standard required a court to focus on whether or not to "order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment" and Section 366(c) now requires a court to focus on whether or not to "order modification of the amount of an assurance of payment under paragraph (2)." The amount of assurance of payment under paragraph (2) (Section 366(c)(2)) in these cases is the two-month deposit requested by CES herein. Accordingly, under the foregoing legal standard, it is the Debtors' burden to present evidence to demonstrate, why, if at all, the amount of the CES two-month deposit request should be modified. *See In re Stagecoach Enterprises, Inc.***,** 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). Courts that have found that the courts retain the same discretion as under Section 366(b), or allow the debtor to pick the form and/or amount of security, simply refuse to follow the plain language of the statute.

In addition to changing the legal standard, Section 366(c) also changes the adequate assurance of payment determination as follows: (1) The statute provides the Debtors with 30 days to provide adequate assurance of payment instead of 20 days; (2) Section 366(c)(1) defines the forms of adequate assurance of payment, which was not included in Section 366(b); and (3) Section 366(c)(1)(B) and (c)(3)(B) limit what the Court can consider.

The post-petition deposit sought by CES in this case is the two (2) month deposit that it

can obtain from the Debtors pursuant to the *Electricity Sales Agreement* entered into between CES and Debtor Buffet Partners, L.P. for the provision of electricity supply with a start date of June 1, 2013 and end date of June 1, 2015 (including attachments/addendums thereto, collectively, the "Contract"). As set forth herein, this Court should deny the Utility Motion as to CES because the amount of the CES post-petition deposit request is reasonable and should not be modified.

## Facts

### Procedural Facts

1. On February 4, 2014 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. The Debtors' chapter 11 bankruptcy cases are jointly-administered.

### The Utility Motion

3. On the Petition Date, the Debtors filed the Utility Motion.

4. In the Utility Motion, the Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is to allocate $200,000 among the Debtors' utilities on a pro-rata basis, which supposedly represents two-weeks of utility charges. Utility Motion at ¶ 24. The foregoing proposal is unacceptable to CES and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are

limited to modifying, if at all, the amount of the security sought by the Utilities under Section 366(c)(2).

5. The Utility Motion does not address why this Court should consider modifying, if at all, the amount of the CES adequate assurance request pursuant to Section 366(c)(2).

6. On February 5, 2014, the Debtors filed a *Notice of Hearing* that set a hearing on the Utility Motion for February 10, 2014 at 10:30 a.m. The Certificate of Service attached to that Notice of Hearing reflects that the Debtors served CES with the Notice via a post office box in Pittsburg, Pennsylvania. However, the Contract between CES and the Debtors expressly provides that all notices to CES related to the Contract shall be made by registered, certified or express mail to 100 Summit Lake Drive, Suite 410, Valhalla, NY 10595 or by fax, and in both cases to the attention of the CES Law Department.

7. Because CES was not properly served with the Utility Motion and the Debtors never attempted to contact CES regarding its adequate assurance request prior to the filing of the Utility Motion, CES had no opportunity to respond to the Utility Motion or otherwise be heard at the *ex parte* hearing on the Utility Motion that took place on February 10, 2014, despite the fact that Section 366(c)(3) (presuming this was the statutory basis for the relief sought by the Debtors) requires that there be "notice and a hearing" to CES.

8. On February 10, 2014, the Court granted the Utility Motion and entered an *Interim Order Granting Debtors' Emergency Motion For Order Providing Adequate Assurance Of Utility Payments* (the "Interim Order")[Docket No. 60].

9. The final hearing on the Utility Motion is set for March 4, 2014 at 10:00 a.m.

**Facts Regarding the Debtors**

10. The Debtors (also referred to herein as the "Company") are a restaurant chain.

*Declaration of Barry M. Barron, Sr. In Support of Debtors' Voluntary Petitions Under Chapter 11 of Title 11 of the United States Code and First-Day Motions* at ¶ 5. (hereinafter "Barron Dec.").

