Sarah J. Crow (Texas State Bar No. 24072518)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-4278
Facsimile: (214) 969-4343
sjcrow@akingump.com

ATTORNEYS FOR PREMIUM ASSIGNMENT CORPORATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFET PARTNERS, L.P. | § | Case No. 14-30699 (HDH) |
| | § | |
| Debtor. | § | |

### MOTION OF PREMIUM ASSIGNMENT CORPORATION
### FOR RELIEF FROM THE AUTOMATIC STAY AND
### REQUEST FOR ADEQUATE PROTECTION

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**AN EXPEDITED RESPONSE DEADLINE HAS BEEN REQUESTED. ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., ROOM 1254, DALLAS, TX 75242-1496 BEFORE CLOSE OF BUSINESS ON MARCH 24, 2014, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

**AN EXPEDITED HEARING HAS BEEN REQUESTED. THE HEARING WILL BE CONDUCTED BEFORE THE HONORABLE HARLIN D. HALE, U.S. BANKRUPTCY COURT, 1100 COMMERCE STREET, ROOM 1420 (COURTROOM 3), DALLAS, TX 75242-1496.**

**TO THE HONORABLE HARLIN D. HALE**
**UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW Premium Assignment Corporation (the "*Lender*" or "*PAC*"), and files, by and through its undersigned counsel, this Motion of Premium Assignment Corporation for Relief from the Automatic Stay and Request for Adequate Protection (the "*Motion*") to modify the automatic stay to authorize the Lender to exercise its right under state law to collect unearned premiums owed to the Lender by Buffet Partners, L.P. (the "*Debtor*") on account of insurance policies financed by PAC. In support of the Motion, the Lender respectfully states as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The relief requested may be granted in accordance with the provisions of title 11 of the United States Code (the "*Bankruptcy Code*") sections 105(a), 362, and 363; rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "*Local Rules*").

## II.     BACKGROUND

2.     On February 4, 2014 (the "*Petition Date*"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor is operating and managing its business and property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Debtor's chapter 11 case.

3.     On or about October 11, 2013, PAC and the Debtor entered into that certain Premium Finance Agreement effective as of September 30, 2013 (the "*Finance Agreement*"), a

true and correct copy of which is attached as <u>Appendix 1</u> to <u>Exhibit B</u>. Pursuant to the terms of the Finance Agreement, PAC advanced $577,355.41 to the Debtor's insurance carrier (or the carrier's agent) in prepayment of one year of the Debtor's premiums under eleven commercial insurance policies identified in <u>Appendix 1</u> to <u>Exhibit B</u> (the "*Policies*"), which Policies include, among other things, coverage for general liability, workers' compensation, directors and officers, crime, cargo, products liability, and pollution. In exchange, the Debtor made a down payment on the premiums in the amount of $101,886.25 and agreed to make ten (10) monthly payments to PAC, each in the amount of $58,583.05, with the first installment due October 30, 2013, and all other installments due on the 30th day of each successive month thereafter.

4.      Pursuant to the Finance Agreement, the Debtor granted PAC the power to cancel the Policies and to collect all unearned premiums in the event that the Debtor defaulted under the terms of the Finance Agreement. As security for the Debtor's obligations, the Debtor assigned to PAC all unearned premiums or other sums that may become payable under the Policies (the "*Collateral*").

5.      As set forth on the statement of account attached hereto as <u>Appendix 2</u> to <u>Exhibit B</u>, the Debtor failed to make any payment for the month of January and made a late payment on March 3, 2013 for the month of February. In addition, the Debtor failed to pay late charges assessed for January. The Debtor's failure to remit the January payment, to timely remit the February payment, and to pay late charges constitutes default pursuant to paragraph 7 of the Finance Agreement. On or about February 13, 2014, PAC gave notice to the Debtor's counsel of the Debtor's failure to remit January payment, which notice is attached hereto as <u>Appendix 3</u> to <u>Exhibit B</u>.

6.      According to PAC's calculations, the value of PAC's Collateral as of the Petition Date was approximately $438,115.22.   According to the statement of account attached hereto as Appendix 2 to Exhibit B, the balance due under PAC's Finance Agreement is $354,427.45. Despite the Debtor's default under the Finance Agreement, the Debtor continues to consume PAC's Collateral, in that a portion of the unearned premiums become earned each day and, thus, the value of PAC's Collateral is irreparably decreasing at the rate of approximately $1,800 per day. *See, e.g., Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 166 (Bankr. D.C. 1981) (noting that the value of the collateral declines each day by the amount per diem that unearned premiums become used.).   Accordingly, as of the date hereof, the value of the Collateral is approximately $384,193.34.  PAC has not received any cash payment, replacement lien, or other relief from the Debtor other than as described above.

## III.      RELIEF REQUESTED

7.      PAC requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, modifying the automatic stay for cause so that PAC may exercise its power, in accordance with Texas Insurance Code Chapter 651 and the Finance Agreement, to cancel the Policies and collect all unearned premiums up to the balance due under the Finance Agreement.

8.      Alternatively, PAC requests that the Court enter an order requiring the Debtor to provide PAC with adequate protection pursuant to Bankruptcy Code sections 362 and 363 by compelling the Debtor to become current on both pre-petition and post-petition payments under the Finance Agreement and by permitting PAC to exercise any and all remedies to which PAC is entitled without further application to this Court if the Debtor fails to do so.

## IV. **BASIS FOR RELIEF**

9.      In the instant case, it is appropriate to lift the stay because cause exists to grant relief from the automatic stay under Bankruptcy Code section 362(d)(1)-(2).

### A.      **The Lender Has a Valid Security Interest in the Collateral**

10.      Premium financing is a common commercial transaction. A premium finance company, such as PAC, has a secured interest in the unearned premiums of the insurance policy or policies that were financed without the necessity of filing a UCC-1 financing statement. *See In re JII Liquidating, Inc.*, 344 B.R. 875, 882-85 (Bankr. N.D. Ill. 2006). A premium finance company's security interest in unearned insurance premiums is in the nature of a purchase money security interest. *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 997-98 (Bankr. D. Ct. 1986); *A-1 Credit Corp. v. Big Squaw Mountain Corp. (In re Big Squaw Mountain Corp.)*, 122 B.R. 831, 835 (Bankr. D. Me. 1990).

11.      A premium finance company has a secured interest in the unearned premiums of the insurance policies financed. This security interest remains in effect throughout the case. *See In re U.S. Repeating Arms Co.* 67 B.R. at 999.

12.      The proper time for assessing the value of PAC's security interest is the Petition Date. Although the value of collateral may decline as the premiums are earned, the security interest must be protected as it existed as of the commencement of the bankruptcy case. *In re Auto-Train Corp.*, 9 B.R. at 166.

13.      As a secured creditor, and under Bankruptcy Code section 363(e), PAC is entitled to adequate protection of its Collateral from the Petition Date. *Id.*; 11 U.S.C. § 363(e). The Debtor has failed to make the January payment due under the Financing Agreement, made the post-petition February payment late, and failed to pay the late charges assessed for January.

Further, the Debtor has not offered PAC any form of adequate protection. PAC's Collateral continues to diminish in value each day as the insurance premiums became earned, and PAC's security interest is not adequately protected.

**B. Cause Exists to Grant Relief from the Automatic Stay under Bankruptcy Code Section 362(d)(1)**

14. Bankruptcy Code section 362(d)(1) provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). "Cause is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-intensive situations." *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988); *see also Mooney v. Gill*, 310 B.R. 543, 546 (N.D. Tex. 2002) ("The bankruptcy court must balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code."); *In re Cont'l Air Lines, Inc.*, 61 B.R. 758, 780 (S.D. Tex. 1986) ("In sum, a bankruptcy court must be guided by equitable principles in exercising its discretion to enforce or modify the automatic stay."); *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) (noting that default under loan documents can constitute cause).

15. Cause exists in this case to grant relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1) because, among other things, (i) the Debtor has defaulted under the Finance Agreement; (ii) the value of PAC's Collateral diminishes each day as the premiums became earned; (iii) there is minimal, if any, equity in the Collateral for the benefit of

the estate; and (iv) the Debtor is unable to provide adequate protection for the Lender's secured claim.

## C. The Lender's Interests Are Not Adequately Protected

16.     Once a movant makes a *prima facie* case that cause exists to lift the stay, the burden shifts to a debtor to show that the collateral is not declining in value or that the secured creditor is adequately protected. *See In re Rogers*, 239 B.R. 883, 887 (Bankr. E.D. Tex. 1999). The Bankruptcy Code does not define "adequate protection," but Bankruptcy Code section 361 provides a non-exclusive list of examples, including:

      a.    requiring cash payments to the secured creditor to the extent the continuation of the stay results in a decrease in value of the collateral;

      b.    providing the secured creditor with an additional or replacement lien on property to the extent that the continuation of the stay results in a decrease in value of the collateral; or

      c.    granting such relief to the secured creditor as will result in the creditor's realization of the "indubitable equivalent" of its interest in the collateral.

*See* 11 U.S.C. § 361(1)-(3). Adequate protection does not exist when factors, such as instability of the value of the collateral, indicate that the creditor's interest in property is not being protected. *See In re Colrud*, 45 B.R. 169, 178-79 (Bankr. D. Ala. 1989).

17.     If a debtor has neither adequately protected encumbered property nor presented any persuasive evidence that it can do so, relief from the automatic stay for cause is warranted. *See, e.g., In re NMP Concord II, LLC*, No. 10-43080, 2010 WL 3488249, at *4 (Bankr. N.D. Cal. Sept. 1, 2010); *In re Dumbaya*, 428 B.R. 410, 416 (Bankr. N.D. Ohio 2009); *In re Epiq Capital Corp.*, 290 B.R. 514, 526 (Bankr. D. Del. 2003); *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 982 (Bankr. M.D. Fla. 1997).

