# EXHIBIT B

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale (the "Sale") of certain assets and equity interests (the "Purchased Assets") of Buffet Partners, L.P. (the "Debtor"). At a hearing following the Auction, the Debtor will seek entry of an order (the "Sale Order") from the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Debtor determines to have made the highest or otherwise best bid.

**I.     Assets to be Sold**

As described in the Purchase Agreement, all of the Debtor's right, title and interest in all of the Debtor's properties and assets of every kind and description whether real, personal, mixed, tangible or intangible and wherever located, except for Excluded Assets, including the following:[1]

(a)     all inventory as of the Closing Date, including all finished goods, work in process and raw materials;

(b)     all of the rights of the Seller under all Contracts to which the Seller is a party, by which the Seller or any of the Purchased Assets is bound or affected or pursuant to which Seller is a beneficiary, including any rights the Seller may have under nondisclosure, confidentiality, non-solicitation, non-competition and similar agreements and those Contracts set forth in Schedule 2.1(b) to the extent such Contracts are assumed pursuant to Section 5.12 (collectively, the "Included Contracts"); provided, however, that if any Contract is recharacterized by a Final Order as a secured financing, then the real property or personal property that is subject to such Contract shall be a Purchased Asset;

(c)     all machinery, equipment, furniture, fixtures, rolling stock and other items of tangible personal property;

(d)     (i) the real property set forth on Schedule 2.1(d)(i) (collectively, the "Owned Real Property") and (ii) all rights in respect of the real property set forth on Schedule 2.1(d)(ii) (collectively, the "Leased Real Property"), to the extent such rights may be transferred under applicable Law;

(e)     all Intellectual Property, including the Intellectual Property set forth on Schedule 2.1(e) (collectively, the "Purchased Intellectual Property");

(f)     all goodwill of the Seller;

(g)     to the extent transferable under applicable Law, all Governmental Authorizations held by the Seller;

(h)     to the extent transferable under applicable Law, all books, records, files and papers, including all advertising materials, client and customer lists, supplier and vendor lists, purchase orders, sales and purchase invoices, production reports, personnel and employment records, and financial and accounting records other than the corporate books and records of the Seller;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such term in the Stalking Horse Asset Purchase Agreement.

    (i)    all the assets of the Seller Employee Benefit Plans transferred pursuant to Article 10;

    (j)    all of the Seller's claims, rights, credits, causes of action, defenses and rights of set-off against third parties relating to or arising from any of the Business, the Purchased Assets, or Assumed Liabilities, including unliquidated rights under manufacturers' and vendors' warranties;

    (k)    all cash, cash equivalents, bank deposits, investment accounts, lockboxes, certificates of deposit, marketable securities, bank accounts, corporate credit cards and other similar cash items;

    (l)    all notes, accounts receivable and other receivables;

    (m)    all insurance policies, binders and claims and rights thereunder and proceeds thereof;

    (n)    all deposits and pre-payments made by the Seller;

    (o)    all rights to refunds, credits or similar benefits relating to Taxes and other governmental charges of whatever nature for any period, or portion of any period, ending on or prior to the Closing Date;

    (p)    all surveys, plans, specifications, engineering studies, marketing studies and similar items with respect to the Business;

    (q)    any and all claims or causes of action, whether filed or not, against the Purchaser or its Affiliates and against the Debtors' present and former directors, officers, or employees, including without limitation, any causes of action arising as a result of the commencement of the Bankruptcy Case, whether pursuant to the Bankruptcy Code or otherwise, and including all proceeds therefrom, to the extent related to activities or time periods prior to the Closing Date.Application; and

    (r)    any and all claims of the Seller under chapter 5 of the Bankruptcy Code.

## II.    Submissions and Due Diligence

Any person or entity that is interested in becoming a potential purchaser or holder of a direct or indirect interest in the Purchased Assets, including, without limitation, each direct or indirect equity holder of such prospective purchaser or holder and each trustee and beneficiary of any trust included therein (each a "Potential Bidder")[2] shall notify the Debtor and shall submit the following information:

### A.    Confidentiality Agreement

If not previously executed and delivered in connection with the Sale, each Potential Bidder shall provide an executed confidentiality agreement substantially in the form annexed hereto as Exhibit __ with such changes as are reasonably acceptable to the Debtor (the "Confidentiality Agreement").