11. Debtor Buffet Partners, L.P. was formed to purchase the Company in September 2003. Barron Dec. at ¶ 8.

12. The Debtors' liabilities primarily consist of $39 million in senior, secured debt owed to Chatham Capital Partners ("Chatham") and its affiliated funds, as well as approximately $4 million in trade payables to miscellaneous vendors, suppliers and other parties, and undetermined liabilities to landlords of closed store locations. All of the Debtors' assets, including cash, are pledged to Chatham on a senior, secured basis. The value of the Debtors' assets, whether valued in a liquidation or as a going concern, are materially below the aggregate amount of the Chatham debt. Barron Dec. at ¶ 12.

**The Debtors' Reasons For Filing Their Chapter 11 Cases**

13. Credit constraints resulting from the financial crisis that began in 2008 impacted the Debtors' ability to finance growth and improvements in process, and subjected the Debtors to higher interest and leasing rates. Commodity and transportation prices also increased, and the recessionary climate limited the Debtors' ability to raise prices to cover increasing costs, and thereby impacted guest counts. Certain of the Debtors' locations began to suffer and the Debtors became increasingly undercapitalized. Barron Dec. at ¶ 13.

14. The Debtors' overall liquidity was impacted by capital spending on new stores in support of expansion of the scatter-line buffet concept and needed maintenance that had been deferred on older stores. The Debtors claim that because their Texas market suffered an ice storm and unusually cold weather, they incurred a significant loss in guest counts and hundreds

of thousands of dollars in lost profit. The Debtors' claim that the weather-related losses were detrimental to the already tenuous liquidity, and with no available line of credit, the Debtors were unable to continue to weather the financial storm, eventually leading to the filing of the Debtors' Chapter 11 cases. Barron Dec. at ¶ 15.

**<u>The Debtors' Cash Collateral Motion</u>**

15. On the Petition Date, the Debtors filed the *Debtors' Emergency Motion For Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant To Sections 105, 361, 362 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B), and (II) Granting Adequate Protection To the Prepetition Secured Lender* (the "Cash Collateral Motion").

16. On February 10, 2014, the Court entered the *Interim Order Authorizing Use of Cash Collateral Pursuant To 11 U.S.C. § 363* (the "Interim Cash Collateral Order"). The Interim Utility Order authorized the Debtors to use cash collateral on an interim basis pursuant to a 4-week budget attached as Exhibit "A" to the Interim Cash Collateral Order (the "Budget"). It is unclear from the Budget whether the Debtors have budgeted any, let alone sufficient, funds for the timely payment of their post-petition utility charges.

**<u>The Debtors' Critical Vendor Motion</u>**

17. On the Petition Date, the Debtors filed the *Debtors' Emergency Motion Pursuant To 11 U.S.C. §§ 105(a) and 1107(a) and 7 U.S.C. § 499a To Establish Critical Vendor and PACA Vendor Payment Procedures* (the "Critical Vendor Motion"). Through the Critical Vendor Motion, the Debtors are seeking authority to pay certain prepetition claims of certain suppliers of goods and services (collectively, the "Critical Vendors") that the Debtors contend are critical to their business, or some arm of their business, and could not continue to operate without access to such goods,

including Perishable Agricultural Commodities, and services. Critical Vendor Motion at ¶¶ 20, 23. Interestingly, despite stating in paragraph 22 of the Utility Motion that uninterrupted utility service "is critical to the ability of the Debtors to operate and maintain the value of their business" and that the "Debtors could not operate their facilities without utility service," the Debtors do not consider their utility providers to be Critical Vendors for purposes of the Critical Vendor Motion.

18. On February 10, 2014, the Court entered the Interim Critical Vendor Order.

**Facts Concerning CES**

19. CES provides electric commodity to the Debtors pursuant to the Contract. The Contract provides that the Debtors shall pay CES for electricity within 20 days from the date on an invoice. CES provides electric commodity for 14 post-petition Debtor accounts. Subject to a reservation of CES's right to supplement its post-petition deposit request if additional accounts belonging to the Debtors for which CES provides electric commodity are subsequently identified, the CES two-month deposit request is $126,492.