18.     Here, the Debtor has failed to remit the January payment due under the Finance Agreement and has failed to offer PAC adequate protection in any form. Despite the rapidly declining value of the Collateral, PAC is the beneficiary of none of the forms of adequate protection articulated in Bankruptcy Code section 362(d)(1), or otherwise. PAC is receiving no cash payments to compensate it for the continuous decrease in the value of the Collateral. Moreover, the Debtor has not provided PAC with the "indubitable equivalent" of its interest in the Collateral. Given that the Debtor has not provided any evidence to suggest that it can adequately protect PAC's interests, PAC is not adequately protected. Accordingly, relief from the automatic stay is warranted.

**D.      Relief from the Automatic Stay Is Justified Due to Lack of Equity Pursuant to Bankruptcy Code Section 362(d)(2)**

19.     Bankruptcy Code section 362(d)(2) provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against property under subsection (a) of this section if
>
> (A)    the debtor does not have an equity in such property; and
>
> (B)    such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2). PAC submits that these requirements have been met for the reasons that follow.

### i.      The Debtor Lacks Equity in the Collateral

20.     A secured creditor seeking relief from the automatic stay under Bankruptcy Code section 362(d)(2) bears the burden of proof on one issue only: lack of equity in the collateral. *See* 11 U.S.C. § 362(g)(1); *U.S. Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S.

365, 375 (1988) ("*Timbers II*"); *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 110 (Bankr. W.D. Tex. 1987); *In re Playa Dev. Corp.*, 68 B.R. 549, 553 (Bankr. W.D. Tex. 1986); *In re Cal. Gulf P'ship*, 48 B.R. 959, 963 (E.D. La. 1984). Once a lack of equity in the property is established, the burden shifts to the debtor to demonstrate that the property is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g)(2); *Timbers II*, 484 U.S. at 375-76; *Canal Place Ltd. P'ship v. Aetna Life Ins. Co. (In re Canal Place Ltd. P'ship)*, 921 F.2d, 569, 576 (5th Cir. 1991). If a debtor is unable to carry its burden, relief from the automatic stay must be granted.

21.     As of the Petition Date, the Collateral had a value of approximately $438,115.22. As of the filing of this Motion, the value of the Collateral had declined to approximately $384,193.34, and the balance due under the Finance Agreement is $354,427.45. As a result, there is currently minimal equity in the Collateral, and its value continues to decrease at a rate of approximately $1,800 per day, such that any remaining equity in the Collateral will likely be eliminated before the hearing on this Motion. Specifically, PAC currently has an equity cushion of approximately $29,766 that the Debtor will consume within 17 days of the date hereof. Thus, the burden shifts to the Debtor to demonstrate that the Collateral is necessary to an effective reorganization.

### ii.     <u>The Debtor Has Not Demonstrated that the Policies Are Necessary to Reorganize</u>

22.     Where a debtor fails to establish a reasonable prospect for a successful reorganization, relief from the automatic stay is appropriate. *See Canal Place*, 921 F.2d at 577; *Sutton v. Bank One (In re Sutton)*, 904 F.2d 327, 331 (5th Cir. 1990) (holding that a debtor failed to establish that property was necessary for an effective reorganization where the debtor's plan was to wait until the property market improved); *In re Endrex Exploration Co.*, 101 B.R. 474,

476 (N.D. Tex. 1988) (upholding relief from the automatic stay where the debtor's property would be "helpful" to reorganization, but not necessary).

23.    The Debtor's burden is not merely to demonstrate that it is conceivable to reorganize, but rather that the Collateral is "essential for an effective reorganization that is in prospect." *See Timbers II*, 484 U.S. at 375-76. To prevail against a secured creditor who has moved to lift the stay under Bankruptcy Code section 362(d)(2), a debtor must be able to show a reasonable prospect for a successful reorganization within a reasonable time. *See Timbers I*, 808 F.2d at 370.

24.    The United States Supreme Court has recognized that relief from the automatic stay may be granted early in a bankruptcy case and prior to the end of the exclusivity period. *See Timbers II*, 484 U.S. at 376; *In re Fernandez*, 212 B.R. 361, 371 (Bankr. C.D. Cal. 1997) ("there may come a point where common sense and equitable principles should step in to limit a debtor's rights to the protections afforded by the automatic stay of § 362(a)"); *In re Ziebarth*, 113 B.R. 591, 598 (Bankr. D.N.D. 1990) ("A party in interest is free to move for . . . relief from stay at any time and may pursue such remedies even within the 120 day filing period."). Additionally, because the vast majority of chapter 11 cases do not end with confirmed plans, the challenge to the bankruptcy court is to recognize those cases as promptly as possible and limit the administrative expenses and costs borne by the creditors. *See, e.g., Canal Place*, 921 F.2d at 577. PAC respectfully submits that granting the relief requested herein furthers the goals articulated in *Timbers II* and *Canal Place* by limiting the administrative fees and other costs to be borne by PAC and limiting the prejudice suffered by PAC should the Collateral continue to be subject to these bankruptcy proceedings and diminish in value.

25. Here, the Collateral is encumbered by PAC's security interests. The Debtor has not demonstrated any need for the Policies in connection with reorganization, as no plan has been proposed. For the reasons set forth herein, PAC respectfully submits that relief from the automatic stay is justified because the Debtor has little to no equity in the Collateral, and the Collateral is not necessary to an effective reorganization.

**E.     Expedited Relief Is Appropriate Because the Value of the Collateral Is Irreparably Declining**

26. As discussed above, the estimated value of PAC's Collateral as of the Petition Date was approximately $438,115.22. The balance due under the Finance Agreement is $354,427.45. Furthermore, despite the Debtor's default under the Finance Agreement, the Debtor continues to consume PAC's Collateral, in that a portion of the unearned premiums become earned each day and, thus, the value of PAC's Collateral is irreparably decreasing at the rate of approximately $1,800 per day. Due to the fact that the value of PAC's collateral is rapidly and irreparably decreasing, PAC respectfully submits that expedited relief is appropriate in this case.

**F.     Alternatively, the Debtor Should Be Compelled to Provide Adequate Protection**

27. If the Court determines that it will not authorize PAC to cancel the Policies, PAC requests that the Court enter an order requiring the Debtor to provide PAC with adequate protection pursuant to Bankruptcy Code sections 362 and 363 by compelling the Debtor to become current on the entire balance due under the Finance Agreement and by permitting PAC to exercise any and all remedies to which PAC is entitled without further application to this Court if the Debtor fails to do so.

28.     Debtors are routinely authorized to pay both pre-petition and post-petition obligations on account of insurance policies where such policies are found to be "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). Bankruptcy Code section 105(a) further provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a); *see also In re Pilgrims Pride*, Case No. 08-45664 (DML) (Bankr. N.D. Tex. Dec. 3, 2008); *In re Renaissance Hospital – Grand Prairie, Inc.*, Case No. 08-43775-11 (DML) (Bankr. N.D. Tex. Sept. 4, 2008); *In re Home Interiors & Gifts, Inc.*, Case No. 08-31961 (BJH) (Bankr. N.D. Tex. June 2, 2008); *In re Bombay Company, Inc.*, Case No. 07-44084 (DML) (Bankr. N.D. Tex. Sept. 20, 2008); *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008); *In re Charys Holding Company, Inc. and Crochet & Borel Servs., Inc.*, Case No. 08-10289 (BLS) (Bankr. D. Del. Feb. 15, 2008).

29.     Accordingly, should the Court determine that it will not authorize PAC to cancel the Policies, PAC requests that the Court enter an order compelling the Debtor to provide adequate protection to PAC by becoming current on the Policies under the Financing Agreement and by permitting PAC to exercise any and all remedies to which PAC is entitled without further application to this Court if the Debtor fails to do so.

## G.     Waiver of the 14-Day Stay under Bankruptcy Rule 4001(a)(3) Is Appropriate

30.     Bankruptcy Rule 4001(a)(3) states that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of

14 days after the entry of the order, *unless the court orders otherwise*." Fed. R. Bankr. P. 4001(a)(3) (emphasis added).    Courts have waived the stay imposed by Bankruptcy Rule 4001(a)(3) so as not to "impede the enforcement and implementation" of relief from the automatic stay. *See, e.g., In re Huie*, No. 07-40627, 2007 WL 2317152, at *8 (Bankr. E.D. Tex. Aug. 8, 2007).

31.    PAC respectfully requests that the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) be waived so that, should the relief requested herein be granted, PAC may immediately cancel the Policies and collect all unearned premiums pursuant to the Finance Agreement.

## V.    NO PRIOR REQUEST

32.    No previous request for the relief sought in this Motion has been made to this or any other court.

## VI.    CONCLUSION

In light of the foregoing, the Lender respectfully requests that the Court enter an order, substantially in the form annexed hereto as Exhibit A, (i) authorizing PAC to cancel the Policies and to collect all unearned premiums as of the cancelation date, and (ii) granting the Lender such other and further relief to which it shows itself to be justly entitled.

Respectfully submitted this 7th day of March, 2014.

AKIN GUMP STRAUSS HAUER & FELD LLP

By:    /s/  Sarah J. Crow
    Sarah J. Crow (Texas State Bar No. 24072518)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-4278
Facsimile:  (214) 969-4343
sjcrow@akingump.com

ATTORNEYS FOR PREMIUM ASSIGNMENT
CORPORATION

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 4, 2014, I conferred with the Debtor's counsel in order to reach a consensual resolution to the relief sought herein. As of the date of the filing of the Motion, no such resolution has been reached.