---

[2] If two or more Potential Bidders are part of a single group, such group of Potential Bidders shall be referred to herein as a "Potential Bidders Group."

### B. Due Diligence

A Potential Bidder or Potential Bidder Group, as the case may be, who has executed a Confidentiality Agreement shall be given access to a data room for such purpose.

To the extent practicable, the Debtor shall provide each Potential Bidder or Potential Bidder Group, as the case may be, who has executed a Confidential Agreement with access to (i) the same confidential evaluation materials and information provided by the Debtor to each other Potential Bidder and the Proposed Buyers (as defined below) and (ii) such other financial information and other data related to the Debtor as the Potential Bidder may reasonably request, which requests may include reasonable access to the Debtor's senior management and advisors and shall be deemed to include, in any event, the Debtor's good faith estimate of the potential cure costs and rejection damages associated with each material contract and lease subject to assumption in conjunction with the Sale.

### III. Submission of Bids

Each offer, solicitation or proposal (a "Bid") from a Potential Bidder or Potential Bidders Group, as the case may be, must be in writing and must be received by (a) the Debtor's counsel, Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 75201 (Attn: John E. Mitchell, john.mitchell@bakermckenzie.com); (b) the counsel to the Prepetition Secured Lenders, Burr & Forman, 171 17th Street, NW, Suite 1100, Atlanta, Georgia 30363 (Attn: Erich Durlacher, edurlacher@burr.com), counsel for the UCC, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlw.com) and Brookwood Associates, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305 (Attn: Amy V. Forrestal, af@brookwoodassociates.com) (collectively, the "Interest Notice Parties"), on or before 5:00 p.m. (prevailing Central time) on April 14, 2014 (the "Bid Deadline"). As detailed in subparagraphs A through C below, a Potential Bidder or Potential Bidders Group, as the case may be, that submits a Bid on or before the Bid Deadline that includes an executed mark-up of the Purchase Agreement (as defined below), and a Deposit (as defined below), shall be deemed an "Acceptable Potential Bidder."

A Potential Bidder or a Potential Bidders Group, as the case may be, that submits a Bid after the Bid Deadline shall not constitute an Acceptable Potential Bidder. Each Bid must be accompanied by:

### A. Mark-Up of Purchase Agreement

To facilitate the Auction and to assist the Debtors' CEO and Brookwood Associates (collectively, the "Debtor Auction Team") and other interested parties in assessing the terms of each Bid, each Potential Bidder or Potential Bidders Group, as the case may be, must work from the Asset Purchase Agreement (the "Purchase Agreement") between the Debtor and Chatham Credit Management III, LLC or its designee (the "Proposed Buyer" or the "Stalking Horse") to prepare its bid and shall submit as part of its Bid, a fully executed asset purchase agreement, marked to show all proposed changes to such Purchase Agreement. Each Bid shall include a summary term sheet including a summary of the material terms proposed to be included in the

Bid. The Purchase Agreement is attached to the Order (I) Approving the Procedures for (A) the Sale of Substantially All Assets (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing Date for the Approval of the Sale (the "<u>Bidding Procedures Order</u>")[3] as Exhibit __, and is also available on the main docket of these cases.

To the extent practicable, the Debtor will make members of senior management and advisors available to discuss the terms of a Bid and seek to provide to each Acceptable Potential Bidder, the disclosure schedules to the Acceptable Potential Bidder's Bid in connection with the preparation of such Bid.