**Discussion**

**A. THE UTILITY MOTION SHOULD BE DENIED AS TO CES.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United*

*States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors. Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to CES. *See In re Viking Offshore (USA), Inc.*, 2008 WL 782449 at *3 (Bankr. S.D. Tex. Mar. 20, 2008) ("The relief requested by Debtors would reverse the burden, by making an advance determination that the proposed assurance was adequate. . . . the court lacks the power to reverse the statutory framework for provision of adequate assurance of payment."); s*ee also In re Pilgrim's Pride Corporation*, Case No. 08-45664 (DML)(Docket No. 447), United States Bankruptcy Court For the Northern District of Texas, *Memorandum Order* entered on January 5, 2009 (Denying debtors' motion seeking to establish adequate assurance of payment); *see also In re Ramsey Holdings, Inc.*, Case No. 09-13998-M (TLM).

Furthermore, in the Utility Motion, the Debtors fail to address why this Court should

modify the amount of the CES request for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amount of the CES adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.***,** 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amount of the CES adequate assurance request should be modified. Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to CES.

**B. THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY CES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

(i) a cash deposit;
(ii) a letter of credit;
(iii) a certificate of deposit;
(iv) a surety bond;
(v) a prepayment of utility consumption; or
(vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential

services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985). Based on the Debtors' anticipated utility consumption, the approximate period of time the Debtors could receive electricity supply from CES before termination of the provision of electricity supply for non-payment of bills is approximately two (2) months. Furthermore, the amount of the CES deposit request is the amount that the Contract allows CES to obtain from the Debtors. Accordingly, the amount of the deposit requested by CES is reasonable and should not be modified. *See In re Stagecoach,* 1 B.R. 732, 735-36 (Bankr. M.D. Fla. 1979) (holding that a two month deposit is appropriate where the debtor could receive sixty (60) days of service before termination of services because of the utilities' billing cycle.); *see also In the Matter of Robmac, Inc.*, 8 B.R. 1, 3-4 (Bankr. N.D. Ga. 1979).

In contrast, the Debtors fail to address in the Utility Motion why this Court should modify, if at all, the amount of CES adequate assurance of payment request, which is the Debtors' statutory burden. Instead, the Debtors merely ask this Court to approve their proposed form of adequate assurance of payment in the form of a two-week deposit.

It is clear from the Critical Vendor Motion the type of creditors that the Debtors intend to favor with special treatment and CES is not on that list. Moreover, unlike the "critical vendors" that are receiving preferential treatment in the Critical Vendors Motion, CES is willing to continue to provide the Debtors with their generous trade terms established by the Contract (i.e.

bills issued monthly in arrears with a due date 20 days thereafter) without requiring the Debtors to pay their prepetition claims in full at the outset of the case.

Furthermore, the Debtors do not provide an objective, much less an evidentiary, basis for their proposed adequate assurance in the form of a two-week deposit. The bottom line is that if the Debtors want to continue to receive CES's generous trade terms established by the Contract, they need to provide CES with more security than a two-week deposit. Accordingly, based on the foregoing, the Debtors should be required to tender the deposit sought by CES.

WHEREFORE, CES respectfully requests that this Court enter an order:

1. Denying the Utility Motion as to CES;
2. Awarding CES the post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to CES; and
3. Providing such other and further relief as the Court deems just and appropriate.

Dated: February 17, 2014

/s/ Weldon L. Moore, III
Weldon L. Moore, III
Texas State Bar No. 14380500
Sussman & Moore, LLP
8333 Douglas Avenue, Suite 1525
Dallas, Texas 75225
Telephone: (214) 378-8270 x205
Facsimile: (214) 378-8290
Email: wmoore@csmlaw.net

and

Russell R. Johnson III, Esq.
Virginia State Bar No. 31468
John M. Craig, Esq.
Virginia State Bar No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Phone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russj4478@aol.com

*Co-Counsel for Consolidated Edison Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2014, a true and correct copy of the foregoing *Objection* was served via the Court's CM/ECF electronic notification system on all parties requesting same, and via U.S. First-Class Mail, to the parties listed below.

John E. Mitchell
Rosa A. Shirley
Baker & McKenzie LLP
Trammell Crow Center
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201
*Debtors' Counsel*

United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242

/s/ Weldon L. Moore, III
Weldon L. Moore, III