/s/  *Sarah J. Crow*
Sarah J. Crow

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Motion (with exhibits) was served on the parties entitled to receive service through the Court's Electronic Case Filing System and via United States mail, postage prepaid, to the parties listed on the attached Service List, and specifically on the following parties via email, on this, the 7th day of March 2014.

### Debtor's Counsel

John E. Mitchell
John.Mitchell@bakermckenzie.com

Rosa A. Shirley
Rosa.Shirley@bakermckenzie.com

/s/  *Sarah J. Crow*
Sarah J. Crow

204557643 v1

## SERVICE LIST

## SERVED VIA REGULAR MAIL

### Debtors

Barry M. Barron, Sr.
Chief Executive Officer
Buffet G.P., Inc.
2701 E. Plano Parkway, Suite 200
Plano, TX  75074
bbarron@furrs.net

### Proposed Counsel for the Debtors

John E. Mitchell
Rosa A. Shirley
Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201

### Office of the United States Trustee

Office of the United States Trustee
Attn: Erin Marie Schmidt
1100 Commerce Street, Room 976
Dallas, TX  75242

### Proposed Financial Advisor for the Debtors

Dawn Ragan
Bridgepoint Consulting, LLC
1700 Commerce Street, Suite 810
Dallas, TX  75201
dragan@bridgepointconsulting.com

### Additional Notice Parties

Internal Revenue Service
1100 Commerce St., Rm. 121
Dallas, TX  75242

Lin Wang
Senior Managing director
Chatham Capital
400 Calleria Parkway, Suite 1950
Atlanta, GA  30339

Dennis J. Diemer
General Counsel
Maxus Capital Group, LLC
31300 Bainbridge Road
Cleveland, OH 44139

Scot Dykema
CFO
The Richards Group Inc.
8750 North Central Expressway
Dallas, TX  75231

Seth Schnittman
National Sales Manager
Local & Western of Texas, Inc.
5445 La Sierra, Suite 100
Dallas, TX  75231

Tony Wood
Sales Mgr
Papercraft Southwest
2005 Valley View Lane, Ste. 120
Dallas, TX  75234

Christopher Tessitore
General Counsel
National Retail Properties, LP
450 S. Orange Avenue, Suite 900
Orlando, FL  32801

204557643 v1

Todd Bass
National Account Sales Manager
Pepsi-Cola
4610 S. Ulster St., Ste 200
Denver, CO  80237

Ryan Epstein
Director-Global Principal Investments
Lynx Associates, LP
NC1-002-18-16
Charlotte, NC  28255

Ashvin Patel
Owner
SAMP 2 L.L.C.
1604 Chasewood Drive
Austin, TX  78727

Kent Kidwell
Asst. VP Inst. Area Sales
Ecolab Inc.
4855 International Blvd., Ste. 103
Frederick, MD  21703

Gary Donofrio
Senior Client Executive
Wells Fargo Insurance Services
5151 Belt Line Road, Suite 200
Dallas, TX  75254

Rafi Rubin
Sales
Rubin Sales
2111 11th Avenue W
Seattle, WA  98119

Sheri Sunday Sales Account Executive
QVD USA LLC
11235 S.E. 6th St., Suite 140
Bellevue, WA  98004

Cindy Dip
Portfolio Controller
ARC Café USA 001, LLC
200 Dryden Road, Suite 1100
Dresher, PA  19025

Jane Bohley
Director of Nat'l Accounts
Mission Foods
5125 West Scott Drive
Greenwood, IN  46142

Bob Ford
Owner Okeene Milling co.
P.O. Box 1000
Okeene, OK  73763

Mary Sanderson
Key Account Executive
Valassis Drive
600 North Cockrell Hill Road
Dallas, TX  75211

Bob Ashmun, VP Sales
c/o Delores Johnson
National Frozen Foods Corporation
1600 Fairview Ave E, Suite 200
Seattle, WA  98102

Brenna Wadleigh
President
N3 335 Plano TX LLC
620 E. Southlake Blvd.
Southlake, TX  76092

Betty Laxton
Ntl Sales Mgr.
Pacific Cheese Co., Inc.
PO Box 56598 / 21090 Cabot Blvd.
Hayward, CA  94545

JoAnn McGuinness
President
Inland Diversified Dallas Wheatland, LLC
Bldg. #65092, 2901 Butteffield Rd.
Oakbrook, IL  60523

Inland Diversified Dallas Wheatland, L.L.C.
c/o Kevin M. Newman
Menter, Rudin & Trivelpiece, P.C.
308 Maltbie Street, Suite 200
Syracuse, NY  13204-1498

**SERVED VIA ECF NOTICE**

**Proposed Counsel for the Debtors:**

John E. Mitchell
Rosa A. Shirley
Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
john.mitchell@bakermckenzie.com
rosa.shirley@bakermckenzie.com

**United States Trustee:**

Erin Marie Schmidt
Office of the U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX  75242
erin.schmidt2@usdoj.gov

**Proposed Counsel for the Official Committee of Unsecured Creditors of Buffet Partners, L.P**

Deborah M. Perry
Kevin M. Lippman
Munsch Hardt Opf & Harr, P.C.
500 N. Akard St., Suite 3800
Dallas, TX  75201-6659
dperry@munsch.com
klippman@munsch.com

Bradford J. Sandler
Pachulski Stang Ziehl & Jones LLP
919 N. Market St., 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
bsandler@pszjlw.com

Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
jpomerantz@pszjlw.com

Chatham Credit Management III LLC
c/o Bryan Glover
Burr & Forman LLP
171 17th Street, NW, Suite 1100
Atlanta, GA 30363
bglover@burr.com

Chatham Credit Management III LLC
c/o Joseph M. Coleman and Jason Binford
Kane Russell Coleman & Logan PC
1601 Elm Street, Suite 3700
Dallas, TX 75201
jcoleman@krcl.com
jbinford@krcl.com

The Richards Group
c/o Jamie R. Welton and Deborah Deitsch-
Perez
Lackey Hershman, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
jrw@lhlaw.net
ddp@lhlaw.net

Tarrant County, Dallas County
c/o Elizabeth Weller
Linebarger Goggan Blair & Sampson LLP
2777 N. Stemmons Fwy., Suite 1000
Dallas, TX 75201
Dallas.bankruptcy@publicans.com

Hildago Co., Hildalgo Co. Drainage Dist #1
And McAllen ISD
c/o John T. Banks
Perdue, Brandon, Fielder, Collins & Mott,
LLP
3301 Northland Drive, Suite 505
Austin, TX 78731
jbanks@pbfcm.com

Bexar County and Ector CAD
c/o David G. Aelvoet
Linebargar Goggan Blair & Sampson, LLP
711 Navarro St., Suite 300
San Antonio, TX 78205
Sanantonio.bankruptcy@publicans.com

National Retail Properties
c/o Robert L. LeHane, Esq. and Gilbert R.
Saydah Jr., Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
KDWBankruptcyDepartment@kelleydrye.com

Richardson ISD, Arlington ISD
c/o Elizabeth Banda Calvo
Perdue, Brandon, Fielder, Collins & Mott,
LLP
P. O. Box 13430
Arlington, TX 76094-0430
ebcalvo@pbfcm.com

Oklahoma Gas & Electric Co.
c/o Stephanie G. Houle
OGE Energy Corp.
321 N. Harvey
Oklahoma City, OK 73102
houlesg@oge.com

Lynx Associates, L.P.
c/o John R. Hardin and Amanda N.
Pennington
K&L Gates LLP
1717 Main St., Suite 2800
Dallas, TX 75201
John.harding@klgates.com
Amanda.pennington@klgates.com

SAMP 2, L.L.C.
c/o Barbara M. Barron
Lynn Saarinen
Barron & Newburger, P.C.
1212 Guadalupe St., Suite 104
Austin, TX 78701
bbarron@bn-lawyers.com
l.Saarinen@bn-lawyers.com

Collin County Tax Assessor/Collector
c/o David B. McCall
Gay, McCall, Isaacks, Gordon & Roberts, P.C.
777 East 15th St.
Plano, TX 75074
bankruptcy@ntexas-attorneys.com

Midland Central Appraisal District
c/o Lee Gordon
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, TX 78680
lgordon@mvbalaw.com

Boston & Mays, LLC
c/o Conrad D. Hester
Brown & Fortunato, P.C.
905 S. Fillmore, Suite 400
Amarillo, TX 79101
cdhester@bf-law.com

Cameron County, South Texas ISD, South
Texas College and City of McAllen
c/o Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, TX 78760-7428
Austin.bankruptcy@publicans.com

505 Cordova, LLC
c/o Nancy H. Hamren
Coats, Rose, Yale, Ryman & Lee, P.C.
3 E. Greenway Plaza, Suite 2000
Houston, TX 77046
nhamren@coatsrose.com

Kendrick Oil Company
c/o John Massouh
Sprouse Shrader Smith P.C.
701 S. taylor, Suite 500
P.O. Box 15009
Amarillo, TX 79105-5008
Bankruptcy.docs3@sprouselaw.com

Ecolab Inc.
c/o Samuel C. Wisotskey
Kohner, Mann & Kailas, S.C.
Washington Building
Barnabas Business Center
4650 N. Port Washington Rd.
Milwaukee, WI 53212-1059
swisotzkey@kmksc.com

Dot Foods, Inc.
c/o Ashely M. Chan
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103
achan@hangley.com

GE Capital Retail Bank
c/o Recovery Management Systems
Corporation
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
claims@recoverycorp.com

Mark W. Stout
Padfield & Stout, L.L.P.
421 W. Third Street, Suite 910
Fort Worth, TX 76102
ms@livepad.com