### B. Deposit

Potential Bidders will be required to submit to the Debtor, in immediately available funds, letter of credit or other form of security reasonably acceptable to Debtor, a good faith deposit in an amount equal to US $1,000,000.00 (the "<u>Deposit</u>") at the time the Potential Bidder submits a Bid. The Deposit shall be returned to the respective Potential Bidder if such bidder is determined not to be a Qualified Bidder, or following the Auction if the Acceptable Potential Bidder is a Qualified Bidder but not the Backup Bidder (as defined below) or the Successful Bidder (as defined below). The Deposit shall be returned to the Backup Bidder on the earlier of: (i) the closing of the Sale to the Successful Bidder (as defined below) and (ii) 45 days after the close of the Auction.

## IV. Determining Qualified Bids and Qualified Bidders

### A. Terms and Conditions of a Qualified Bid

In addition to the requirements for an Acceptable Potential Bidder, in order for a Bid from an Acceptable Potential Bidder to be deemed a "Qualified Bid" and for the Acceptable Potential Bidder to be deemed a "Qualified Bidder", the Bid must: (i) satisfy each of the conditions listed below in paragraphs 1 through 6 and (ii) be submitted on or before the Bid Deadline. A Bid submitted after the Bid Deadline shall not constitute a Qualified Bid. The bid provided by the Stalking Horse (the "<u>Stalking Horse Bid</u>") shall become considered a Qualified Bid. In addition, the Prepetition Secured Lenders shall have the right, but not the obligation, pursuant to Section 363(k) of the Bankruptcy Code to credit bid up to the full amount of their secured claim.

The Debtor Auction Team may determine in its reasonable discretion, after consultation with the Official Committee of Unsecured Creditors, and whether an Acceptable Potential Bidder's Bid is a Qualified Bid.

Promptly after determining that any Acceptable Potential Bidder does not appear to be a Qualified Bidder, the Debtor Auction Team shall notify such Bidder of this determination and,

---

[3] The Bidding Procedures and Confirmation Scheduling Order is defined as the Bidding Procedures Order in the Stalking Horse Asset Purchase Agreement.

not acting in bad faith, shall seek to resolve any impediment to the Acceptable Potential Bidder's becoming a Qualified Bidder if possible.

1. Financial Capability

To the extent not previously provided, a Bid shall contain evidence (in the form of binding commitment letters, guarantees or otherwise) that the Acceptable Potential Bidder is able to fulfill all obligations in connection with the contemplated transactions.

2. Corporate Authority

A Bid shall contain written evidence of each Acceptable Potential Bidder's boards of directors' (or comparable governing bodies) approval of the contemplated transaction.

3. Nature of Bids for Purchased Assets and Minimum Overbid

The Bid must describe the amount of cash consideration to be paid and must be for all of the Purchased Assets.

The Bid must also be at least US $250,000.00 greater than the total value of the Stalking Horse Bid as evidenced by the Purchase Agreement including assumption of all liabilities and financial obligations assumed in the Purchase Agreement. Those liabilities include:

(a) all (i) trade accounts payable of the Seller to third parties set forth on <u>Schedule 2.3(a)</u> or incurred by the Seller in the ordinary course of business after the Petition Date and remain unpaid prior to the Closing (ii) the then outstanding unpaid fees and expenses of the Debtors' retained restructuring professionals that are incurred prior to Closing and allowed by the Bankruptcy Court, in an amount not to exceed $600,000 in the aggregate, reduced by amounts actually paid to such restructuring professionals prior to Closing, and (iii) the then outstanding unpaid fees and expenses of the Creditors' Committee's retained restructuring professionals that are incurred prior to Closing and allowed by the Bankruptcy Court, in an amount not to exceed $150,000 in the aggregate, reduced by amounts actually paid to such restructuring professionals prior to Closing;

(b) all Liabilities for Taxes imposed on the Purchaser pursuant to Section 9.1;

(c) all Liabilities of the Seller arising after the Closing under the Included Contracts and the Governmental Authorizations included in the Purchased Assets;

(d) to the extent set forth next to any Included Contract on <u>Schedule 2.3(d)</u>, any Cure Amount with respect to such Included Contract;

(e) all Liabilities relating to the employment of Transferred Employees arising after the Closing;

(f) all Liabilities assumed by the Purchaser pursuant to Article 10;