Jay W. Hurst
Assistant Attorney General
Bankruptcy & Collection Division
P.O. Box 12548
Austin, TX 78711-2548
Jay.hurst@texasattorneygeneral.gov

John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 3064
Houston, TX 77253-3064
Houston_bankruptcy@publicans.com

R. Brandon Bundren
Duane Morris LLP
1330 Post Oak Boulevard, Suite 800
Houston, TX 77056-3166
rbbundren@duanemorris.com

Spring Independent School District
c/o Yolanda M. Humphrey
Perdue, Brandon, Fielder, Collins & Mott,
L.L.P.
1235 North Loop West, Suite 600
Houston, TX 77008
houbank@pbfcm.com

Spring Independent School District
c/o Owen M. Sonik
Perdue, Brandon, Fielder, Collins & Mott,
L.L.P.
1235 North Loop West, Suite 600
Houston, TX 77008
houbank@pbfcm.com

William Thomas McLain
Reagan McLain & Hatch, LLP
6060 North Central Expressway, Suite 690
Dallas, TX 75206
wtm@reaganmclain.com

Dax D. Voss
Field, Manning, Stone, Hawthorne &
Aycock, P.C.
A Professional Corporation
2112 Indiana Avenue
Lubbock, TX 79410
dvoss@lubbocklawfirm.com

Henry W. Simon, Jr.
Robert A. Simon
Barlow Garsek & Simon, LLP
920 Foch Street
Fort Worth, TX 76107
hsimon@bgsfirm.com
rsimon@bgsfirm.com

Joseph D. Frank
Jeremy C. Kleinman
Reed Heiligman
FrankGecker LLP
325 North LaSalle Street, Suite 625
Chicago, IL 60654
jfrank@fgllp.com
jkleinman@fgllp.com
rheiligman@fgllp.com

Jonathan S. Covin
Shayla Friesen
Wick Phillips Gould & Martin, LLP
2100 Ross Avenue, Suite 950
Dallas, TX 75201
Jonathan.covin@wickphillips.com
Shayla.friesen@wickphillips.com

**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFET PARTNERS, L.P. | § | Case No. 14-30699 (HDH) |
| | § | |
| Debtor. | § | |

**ORDER GRANTING MOTION OF PREMIUM ASSIGNMENT CORPORATION**
**FOR RELIEF FROM THE AUTOMATIC STAY AND**
**REQUEST FOR ADEQUATE PROTECTION**

Upon the Motion of Premium Assignment Corporation for Relief from the Automatic Stay and Request for Adequate Protection (the "*Motion*"), the Court, having jurisdiction to consider the Motion, finding that sufficient notice of the Motion was given, and having heard the evidence and arguments of counsel, finds that the Motion should be granted. Unless otherwise stated herein, all capitalized terms shall have the meanings assigned to them in the Motion. It is therefore:

ORDERED that the Motion is GRANTED in its entirety; and it is further

ORDERED that relief from the automatic stay in the above-captioned case is granted so that PAC may, at PAC's option, exercise any and all remedies to which PAC is entitled under any applicable non-bankruptcy law; and it is further

ORDERED that the fourteen-day stay of an order granting a motion for relief from the automatic stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) is hereby waived; and it is further

ORDERED that this Court shall have jurisdiction over any and all disputes arising under this Order.

# # # END OF ORDER # # #

Submitted and prepared by:

AKIN GUMP STRAUSS HAUER & FELD LLP

Sarah J. Crow (Texas State Bar No. 24072518)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-4278
Facsimile:  (214) 969-4343
sjcrow@akingump.com

ATTORNEYS FOR PREMIUM ASSIGNMENT CORPORATION

204557643 v1

## EXHIBIT B

### Affidavit of Kelton Farris

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFET PARTNERS, L.P. | § | Case No. 14-30699 (HDH) |
| | § | |
| Debtor. | § | |

**AFFIDAVIT OF KELTON FARRIS IN SUPPORT OF MOTION OF PREMIUM
ASSIGNMENT CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY
AND REQUEST FOR ADEQUATE PROTECTION**

I, Kelton Farris, declare the following:

1.     I am of sound mind and capable of making this declaration, and I am personally acquainted with the facts herein stated.[1]

2.     I am Vice President and Attorney and duly authorized agent of Premium Assignment Corporation (the "*Lender*" or "*PAC*"), which is a creditor and party-in-interest in the above-referenced case.

A.     **The Financing Agreement**

3.     On or about October 11, 2013, PAC and the Debtor entered into that certain Premium Finance Agreement effective as of September 30, 2013 (the "*Finance Agreement*"), a true and correct copy of which is attached as <u>Appendix 1</u>. Pursuant to the terms of the Finance Agreement, PAC advanced $577,355.41 to the Debtor's insurance carrier (or the carrier's agent) to prepay one year of the Debtor's premiums due for eleven insurance policies identified in <u>Appendix 1</u> (the "*Policies*"), which Policies include, among other things, coverage for general liability, workers' compensation, directors and officers, crime, cargo, products liability, and

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Premium Assignment Corporation's Motion for Relief from the Automatic Stay and Request for Adequate Protection (the "*Motion*") filed concurrently herewith.

pollution.    In exchange, the Debtor made a down payment on the premiums in the amount of $101,886.25 and agreed to make ten (10) monthly payments to PAC, each in the amount of $58,583.05, with the first installment due October 30, 2013, and subsequent installments due on the 30th day of each successive month thereafter.

### B.    PAC's Security Interest in the Collateral

4.    As security for the Debtor's obligations, the Debtor assigned to PAC all unearned premiums or other sums that may become payable under the Policies (the "*Collateral*"). Specifically, paragraph 1 of the Finance Agreements provides as follows: "To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3."

5.    The Debtor granted PAC the power to cancel the Policies and to collect all unearned premiums in the event that the Debtor defaulted under the terms of the Finance Agreements.    Specifically, paragraph 2 of the Finance Agreements provides as follows: "BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT."

6.    Paragraph 7 of the Finance Agreements governs the terms of default and cancellation of the Policies.  Specifically, paragraph 7 provides as follows:

> A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner . . . After default, any unpaid balance of the Total Amount Financed may become immediately due and payable in full at the option of Lender, and Lender may enforce its security interest and its rights under the Limited Power of Attorney . . . Lender may request cancellation of any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law.

**C.     The Debtor's Failure to Make Payment under the Finance Agreements**

7.     As set forth on the account history attached as <u>Appendix 2</u>, the Debtor failed to make any payment for the month of January and made a late payment on March 3, 2013 for the month of February.  In addition, the Debtor has not paid late charges assessed for January  As of the date hereof, as set forth on the statement of account attached as <u>Appendix 2</u>, the Debtor's outstanding balance under the Finance Agreement is $354,427.45.  The Debtor's failure to remit payment constitutes a default pursuant to paragraph 7 of the Finance Agreement.  After the Debtor's default, on or about February 13, 2014, PAC gave notice to the Debtor's counsel of its intent to pursue remedies in this Court, which notice is attached as <u>Appendix 3</u>.

**D.     The Value of the Collateral Is Declining**

8.     According to PAC's calculations, the value of PAC's Collateral as of the Petition Date was approximately $438,115.22.  Despite the Debtor's default under the Finance Agreement, the Debtor continues to consume PAC's Collateral in that a portion of the unearned premiums become earned each day.  Thus, the value of PAC's Collateral continues to irreparably decrease at the rate of approximately $1,800 per day.  Accordingly, as of the date hereof, the value of the Collateral is approximately $354,427.45, and the outstanding balance under the Finance Agreement is $354,427.45.  Therefore, PAC is a fully secured creditor entitled to adequate protection of its interest in rapidly depreciating collateral.  PAC currently has an equity cushion of approximately $29,766 that the Debtor will consume within 17 days of the date hereof.

**E.     PAC Has Not Received Any Form of Adequate Protection**

9.     PAC has not received any cash payment, replacement lien, or other relief from the Debtor other than that described above.

10.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 7, 2014

_____
Kelton Farris

## Appendix 1

**Finance Agreement**

204558525



PREMIUM FINANCE AGREEMENT

**PREMIUM ASSIGNMENT**
**C O R P O R A T I O N**

\*\*\*C993854\*\*\*

Texas
P.O. Box 8800 - 3522 Thomasville Rd.
Tallahassee, FL 32314
Phone 850-907-5610

| ☐ PERSONAL | ☒ COMMERCIAL | ☐ NEW | ☒ AGENCY RENEWAL | ☐ ADD'L PREMIUM |
|---|---|---|---|---|

THIS AGREEMENT, made effective the ___30___ day of ___September 2013___, between

**BUFFET PARTNERS LP**
(Name of Borrower/Insured exactly as it appears in financed policies)

ADDRESS ___2701 E PLANO PKY #200___

CITY ___PLANO___ STATE ___TX___ ZIP ___75074___ PHONE # ___(214) 291-2846___

hereinafter called the Borrower, and Premium Assignment Corporation , a Florida Corporation hereinafter called Lender, for the purpose of financing the purchase of insurance policies described in the Scheduled Policies of Insurance listed in page 3 to this Agreement.

| TOTAL PRICE OF PREMIUMS | - CASH DOWN PAYMENT | = PRINCIPAL BALANCE OWED ON PREMIUMS | + DOC STAMPS & SERVICE FEE (if applicable) | = TOTAL AMOUNT FINANCED | + FINANCE CHARGE (Amount credit costs over term of loan) | = TOTAL OF PAYMENTS (Amount paid if all payments made as scheduled) | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| 679,241.66 | 101,886.25 | 577,355.41 | 0.00 | 577,355.41 | 8,475.09 | 585,830.50 | 3.19 |

| SELECT BILLING OPTION: ☐ Payment Book ☒ Monthly Invoice ☐ Direct Debit **YOUR PAYMENT SCHEDULE WILL BE:** Each monthly payment due on same day of each succeeding month until paid in full. | Amount of Monthly Payment | Number of Payments | Date First Payment is Due |
|---|---|---|---|
| | 58,583.05 | 10 | 10/30/2013 |

FOR VALUE RECEIVED, BORROWER PROMISES TO PAY to the order of Lender at the address given at the top of this page, the Total Amount Financed and all sums shown above, including interest at the Annual Percentage Rate and other charges as described hereinafter, pursuant to the terms stated below and in page 2 of this Agreement.