(g) all Liabilities associated with the Owned Real Property and the Leased Real Property arising after the Closing;

  (h)  all Liabilities associated with the Purchased Assets relating to or arising out of environmental matters, including those arising under any Environmental Law, and arising after the Closing Date;

  (i)  all Liabilities specifically identified on Schedule 2.3(i); and

  (j)  all other Liabilities arising out of, relating to or incurred in connection with the Business or the Purchased Assets arising after the Closing including (i) the operation of the Business after the Closing, (ii) the use by the Purchaser or its permitted licensees of Purchased Intellectual Property and (iii) any other condition arising after the Closing with respect to the Purchased Assets.

  4.  Asset Purchase Agreement and Ancillary Agreements

As stated above in Section III.A, a Bid must include a fully executed form of asset purchase agreement marked against the Purchase Agreement and must also include any agreements ancillary to the Sale, each executed by an Acceptable Potential Bidder.

  5.  Approval

Contain a representation that the bid is not conditional on any unperformed due diligence, debtor equity financing or any corporate approval.

  6.  Other Bid Requirements

A Bid must: (i) provide that the bidder's offer is irrevocable until the earlier of (x) consummation of the Sale of the Purchased Assets, (y) the close of the Auction unless the Potential Bidder is selected as the Successful Bidder or the Backup Bidder and (z) 45 days after the close of the Auction if the Potential Bidder is selected as the Backup Bidder; (ii) contain the form of Sale Order (marked against the proposed order) the bidder would request the Debtor to seek court approval of at the Sale Hearing; and (iii) include evidence of the bidder's ability to provide adequate assurance of future performance of such contracts, permits and licenses it would require the Debtor to assume and assign.

  **B.**  **Qualified Bidders**

Only the Acceptable Potential Bidders who have satisfied the foregoing requirements, shall be Qualified Bidders. If no Qualified Bid in addition to the Stalking Horse Bid is timely received, the Debtor will not conduct an Auction and instead may present such bid to the Bankruptcy Court for approval at the Sale Hearing.

  **C.**  **Notification by the Debtor of the Best Qualified Bid**

On or prior to 5:00 p.m. (prevailing Eastern time) on the April 15, 2014, the Debtor Auction Team shall provide each Qualified Bidder that has submitted a Qualified Bid: (i) written notice of the Auction and (ii) notice of the Qualified Bid with which the Debtor intends to commence the Auction (the "Best Qualified Bid") and (iii) copies of all Qualified Bids.

**V.**  **The Auction**

If more than one Qualified Bid is timely received, the Auction will be conducted at the offices of Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 75201 commencing on April 17, 2014 to determine the highest or otherwise best bid with respect to the Purchased Assets.

### A. Participation in the Auction

Only Qualified Bidders who have submitted a Qualified Bid shall be eligible to participate in the Auction.

### B. The Auction Process

All Bids made at the Auction after the commencement thereof (each, an "Overbid") shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtor Auction Team shall maintain a transcript of all Overbids made and announced at the Auction, including the Successful Bid (as defined below). The Debtor Auction Team, in its reasonable discretion, may extend the Auction deadline and/or adjourn, continue or suspend the Auction and/or the hearing to approve the Sale of the Purchased Assets for any reason, including to seek further clarification from the Bankruptcy Court regarding any issues, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Qualified Bidders.

The Debtor Auction Team shall announce at the Auction the material terms of each Overbid, and in consultation with the UCC, the total consideration offered in each such Overbid to provide a floor for further bidding. The current highest or best offer for the Purchased Assets, as determined by the Debtor Auction Team in consultation with the UCC shall represent the new Best Qualified Bid. A Qualified Bidder need not make an Overbid in any particular Auction round to maintain their ability to make a later Overbid.

Any Overbid shall be made in overbid increments of at least US $250,000.00 greater than the Best Qualified Bid.

Except as modified below, an Overbid must comply with the conditions for a Qualified Bid as set forth above.

To the extent not previously provided (which shall be determined by the Debtor in consultation with the UCC, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in consultation with the UCC) demonstrating such Qualified Bidder's ability to close the proposed transaction.