1. SECURITY FOR PAYMENT: To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3.

2. LIMITED POWER OF ATTORNEY: BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT.

3. NOTICE TO BORROWER: (1) Do not sign this Agreement before you read it, or if it contains any blank space (other than as provided on the next page), (2) You are entitled to have and should retain a completely filled in copy of this Agreement, and (3) BY SIGNING BELOW BORROWER AGREES TO THE PROVISIONS ABOVE AND ALL OF THE TERMS WHICH APPEAR ON THE SECOND PAGE OF THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF COPIES OF PAGES 1, 2 AND 3 OF THIS AGREEMENT and (4) The undersigned Agency will receive from Lender $3,196.00 for aiding in the preparation of this Agreement and payment of the financed premiums.

SIGNATURE OF ALL INSURED(S) NAMED IN POLICIES OR AUTHORIZED AGENT OF INSURED(S), AS PERMITTED BY LAW:

10-11-13 X _David Siebert_, CFO     10/11/13  David Siebert CFO
Date  Name and Title:               Date  Name and Title:

**PRODUCER'S REPRESENTATIONS & WARRANTIES:**

The undersigned Producer represents and warrants that: (A) The Cash Down Payment shown above has been paid by or on behalf of the Borrower. (B) The Total Price of Premiums shown above has been or will be used to purchase insurance policies shown in the Scheduled Policies of Insurance on page 3 of this Agreement. Any portion of the Total Price of Premiums received by Producer that is not used to purchase such insurance policies, as well as any refunds or credits on such policies, shall be promptly paid to Lender. (C) To the best of the undersigned's knowledge and belief, Borrower is not subject to any bankruptcy or insolvency proceedings and Producer has no reason to believe that Borrower is insolvent. (D) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (E) Producer has delivered or will deliver a copy of this Agreement to Borrower. Producer agrees that the Representations & Warranties above, as well as those on page 3 of this Agreement, are a binding contract between Producer and Lender.

PRODUCER / AGENCY
Name ___WFIS USA INC/DALLAS___
Address ___5151 BELT LINE RD STE 200___
___DALLAS , TX 75254___

10/11/13
Date     PRODUCER'S SIGNATURE

RECEIVED OCT 1 1 2013



IN CONSIDERATION of the payment by Lender of the Principal Balance Owed on Premiums shown on page 1 to the insurance companies named in the Scheduled Policies of Insurance shown on page 1 (or the agents of such companies), the Borrower agrees.

4. ACCEPTANCE DATE  This Agreement is binding upon its acceptance by Lender. Acceptance shall occur upon payment of the Principal Balance Owed on Premiums to the insurance companies named in the Scheduled Policies of Insurance, or the agents of such companies.

5. PAYMENTS  Borrower shall make payments directly to Lender in the amounts and at the same time specified on page 1 of this Agreement. Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing. Payments made to any other address, person, firm, corporation or insurance agency (including but not limited to the Producer) shall not constitute payment to Lender. Payments received after cancellation of the Scheduled Policies of Insurance shall be credited to the unpaid balance due under this Agreement and shall not constitute reinstatement of the cancelled policies, nor shall it constitute a waiver by Lender of any rights.

6. LATE CHARGES  If a payment is more than 10 days late, Borrower agrees to pay a late charge of 5% of each delinquent or unpaid installment, unless prohibited by applicable law.

7. DEFAULT/CANCELLATION  A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner, including interest and Late Charges, or if Borrower fails to carry out any other obligations under this Agreement. After default, any unpaid balance of the Total Amount Financed may become immediately due and payable in full at the option of Lender, and Lender may enforce its security interest and its rights under the Limited Power of Attorney. Interest will continue to accrue on the unpaid balance at the Annual Percentage Rate or maximum rate allowed by applicable law, at the option of Lender, until all balances owed under this Agreement are paid. Lender may request cancellation of all or any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law.

8. EXCESS INTEREST OR FEES  It is the intent of the Lender that no interest, fee or charge in excess of that permitted by applicable law will be charged, taken or become payable under this Agreement. In the event it is determined that Lender has taken, charged or accrued interest, fees or charges in excess of that permitted under law, such excess shall be returned to Borrower or credited against the sum due Lender hereunder.

9. REFUNDS  The Borrower will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to applicable law (Rule of 78's).

10. SHORTAGE OR OVERAGE OF RETURNED PREMIUM  If Lender does not receive unearned premiums or other funds after cancellation or expiration of the Scheduled Policies of Insurance in an amount sufficient to pay the unpaid balance due under this Agreement, Borrower agrees to pay the deficiency to Lender on demand. Interest shall accrue on the deficiency at the Annual Percentage Rate, or the maximum rate allowed by applicable law, at the option of Lender. If the unearned premiums received by Lender are more than the amount due under this Agreement, the excess shall be returned to Borrower within the time allowed by applicable law. Borrower has no right to any excess of less than the minimum amount required to be paid by applicable law.

11. ATTORNEYS FEES/COURT COSTS  Borrower agrees to pay all attorneys fees, expenses and costs incurred by Lender in collecting amounts due from Borrower under this Agreement, including attorneys fees incurred on appeal and in bankruptcy, unless prohibited or limited by applicable law.

12. LENDER RELATIONSHIP  Borrower acknowledges that: (a) Lender is not an insurance agent nor an insurance company; (b) This Agreement is a financing agreement and not an insurance policy or guarantee of insurance coverage; (c) Lender has played no part in the selection or structuring of the financed insurance policies; (d) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default under this Agreement; and (e) The decision of whether to reinstate insurance coverage is made solely by the insurance companies providing coverage, not Lender.

13. ADDITIONAL PREMIUMS  Lender may advance to Producer, as Borrower's agent, or to an insurance company any additional premiums that may become due, less normal down payment, adding the advanced amount, plus any finance charge, to Borrower's balance under this Agreement. However, any additional premium which is owed to the insurance company(ies) named in the Scheduled Policies of Insurance as a result of any misclassification of risk which is not paid in full or financed in this Agreement may result in cancellation of the coverage by the insurance company for nonpayment of premium. Lender's payment shall not be applied by the insurer to pay for any additional premium owed by Borrower as a result of any misclassification of risk.

14. LENDER LIABILITY  Lender is not responsible for any damages resulting from cancellation of the Scheduled Policies of Insurance by Lender, as long as the cancellation was done in accordance with applicable law. Borrower shall be responsible for Lender's reasonable attorneys fees and expenses for any unsuccessful action filed by Borrower seeking damages for improper cancellation. Lender's liability for breach of this Agreement shall be limited to the Principal Balance Financed under this Agreement, if permitted by applicable law.

15. RETURNED CHECKS  Borrower agrees to pay a returned check fee of $20, as allowed by applicable law, for each of Borrower's checks returned to Lender for insufficient funds or because the insured has no account in the payor bank.

16. WARRANTIES OF BORROWER  Borrower warrants that: (a) Each of the Scheduled Policies of Insurance have been issued or a binder has been issued; (b) Borrower has not and will not assign or encumber any unearned premium of the Scheduled Policies of Insurance or grant a power of attorney to cancel the Scheduled Policies of Insurance to anyone other than Lender until all sums due under this Agreement are paid in full; (c) Lender may assign all its rights under this Agreement as allowed by applicable law; (d) No proceeding in bankruptcy or insolvency has been instituted by or against Borrower or is contemplated by Borrower; and (e) No insurance financed by this Agreement was purchased for personal, family or household purposes, unless so indicated on page 1.

17. INTEREST CALCULATION  Interest is computed on an annual basis of 12 months or 30 days on the balance of the Amount Financed, from the effective date of each insurance policy for which premiums are being advanced to the date when all sums due under this Agreement are paid.

18. BLANK SPACES  Borrower agrees that if any policy financed by this Agreement has not been issued at the time the Agreement is signed, the names of the insurance companies issuing the financed policies, the policy numbers and the due date of the first installment may be inserted in the Agreement after it is signed.

19. GOVERNING LAW  The Parties agree that the law of the state in which this Agreement is executed shall control the interpretation of the Agreement and the rights of the parties, unless the Agreement is executed in a state without premium finance laws, in which case the law of the State of Florida shall govern.

20. SAVINGS AND MERGER CLAUSE  The Parties agree that if one or more portions of this Agreement are found to be invalid or unenforceable for any reason, the remaining portions shall remain fully enforceable. The parties also agree that this Agreement contains the entire agreement between the parties regarding the subject matter herein and supersedes any prior discussions.