Except as expressly provided herein, the procedures set forth herein cannot be amended or modified without the approval of the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction to construe these Bidding Procedures and determine any disputes arising under them.

### VI. Identification of the Successful Bidder and Acceptance of Successful Bid

### A. Identification of the Successful Bidder

At the close of the Auction, the Debtor Auction Team, in consultation with the UCC, shall determine and announce which Qualified Bidder had the highest or best bid (the "Successful Bid," and such bidder being the "Successful Bidder"). The Debtor Auction Team reserves the right to determine, in its reasonable business judgment and in consultation with the UCC, which bid is the highest or otherwise best (recognizing that, in determining same, a critical consideration shall be which bid provides the greatest net proceeds available for distribution to creditors by the estates.

After the Debtor Auction Team, in consultation with the UCC, so determines the Successful Bid, the Auction will be closed. The Debtor Auction Team, in consultation with the UCC, will then determine and announce which bid has been determined to be the second highest or otherwise best bid (the "Backup Bid" and such bidder being the "Backup Bidder"). In determining which bid is the Backup Bid, the Debtor, in consultation with the UCC, will use its reasonable business judgment.

Notwithstanding anything herein to the contrary, the Debtor, in its reasonable discretion and in consultation with the UCC, reserves the right to reject at any time prior to entry of a court order approving an offer, without liability, any offer (other than the offer submitted by the Proposed Buyers) that the Debtor deems to be: (x) inadequate or insufficient, (y) contrary to the best interests of the Debtor and its estate, or (z) with the advice of counsel, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein.

The presentation of a particular Bid to the Bankruptcy Court for approval shall not constitute the Debtor's acceptance of the Bid. The Debtor will be deemed to have accepted the Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### B. Acceptance of Bid From Successful Bidder

The Debtor presently intends to sell the Purchased Assets to the Successful Bidder, pursuant to the terms of the Successful Bid. The Debtor shall be bound by the Successful Bid only when such Bid has been approved by the Bankruptcy Court at the Sale Hearing.

Except as otherwise provided in the Successful Bid agreed to by the Debtor, all of the Debtor's right, title and interest in and to the Purchased Assets shall be sold free and clear of all liens, claims, encumbrances, and interests thereon and there against (except Permitted Encumbrances) (collectively, the "Transferred Liens"), with such Transferred Liens attaching to the proceeds of the Purchased Assets with the same validity and priority as the Transferred Liens had on the Purchased Assets immediately prior to the Sale.

## VII. The Sale Hearing

The Sale Hearing shall be held in the Bankruptcy Court on April ___, 2014 and may be adjourned from time to time without further notice to creditors or parties in interest other than

an announcement in open court at the Sale Hearing. Any objections to the approval of the sale of the Purchased Assets shall be argued at the Sale Hearing.

**VIII.   Closing with the Backup Bidder(s)**

Without any further order of the Bankruptcy Court after Confirmation, if for any reason the Successful Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor's Auction Team, in its sole discretion after consultation with the UCC, the Backup Bidder will be deemed to have submitted the highest or best bid and the Debtor and the Backup Bidder are authorized to effect the Sale to the Backup Bidder as soon as is commercially reasonable. If the Stalking Horse is neither the Successful Bidder nor the Backup Bidder, but is a Qualified Bidder, and the Backup Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor's Auction Team, in its sole discretion after consultation with the UCC, the Debtor and the Stalking Horse are authorized to effect the Sale to the Stalking Horse.

Following the Sale, (i) if such failure to consummate the Sale is the result of a breach by the Successful Bidder or the Backup Bidder, the Successful Bidder or the Backup Bidder, as the case may be, shall be deemed to have forfeited its Deposit and the Debtor additionally reserves the right to seek all available damages from any defaulting Bidder, and (ii) if such failure to consummate the Sale is the result of a breach by the Debtor, the Successful Bidder or Backup Bidder, as the case may be, shall have no recourse against the Debtor other than for recovery of its deposit.

Dated: _____