21. FINANCING OPTION  Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.

RECEIVED OCT 1 1 2013

PREMIUM ASSIGNMENT
CORPORATION

State: TX

# #479299

## SCHEDULED POLICIES OF INSURANCE

V8(0)G3196GH.79P-0.25

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO, TX 75074
(214) 291-2846

***C993854***

WFIS USA INC/DALLAS
5151 BELT LINE RD STE 200
DALLAS , TX 75254
(972) 588-6456

20421

| Premium | Down Payment | Unpaid Balance | Doc Stamps/Fees | Amt. Financed | Finance Charges | Total / Payments |
|---|---|---|---|---|---|---|
| 679,241.66 | 101,886.25 (15.00 %) | 577,355.41 | 0.00 | 577,355.41 | 8,475.09 | 585,830.50 |

| Payment | Payments | Rate | First Due | Type | Status | Contract Type |
|---|---|---|---|---|---|---|
| 58,583.05 | 10 | 3.19 % | 10/30/2013 | INVOICE | RENEW | COMMERCIAL |

| EFF DATE EXP DATE | | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 9/30/2013 | CO: | COLUMBIA CAS | CHICAGO | IL | 87804 | GL | 5095397953 | 192,500.00 |
| 9/30/2014 | MGA: | RT SPECIALTY | ATLANTA | GA | 64578 | 25.00 % | | |
| | | | | | | | Taxes/Fees | 9,451.75 |
| | | | | | | | Total | 201,951.75 ✓ |
| 9/30/2013 | CO: | SAINT PAUL FIRE & MAR | GREENWOOD V | ** | 86527 | UMBR | ZUP14S9370713NF | 58,930.00 ✓ |
| 9/30/2014 | MGA: | | | | | 0.00 % | | |
| 9/30/2013 | CO: | GREAT AMERICAN INS | CINCINNATI | ** | 85971 | XUMB | TUE405722007 | 21,677.00 ✓ |
| 9/30/2014 | MGA: | | | | | 10.00 % | | |
| 9/30/2013 | CO: | NORTH AMER CAPACITY | MANCHESTER | NH | 84317 | WC | EEG000513201 | 99,880.00 |
| 9/30/2014 | MGA: | COMBINED IND AGENCIES INC | DALLAS | TX | 65867 | 25.00 % | | |
| | | | | | | | Taxes/Fees | 9,834.88 |
| | | | | | | | Total | 109,714.88 ✓ |

Created By: UFDK30                                Auth Code:

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,     except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:
Policy No and Prefix No:

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**

Page 3 of 5

RECEIVED OCT 1 1 2013

PREMIUM ASSIGNMENT
C O R P O R A T I O N

State: TX

# SCHEDULED POLICIES OF INSURANCE

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO, TX 75074
(214) 291-2846

WFIS USA INC/DALLAS
5151 BELT LINE RD STE 200
DALLAS , TX 75254
(972) 588-6456

***C993854***

V8(0)G3196G1L79P-0.25
20421

| EFF DATE EXP DATE | | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 9/30/2013 9/30/2014 | CO: MGA: | WESTCHESTER FIRE INS | ALPHARETTA | GA | 86563 | D&O 0.00 % | G25072388 001 | 58,082.00 |
| 9/30/2013 9/30/2014 | CO: MGA: | FEDERAL INS CO | DALLAS TX | ** | 84320 | XSDO 0.00 % | 82108043 | 15,392.00 |
| 9/30/2013 9/30/2014 | CO: MGA: | FEDERAL INS CO | DALLAS TX | ** | 84320 | CRIM 0.00 % | | 17,945.00 |
| 9/30/2013 9/30/2014 | CO: MGA: | LLOYDS OF LONDON WFIS USA INC | TALLAHASSEE DALLAS | FL TX | 82864 67527 | CARG 25.00 % | NOIT4068 6013 | 7,500.00 |
| | | | | | | | Taxes/Fees Total | 368.25 7,868.25 |
| 10/1/2013 10/1/2014 | CO: MGA: | LLOYDS OF LONDON PROF LIAB INS SVCS | TALLAHASSEE LAGO VISTA | FL TX | 82864 61547 | PROD 0.00 % | 330592120 171 | 12,325.00 |
| | | | | | | | Taxes/Fees Total | 762.52 13,087.52 |
| 9/30/2013 9/30/2014 | CO: MGA: | ILLINOIS UNION INS | CHICAGO | IL | 86299 | LIAB 0.00 % | 014246714 | 28,751.00 |

Created By: UFDK36                Auth Code: _____

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,      except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:
Policy No and Prefix No:

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**

Page 4 of 5

RECEIVED OCT 1 1 2013

 PREMIUM ASSIGNMENT
C O R P O R A T I O N

State: TX

## SCHEDULED POLICIES OF INSURANCE

V8(0)G3196GH.79P-0.25

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO, TX 75074
(214) 291-2846

\*\*\*C993854\*\*\*

WFIS USA INC/DALLAS
5151 BELT LINE RD STE 200
DALLAS , TX 75254
(972) 588-6456

20421

| EFF DATE EXP DATE | COMPANY / BROKER | | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 9/30/2013 9/30/2016 | CO: MGA: | INDIAN HARBOR INS CO | STAMFORD | CT | 84750 | POLL 25.00 % | PEC00243 3004 | 30,046.00 |
| | | | | | | | Taxes/Fees | 1,475.26 |
| | | | | | | | Total | 31,521.26 |
| 9/30/2013 9/30/2014 | CO: MGA: | AGENCY CONSULTING FEE | TALLAHASSEE | ** | 83698 | FEES 0.00 % | | 114,321.00 |

Created By: UFDK30

Auth Code: _____

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,     except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:
Policy No and Prefix No: _____

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.

RECEIVED OCT 1 1 2013

## Appendix 2

**Statement of Account**

204558525

```
Account Number: 479299      1st  Due Date: 10/30/13

Prepared:  3/06/14          Last Due Date:  7/30/14



     BUFFET PARTNERS LP
     2701 E PLANO PKY #200
     PLANO TX 75074
```

| Transaction Date | Transaction Description | Transaction Amount | Balance After Transaction |
|---|---|---|---|
| 10/14/13 | Total To Be Repaid (Includes any additional premiums processed) | .00 | 585,830.50 |
| 11/08/13 | Payment Received | 58,583.05CR | 527,247.45 |
| 12/10/13 | Payment Received | 58,583.05CR | 468,664.40 |
| 1/09/14 | Payment Received | 58,583.05CR | 410,081.35 |
| 2/10/14 | Late Charge | 2,929.15 | 413,010.50 |
| 3/03/14 | Payment Received | 58,583.05CR | 354,427.45 |
| 3/06/14 | Current Balance | | 354,427.45 |

## Appendix 3

**Notice to Debtor's Counsel**



Kelton M. Farris | VP/Collections, Attorney
3522 Thomasville Road | Suite 400 | Tallahassee | Florida | 32309
850.907.5312 | Kelton.Farris@SunTrust.com
850.894.1518 fax

February 13, 2014

Via email: john.mitchell@bakermckenzie.com

John E. Mitchell, Esquire
Baker & McKenzie, LLP
2001 Ross Avenue, Suite 2300
Dallas, TX  75201

Re:    Buffet Partners, L.P. - PAC Loan No. 479299
       Chapter 11 Bankruptcy Case No. 14-30699

Dear Mr. Mitchell:

Premium Assignment Corporation ("PAC") received notification that Buffet Paratners, L.P. ("BP") filed a voluntary Chapter 11 bankruptcy case on February 4, 2014.  The following information will explain PAC's interest in this matter.

PAC financed the purchase of BP's commercial lines insurance policies in September of 2013 pursuant to the attached premium finance agreement.  Please note that paragraph 2, on the first page of the agreement allows PAC to cancel the financed policies after BP defaults in making any payment under the agreement, and paragraph 1 gives PAC a security interest in any unearned premiums due after cancellation of the financed policies.  In addition, §651.161(d) of the Texas Insurance Code requires insurance companies to honor a premium finance company's cancellation and §651.162(b) requires insurance companies to return unearned premiums to a premium finance company after cancellation.

BP failed to pay the January 30th installment of $58,583.05, and the attached intent to cancel notices were generated on February 10, 2014.  If BP does not provide adequate protection by bringing the loan current, PAC will move for relief from stay to cancel the financed policies and exercise its rights under the finance agreement and Texas law.  (See In re JII Liquidating, Inc., 344 B.R. 875, (Bkrtcy N.D. Ill. 2006) regarding the right of a finance company to cancel financed policies and obtain unearned premiums after a bankruptcy filing.)

– 2 –

Please contact me at the email address or number given above if you have any questions or need additional information.  Thank you.

Sincerely,

*Kelton M. Farris* (signature)

Kelton M. Farris
Vice President and Counsel

Attachments

cc:     Deborah.Brown@wellsfargo.com
        Susan Cunningham, Vice President; PAC
        Mary McFaden, Legal Department, PAC

# PREMIUM ASSIGNMENT CORPORATION

**PREMIUM FINANCE AGREEMENT**

***C993854***

Texas
P.O. Box 8800 - 3522 Thomasville Rd.
Tallahassee, FL 32314
Phone 850-907-5610

| ☐PERSONAL | ☒COMMERCIAL | ☐NEW | ☒AGENCY RENEWAL | ☐ADD'L PREMIUM |
|---|---|---|---|---|

THIS AGREEMENT, made effective the _____ 30 _____ day of _____ September 2013 _____, between

**BUFFET PARTNERS LP**
(Name of Borrower/Insured exactly as it appears in financed policies)

ADDRESS __2701 E PLANO PKY #200__

CITY __PLANO__      STATE __TX__    ZIP __75074__      PHONE # __(214) 291-2846__

hereinafter called the Borrower, and Premium Assignment Corporation , a Florida Corporation hereinafter called Lender, for the purpose of financing the purchase of insurance policies described in the Scheduled Policies of Insurance listed in page 3 to this Agreement.

| TOTAL PRICE OF PREMIUMS | - CASH DOWN PAYMENT | = PRINCIPAL BALANCE OWED ON PREMIUMS | + DOC STAMPS & SERVICE FEE (if applicable) | = TOTAL AMOUNT FINANCED | + FINANCE CHARGE (Amount credit costs over term of loan) | = TOTAL OF PAYMENTS (Amount paid if all payments made as scheduled) | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| 679,241.66 | 101,886.25 | 577,355.41 | 0.00 | 577,355.41 | 8,475.09 | 585,830.50 | 3.19 |

| SELECT BILLING OPTION: ☐Payment Book ☒Monthly Invoice ☐Direct Debit | Amount of Monthly Payment | Number of Payments | Date First Payment is Due |
|---|---|---|---|
| **YOUR PAYMENT SCHEDULE WILL BE:** Each monthly payment due on same day of each succeeding month until paid in full. | 58,583.05 | 10 | 10/30/2013 |

FOR VALUE RECEIVED, BORROWER PROMISES TO PAY to the order of Lender at the address given at the top of this page, the Total Amount Financed and all sums shown above, including interest at the Annual Percentage Rate and other charges as described hereinafter, pursuant to the terms stated below and in page 2 of this Agreement.

1. **SECURITY FOR PAYMENT:** To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3.

2. **LIMITED POWER OF ATTORNEY:** BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT.

3. **NOTICE TO BORROWER:** (1) Do not sign this Agreement before you read it, or if it contains any blank space (other than as provided on the next page), (2) You are entitled to have and should retain a completely filled in copy of this Agreement, and (3) BY SIGNING BELOW BORROWER AGREES TO THE PROVISIONS ABOVE AND ALL OF THE TERMS WHICH APPEAR ON THE SECOND PAGE OF THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF COPIES OF PAGES 1, 2 AND 3 OF THIS AGREEMENT and (4) The undersigned Agency will receive from Lender $3,196.00 for aiding in the preparation of this Agreement and payment of the financed premiums.

SIGNATURE OF ALL INSURED(S) NAMED IN POLICIES OR AUTHORIZED AGENT OF INSURED(S), AS PERMITTED BY LAW:

10-11-13  X _David Siebert_ , CEO          10/11/13   David Siebert CFO
Date        Name and Title:                 Date       Name and Title:

## PRODUCER'S REPRESENTATIONS & WARRANTIES:

The undersigned Producer represents and warrants that:    (A) The Cash Down Payment shown above has been paid by or on behalf of the Borrower. (B) The Total Price of Premiums shown above has been or will be used to purchase insurance policies shown in the Scheduled Policies of Insurance on page 3 of this Agreement. Any portion of the Total Price of Premiums received by Producer that is not used to purchase such insurance policies, as well as any refunds or credits on such policies, shall be promptly paid to Lender. (C) To the best of the undersigned's knowledge and belief, Borrower is not subject to any bankruptcy or insolvency proceedings and Producer has no reason to believe that Borrower is insolvent. (D) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (E) Producer has delivered or will deliver a copy of this Agreement to Borrower. Producer agrees that the Representations & Warranties above, as well as those on page 3 of this Agreement, are a binding contract between Producer and Lender.

PRODUCER / AGENCY
Name __WFIS USA INC/DALLAS__
Address __5151 BELT LINE RD STE 200__
__DALLAS , TX 75254__

10/11/13              X _____
Date              PRODUCER'S SIGNATURE

RECEIVED OCT 1 1 2013


PREMIUM ASSIGNMENT
C O R P O R A T I O N

IN CONSIDERATION of the payment by Lender of the Principal Balance Owed on Premiums shown on page 1 to the insurance companies named in the Scheduled Policies of Insurance shown on page 3 (or the agents of such companies), the Borrower agrees.

4. **ACCEPTANCE DATE** This Agreement is binding upon its acceptance by Lender. Acceptance shall occur upon payment of the Principal Balance Owed on Premiums to the insurance companies named in the Scheduled Policies of Insurance, or the agents of such companies.

5. **PAYMENTS** Borrower shall make payments directly to Lender in the amounts and at the same time specified on page 1 of this Agreement. Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing. Payments made to any other address, person, firm, corporation or insurance agency (including but not limited to the Producer) shall not constitute payment to Lender. Payments received after cancellation of the Scheduled Policies of Insurance shall be credited to the unpaid balance due under this Agreement and shall not constitute reinstatement of the cancelled policies, nor shall it constitute a waiver by Lender of any rights.

6. **LATE CHARGES** If a payment is more than 10 days late, Borrower agrees to pay a late charge of 5% of each delinquent or unpaid installment, unless prohibited by applicable law.

7. **DEFAULT/CANCELLATION** A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner, including interest and Late Charges, or if Borrower fails to carry out any other obligations under this Agreement. After default, any unpaid balance of the Total Amount Financed may become immediately due and payable in full at the option of Lender, and Lender may enforce its security interest and its rights under the Limited Power of Attorney. Interest will continue to accrue on the unpaid balance at the Annual Percentage Rate or maximum rate allowed by applicable law, at the option of Lender, until all balances owed under this Agreement are paid. Lender may request cancellation of all or any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law.

8. **EXCESS INTEREST OR FEES** It is the intent of the Lender that no interest, fee or charge in excess of that permitted by applicable law will be charged, taken or become payable under this Agreement. In the event it is determined that Lender has taken, charged or accrued interest, fees or charges in excess of that permitted under law, such excess shall be returned to Borrower or credited against the sum due Lender hereunder.

9. **REFUNDS** The Borrower will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to applicable law (Rule of 78's).

10. **SHORTAGE OR OVERAGE OF RETURNED PREMIUM** If Lender does not receive unearned premiums or other funds after cancellation or expiration of the Scheduled Policies of Insurance in an amount sufficient to pay the unpaid balance due under this Agreement, Borrower agrees to pay the deficiency to Lender on demand. Interest shall accrue on the deficiency at the Annual Percentage Rate, or the maximum rate allowed by applicable law, at the option of Lender. If the unearned premiums received by Lender are more than the amount due under this Agreement, the excess shall be returned to Borrower within the time allowed by applicable law. Borrower has no right to any excess of less than the minimum amount required to be paid by applicable law.

11. **ATTORNEYS FEES/COURT COSTS** Borrower agrees to pay all attorneys fees, expenses and costs incurred by Lender in collecting amounts due from Borrower under this Agreement, including attorneys fees incurred on appeal and in bankruptcy, unless prohibited or limited by applicable law.

12. **LENDER RELATIONSHIP** Borrower acknowledges that: (a) Lender is not an insurance agent nor an insurance company; (b) This Agreement is a financing agreement and not an insurance policy or guarantee of insurance coverage; (c) Lender has played no part in the selection or structuring of the financed insurance policies; (d) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default under this Agreement; and (e) The decision of whether to reinstate insurance coverage is made solely by the insurance companies providing coverage, not Lender.

13. **ADDITIONAL PREMIUMS** Lender may advance to Producer, as Borrower's agent, or to an insurance company any additional premiums that may become due, less normal down payment, adding the advanced amount, plus any finance charge, to Borrower's balance under this Agreement. However, any additional premium which is owed to the insurance company(ies) named in the Scheduled Policies of Insurance as a result of any misclassification of risk which is not paid in full or financed in this Agreement may result in cancellation of the coverage by the insurance company for nonpayment of premium. Lender's payment shall not be applied by the insurer to pay for any additional premium owed by Borrower as a result of any misclassification of risk.

14. **LENDER LIABILITY** Lender is not responsible for any damages resulting from cancellation of the Scheduled Policies of Insurance by Lender, as long as the cancellation was done in accordance with applicable law. Borrower shall be responsible for Lender's reasonable attorneys fees and expenses for any unsuccessful action filed by Borrower seeking damages for improper cancellation. Lender's liability for breach of this Agreement shall be limited to the Principal Balance Financed under this Agreement, if permitted by applicable law.

15. **RETURNED CHECKS** Borrower agrees to pay a returned check fee of $20, as allowed by applicable law, for each of Borrower's checks returned to Lender for insufficient funds or because the insured has no account in the payor bank.

16. **WARRANTIES OF BORROWER** Borrower warrants that: (a) Each of the Scheduled Policies of Insurance have been issued or a binder has been issued; (b) Borrower has not and will not assign or encumber any unearned premium of the Scheduled Policies of Insurance or grant a power of attorney to cancel the Scheduled Policies of Insurance to anyone other than Lender until all sums due under this Agreement are paid in full; (c) Lender may assign all its rights under this Agreement as allowed by applicable law; (d) No proceeding in bankruptcy or insolvency has been instituted by or against Borrower or is contemplated by Borrower, and (e) No insurance financed by this Agreement was purchased for personal, family or household purposes, unless so indicated on page 1.

17. **INTEREST CALCULATION** Interest is computed on an annual basis of 12 months or 30 days on the balance of the policy Amount Financed, from the effective date of each insurance policy for which premiums are being advanced to the date when all sums due under this Agreement are paid.

18. **BLANK SPACES** Borrower agrees that if any policy financed by this Agreement has not been issued at the time the Agreement is signed, the names of the insurance companies issuing the financed policies, the policy numbers and the due date of the first installment may be inserted in the Agreement after it is signed.

19. **GOVERNING LAW** The Parties agree that the law of the state in which this Agreement is executed shall control the interpretation of the Agreement and the rights of the parties, unless the Agreement is executed in a state without premium finance laws, in which case the law of the State of Florida shall govern.

20. **SAVINGS AND MERGER CLAUSE** The Parties agree that if one or more portions of this Agreement are found to be invalid or unenforceable for any reason, the remaining portions shall remain fully enforceable. The parties also agree that this Agreement contains the entire agreement between the parties regarding the subject matter herein and supersedes any prior discussions.

21. **FINANCING OPTION** Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.

RECEIVED OCT 1 1 2013

PREMIUM ASSIGNMENT
CORPORATION

State: TX

#479299

## SCHEDULED POLICIES OF INSURANCE

V8(0)G3196GI1.79P-0.25
20421

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO, TX 75074
(214) 291-2846

WFIS USA INC/DALLAS
5151 BELT LINE RD STE 200
DALLAS, TX 75254
(972) 588-6456

***C993854***

| Premium | Down Payment | Unpaid Balance | Doc Stamps/Fees | Amt. Financed | Finance Charges | Total / Payments |
|---|---|---|---|---|---|---|
| 679,241.66 | 101,886.25 (15.00 %) | 577,355.41 | 0.00 | 577,355.41 | 8,475.09 | 585,830.50 |

| Payment | Payments | Rate | First Due | Type | Status | Contract Type |
|---|---|---|---|---|---|---|
| 58,583.05 | 10 | 3.19 % | 10/30/2013 | INVOICE | RENEW | COMMERCIAL |

| EFF DATE EXP DATE | | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 9/30/2013 9/30/2014 | CO: MGA: | COLUMBIA CAS RT SPECIALTY | CHICAGO ATLANTA | IL GA | 87804 64578 | GL 25.00 % | 5095397953 | 192,500.00 |
| | | | | | | | Taxes/Fees | 9,451.75 |
| | | | | | | | Total | 201,951.75 ✓ |
| 9/30/2013 9/30/2014 | CO: MGA: | SAINT PAUL FIRE & MAR | GREENWOOD V | ** | 86527 | UMBR 0.00 % | ZUP14S9370713NF | 58,930.00 ✓ |
| 9/30/2013 9/30/2014 | CO: MGA: | GREAT AMERICAN INS | CINCINNATI | ** | 85971 | XUMB 10.00 % | TUE405722007 | 21,677.00 ✓ |
| 9/30/2013 9/30/2014 | CO: MGA: | NORTH AMER CAPACITY COMBINED IND AGENCIES INC | MANCHESTER DALLAS | NH TX | 84317 65867 | WC 25.00 % | EEG000513201 | 99,880.00 |
| | | | | | | | Taxes/Fees | 9,834.88 |
| | | | | | | | Total | 109,714.88 ✓ |

Created By: UFDK30                    Auth Code:

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company, except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:

Policy No and Prefix No:

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.

Page 3 of 5

RECEIVED OCT 1 1 2013

PREMIUM ASSIGNMENT
C O R P O R A T I O N

State: TX

## SCHEDULED POLICIES OF INSURANCE

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO, TX 75074
(214) 291-2846

***C993854***

WFIS USA INC/DALLAS
5151 BELT LINE RD STE 200
DALLAS , TX 75254
(972) 588-6456

V8(0)G3196GI1.79P-0.25
20421

| EFF DATE EXP DATE | | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 9/30/2013 9/30/2014 | CO: MGA: | WESTCHESTER FIRE INS | ALPHARETTA | GA | 86563 | D&O 0.00 % | G25072388 001 | 58,082.00 |
| 9/30/2013 9/30/2014 | CO: MGA: | FEDERAL INS CO | DALLAS TX | ** | 84320 | XSDO 0.00 % | 82108043 | 15,392.00 |
| 9/30/2013 9/30/2014 | CO: MGA: | FEDERAL INS CO | DALLAS TX | ** | 84320 | CRIM 0.00 % | | 17,945.00 |
| 9/30/2013 9/30/2014 | CO: MGA: | LLOYDS OF LONDON WFIS USA INC | TALLAHASSEE DALLAS | FL TX | 82864 67527 | CARG 25.00 % | NOIT4068 6013 | 7,500.00 |
| | | | | | | | Taxes/Fees | 368.25 |
| | | | | | | | Total | 7,868.25 |
| 10/1/2013 10/1/2014 | CO: MGA: | LLOYDS OF LONDON PROF LIAB INS SVCS | TALLAHASSEE LAGO VISTA | FL TX | 82864 61547 | PROD 0.00 % | 330592120 171 | 12,325.00 |
| | | | | | | | Taxes/Fees | 762.52 |
| | | | | | | | Total | 13,087.52 |
| 9/30/2013 9/30/2014 | CO: MGA: | ILLINOIS UNION INS | CHICAGO | IL | 86299 | LIAB 0.00 % | 014246714 | 28,751.00 |

Created By: UFDK30

Auth Code:

ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,       except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:
Policy No and Prefix No:

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.

RECEIVED OCT 1 1 2013

PREMIUM ASSIGNMENT
C O R P O R A T I O N

State: TX

## SCHEDULED POLICIES OF INSURANCE

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO, TX 75074
(214) 291-2846

***C993854***

WFIS USA INC/DALLAS
5151 BELT LINE RD STE 200
DALLAS , TX 75254
(972) 588-6456

V8(0)G3196GI1.79P-0.25
20421

| EFF DATE EXP DATE | | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 9/30/2013 9/30/2016 | CO: MGA: | INDIAN HARBOR INS CO | STAMFORD | CT | 84750 | POLL 25.00 % | PEC00243 3004 | 30,046.00 |
| | | | | | | | Taxes/Fees | 1,475.26 |
| | | | | | | | Total | 31,521.26 |
| 9/30/2013 9/30/2014 | CO: MGA: | AGENCY CONSULTING FEE | TALLAHASSEE ** | | 83698 | FEES 0.00 % | | 114,321.00 |

Created By: UFDK30

Auth Code:

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,      except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:

Policy No and Prefix No:

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.

RECEIVED OCT 1 1 2013

1327

 PREMIUM ASSIGNMENT CORPORATION | 3522 Thomasville Rd. Ste 400 | Tallahassee | Florida | 32309
Post Office Box 8800 | Tallahassee | Florida | 32314-8800
850.907.5610 | www.premiumassignment.com

**NOTICE OF INTENT TO CANCEL**

Date of Notice: 2/10/2014
Scheduled to Cancel: 2/25/2014
Agency Number: 20421
Policy Number(s): NPC993854

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO TX 75074

| | |
|---|---|
| PEC002433004 | 014246714 |
| 330592120171 | NOIT40686013 |
| BINDER 007 | 82108043 |
| G25072388001 | EEG000513201 |
| TUE405722007 | ZUP14S9370713NF |

Note: MORE policies on following page

The payment identified below has not been received under your premium finance loan. **If this payment is not received at the address above within 15 days from the date of the notice, Premium Assignment Corporation ("PAC") will cancel the insurance policy or policies as provided in your finance agreement.** Any payment received on or after the scheduled cancellation date shown above will not reinstate your insurance coverage. **Please give this matter your immediate attention.**

AGENT: WFIS USA INC/DALLAS | 5151 BELT LINE RD STE 200 | DALLAS TX | 75254

| LOAN NUMBER | PAYMENT DUE DATE | NORMAL PAYMENT | LATE FEE | TOTAL PAST DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 479299 | 1/30/2014 | $58,583.05 | $2,929.15 | $61,512.20 | $61,512.20 |

### WARNING: SEE OTHER SIDE OF THIS PAGE FOR IMPORTANT NOTICES.



REV12/01

**Return the BOTTOM portion with your payment.**
### NOTICE OF INTENT TO CANCEL

**Make your "PAYMENT ONLINE" today**
**www.premiumassignment.com**

3522 Thomasville Rd. Ste 400 | Tallahassee | Florida | 32309
Post Office Box 8800 | Tallahassee | Florida | 32314-8800

| LOAN NUMBER | PAYMENT DUE DATE | NORMAL PAYMENT | LATE FEE | TOTAL PAST DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 479299 | 1/30/2014 | $58,583.05 | $2,929.15 | $61,512.20 | $61,512.20 |

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO TX 75074

000002000479299000005858305800006l5122000

1327



PREMIUM ASSIGNMENT
C O R P O R A T I O N

3522 Thomasville Rd. Ste 400  |  Tallahassee |  Florida  |  32309
Post Office Box 8800  |  Tallahassee |  Florida  |  32314-8800
850.907.5610  |  www.premiumassignment.com

**NOTICE OF
INTENT TO
CANCEL**

Date of Notice:  2/10/2014
Scheduled to Cancel:  2/25/2014
Agency Number:  20421
Policy Number(s):  5095397953

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO TX 75074

The payment identified below has not been received under your premium finance loan.  **If this payment is not
received at the address above within 15 days from the date of the notice, Premium Assignment
Corporation ("PAC") will cancel the insurance policy or policies as provided in your finance agreement.**
Any payment received on or after the scheduled cancellation date shown above will not reinstate your insurance
coverage.    **Please give this matter your immediate attention.**

AGENT: WFIS USA INC/DALLAS | 5151 BELT LINE RD STE 200 | DALLAS TX | 75254

| LOAN NUMBER | PAYMENT DUE DATE | NORMAL PAYMENT | LATE FEE | TOTAL PAST DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 479299 | 1/30/2014 | $58,583.05 | $2,929.15 | $61,512.20 | $61,512.20 |

WARNING: SEE OTHER SIDE OF THIS PAGE FOR IMPORTANT NOTICES.



REV12/03

**Return the BOTTOM portion with your payment.**
**NOTICE OF INTENT TO CANCEL**

**Make your "PAYMENT ONLINE" today**
**www.premiumassignment.com**

3522 Thomasville Rd. Ste 400  |  Tallahassee |  Florida  |  32309
Post Office Box 8800  |  Tallahassee |  Florida  |  32314-8800

| LOAN NUMBER | PAYMENT DUE DATE | NORMAL PAYMENT | LATE FEE | TOTAL PAST DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 479299 | 1/30/2014 | $58,583.05 | $2,929.15 | $61,512.20 | $61,512.20 |

BUFFET PARTNERS LP
2701 E PLANO PKY #200
PLANO TX 75074

0000020004792990000058583058000061512200