

U.S. BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK

THE DATE OF ENTRY IS

ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 21, 2014**

_Horli DeWayne Hah_

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| **IN RE:** | § | **CASE NO. 14-30699-11** |
| | § | |
| **BUFFET PARTNERS, L.P., et al.** | § | **CHAPTER 11** |
| | § | |
| **DEBTORS.**[1] | § | **Jointly Administered** |
| | § | |

**ORDER (I) APPROVING THE PROCEDURES FOR (A) THE SALE OF
SUBSTANTIALLY ALL ASSETS (B) THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES (C) THE
ESTABLISHMENT OF CURE AMOUNTS, (II) APPROVING FORM OF NOTICE AND
(III) SETTING A HEARING DATE FOR THE APPROVAL OF THE SALE**

This matter having come before the Court on the Debtors' Motion (the "Motion")[2] for an

order (the "Order") (I) approving the procedures for (a) the sale (the "Sale") of substantially all

of the Debtors' assets (the "Assets") pursuant to section 363 of the Bankruptcy Code, (b) the

assumption and assignment of certain executory contracts and unexpired leases pursuant to

section 365 of the Bankruptcy Code, (c) the establishment of cure amounts, (II) approving the

---

[1] The Debtors in these chapter 11 cases are Buffet Partners, L.P. and Buffet G.P., Inc.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion and/or the Bidding Procedures (as defined herein).

form of notice of the sale of substantially all of the Debtors' assets including the Sale Hearing, and (III) setting a hearing date for the Sale Hearing; and the Court having considered the Motion, and all of the exhibits attached to the Motion, the objections to the Motion, the statements and arguments of counsel, and the testimony or offer of proof as to testimony on the record at the hearing to approve the procedural relief requested in the Motion held March 19, 2014 (the "Sale Procedures Hearing"), at which time all interested parties were offered an opportunity and were heard with respect to the Motion; and it appearing that the relief requested in the Motion as modified herein is in the best interests of the Debtors, their bankruptcy estates, their creditors and other parties-in-interest; and after due deliberation and good cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A. **Jurisdiction and Venue**. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2)(A). Venue of this Chapter 11 Case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are Bankruptcy Code §§ 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

C. **Notice**. As evidenced by the certificates of service filed with this Court and based upon the representations of counsel at the Sale Procedures Hearing: (i) due, proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with Bankruptcy Code §§ 102(1), 105(a), and 363 and Bankruptcy Rules 2002, 6004, and 6006; (ii) such notice was and is good, sufficient and appropriate under the circumstances; and (iii) no other or further

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Bankruptcy Rule 7052.

notice of the Motion, or the Sale Procedures Hearing, is or shall be required. The Debtors are authorized, pursuant to Bankruptcy Rule 2002(*l*), to give supplemental publication notice of the Auction and Sale Hearing by publication in the Nations Restaurant News, or any other newspaper in their discretion and on a date no greater than 7 business days after entry of this Order.

D. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the Motion and the relief currently requested therein was given, in light of the circumstances, to all interested persons and entities.

E. **Business Justification and Best Interests**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the establishment and implementation of sale procedures, and the relief requested in the Motion with respect to the establishment of sale procedures, as modified herein, is in the best interests of Debtors, their estates, their creditors and other parties in interest.

F. **Sale Procedures**. The sale procedures approved by this Order (the "Sale Procedures"), which include the bidding procedures attached hereto as **Exhibit A** (the "Bidding Procedures"), are reasonable and appropriate, and represent the best method for maximizing the return for the Purchased Assets. The Sale Procedures were negotiated in good faith between the Debtors, the Prepetition Secured Lenders, and various other parties, and reflect the rulings of this Court at the Sale Procedures Hearing.

G. **Stalking Horse Bid**. The Debtors have demonstrated a compelling and sound business justification for authorization to enter into the Purchase Agreement to establish the minimum bidding purchase price for the Purchased Assets. The Prepetition Secured Lenders' Stalking Horse Bid will serve as a minimum or floor bid on which all other bidders can rely, and

will provide a benefit to the Debtors' estates by increasing the likelihood that the price at which the Purchased Assets are sold will reflect their true worth.

        H.    **No Other Current Bids**.  No other party to date has entered into an asset purchase agreement for the Purchased Assets on terms acceptable to the Debtors.  The Purchase Agreement provides the Debtors with the opportunity to sell their business on a "going concern" basis for the benefit of all parties.  The execution of the Purchase Agreement is a necessary prerequisite to determining whether any party other than the Stalking Horse is willing to enter into a definitive agreement for the Purchased Assets on terms acceptable to the Debtors and their creditor constituencies.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      Any objections to the Motion with respect to the establishment of the Sale Procedures, the entry of this Order, or the relief granted herein, that have not been sustained, withdrawn, waived, settled, or otherwise resolved pursuant to the terms of this Order, are hereby denied and overruled on the merits with prejudice.

3.      The Sale Procedures are approved, including without limitation the procedures regarding (i) the auction and bidding process, (ii) the assumption and assignment of certain Executory Contracts, and (iii) the establishment of cure amounts.

4.      The Notice of Sale of Substantially All of The Debtors' Assets attached hereto as **Exhibit B** (the "Notice of Sale") is approved.

5.      To constitute a "Qualified Bid," a bid must be received by the Bid Deadline (as defined in the Bidding Procedures) and otherwise comply with all of the applicable provisions of

the Bidding Procedures, including without limitation the requirement that all bids contain, at a minimum, the following information:

(i) The exact legal name of the bidder, the entity that would take assignment of any non-residential real property leases, and any entities that may provide guaranties or other security in connection with the assignment of the any non-residential real property leases (collectively, the "Proposed Assignees");

(ii) A description of the Proposed Assignees' experience in operating restaurants generally and specifically buffet-style restaurants;

(iii) The number of restaurants the Proposed Assignees operate and all trade names that the Proposed Assignees use; and

(iv) A statement setting forth the Proposed Assignees' intended use of the premises leased pursuant to any assigned non-residential real property leases.

(collectively, the "Baseline Adequate Assurance Information").

6. The Prepetition Secured Lenders' Stalking Horse Bid is a Qualified Bid, provided, however, that to the extent the Stalking Horse Bid does not already contain such information, the Stalking Horse shall supplement the Stalking Horse Bid no later than March 28, 2014, by providing to the Debtors the Baseline Adequate Assurance Information, and the Debtors shall in turn provide such Baseline Adequate Assurance Information on March 28, 2014 to counterparties to Executory Contracts who have requested it. In addition, the Prepetition Secured Lenders shall have the right, but not the obligation, pursuant to § 363(k) of the Bankruptcy Code to credit bid up to the full amount of their secured claim.

7. The failure specifically to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

8.      The Debtors shall file a "Notice of Successful Bidder" identifying the Successful Bidder and the terms of the Successful Bid within 24 hours following the completion of the Auction.

9.      If for any reason the Successful Bidder fails to consummate an approved Sale within such time as is determined reasonable by the Debtors' Auction Team, in its sole discretion after consultation with the Official Committee of Unsecured Creditors (the "Committee"), the Backup Bidder will be deemed to have submitted the highest or best bid  and  the  Debtors and the Backup Bidder are authorized to effect any approved Sale to the Backup Bidder as soon as is commercially reasonable.  If the Stalking Horse is neither the Successful Bidder nor the Backup Bidder, but remains a Qualified Bidder, and the Backup Bidder fails to consummate an approved Sale within such time as is determined reasonable by the Debtors' Auction Team, in its sole discretion after consultation with the Committee, the Debtors and the Stalking Horse are authorized to effect any approved Sale to the Stalking Horse.

10.     Following Court approval of a proposed Sale to the Successful Bidder or the Backup Bidder, (i) if a failure to consummate an approved Sale is the result of a breach by the Successful Bidder and/or the Backup Bidder, the Successful Bidder and/or the Backup Bidder, as the case may be, shall be deemed to have forfeited its deposit, and the Debtors may retain such deposit(s) and seek all available damages from any defaulting Bidder, and (ii) if a failure to consummate an approved Sale is the result of a breach by the Debtors, the Successful Bidder and/or Backup Bidder, as the case may be, shall have no recourse against the Debtors other than for recovery of its deposit.

11.     The Debtors shall file with the Court a fully executed Purchase Agreement with the Stalking Horse, with all Schedules thereto, no later than March 28, 2014.

12.     The Debtors shall file with the Court a "Cure Notice" listing the applicable cure amounts for all Executory Contracts that are proposed to be assumed and assigned to the Stalking Horse, and serve such filed Cure Notice on each of the counterparties to those Executory Contracts and their counsel of record no later than March 28, 2014, via United States, First Class Mail.

13.     Except as otherwise set forth herein, all objections to the Sale (including cure objections and objections to assumption and assignment of Executory Contracts to the Stalking Horse), shall be filed and served on counsel for the Debtors, Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 775201 (Attn: John E. Mitchell, john.mitchell@bakermckenzie.com), counsel for the Prepetition Secured Lenders, Burr & Forman, 171 17th Street, NW, Suite 1100, Atlanta, Georgia 30363 (Attn: Erich Durlacher, edurlacher@burr.com) and counsel for the UCC, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlw.com) and Brookwood Associates, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305 (Attn: Amy V. Forrestal, af@brookwoodassociates.com) (collectively, the "Notice Parties") by no later than 5:00 p.m. (Prevailing Central Time) on April 16, 2014.

14.     If the Stalking Horse is not the Successful Bidder at the Auction, objections and/or supplemental objections to Sale and the assumption and assignment of Executory Contracts to the Successful Bidder must be filed and served on the Notice Parties by no later than 5:00 p.m. (Prevailing Central Time) on May 1, 2014.

15.     Counterparties to Executory Contracts who execute reasonable confidentiality agreements with the Debtors (collectively, the "Requesting Parties"), will receive complete

copies of all bids received by the Debtors. The Debtors will send the bids to the Requesting Parties promptly upon the Debtors' receipt of each bid, but in no event later than 5:00 p.m. (Prevailing Central Time) on April 23, 2014. Other than with respect to the Stalking Horse (who may be contacted at any time), counterparties to Executory Contracts shall not directly contact any Potential Bidder absent consent of the Debtors. Once the Auction has concluded, counterparties to Executory Contracts may contact the Successful Bidder to discuss its bid and the assumption and assignment of their respective Executory Contracts.

16.     If no Qualified Bids are received or the Stalking Horse is chosen as the Successful Bidder at the Auction, the Sale Hearing to approve the Sale of the Purchased Assets to the Stalking Horse shall be heard on April 29, 2014 at 2:00 p.m. (Prevailing Central Time).

17.     If the Stalking Horse is not the Successful Bidder at the Auction, the Sale Hearing to approve the Sale of the Purchased Assets to the Successful Bidder shall be heard on May 5, 2014 at 1:30 p.m. (Prevailing Central Time).

18.     The Debtors shall file and submit to the Court at least two (2) business days prior to the applicable Sale Hearing a proposed order approving the Sale to the Successful Bidder. Unless otherwise agreed to by parties in interest, or by order of the Court, objections to cure amounts, adequate assurance of future performance, or other requirements for assumption and assignment of Executory Contracts, shall be heard at the applicable Sale Hearing.

19.     With respect to discovery related to any proposed Sale to a Successful Bidder other than the Stalking Horse, the normal, applicable notice periods or other time limitations that would otherwise limit such discovery are hereby shortened to that which is reasonable under the circumstances. The Court expects all parties in interest to work collaboratively to reach a

reasonable, agreed discovery schedule taking into account the expedited nature of the Sale Hearing. The Court will hear discovery disputes, on an expedited basis, if necessary.

20. Any objections not timely filed and served in the manner set forth in this Order may, in the Court's discretion, not be considered and may be overruled.

21. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # # END OF ORDER # # #

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale (the "Sale") of certain assets and equity interests (the "Purchased Assets") of Buffet Partners, L.P. (the "Debtor"). At a hearing following the Auction, the Debtor will seek entry of an order (the "Sale Order") from the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Debtor determines to have made the highest or otherwise best bid.

## I. Assets to be Sold

As described in the Purchase Agreement, all of the Debtor's right, title and interest in all of the Debtor's properties and assets of every kind and description whether real, personal, mixed, tangible or intangible and wherever located, except for Excluded Assets, including the following:[1]

(a)     all inventory as of the Closing Date, including all finished goods, work in process and raw materials;

(b)     all of the rights of the Seller under all Contracts to which the Seller is a party, by which the Seller or any of the Purchased Assets is bound or affected or pursuant to which Seller is a beneficiary, including any rights the Seller may have under nondisclosure, confidentiality, non-solicitation, non-competition and similar agreements and those Contracts set forth in Schedule 2.1(b) to the extent such Contracts are assumed pursuant to Section 5.12 (collectively, the "Included Contracts"); provided, however, that if any Contract is recharacterized by a Final Order as a secured financing, then the real property or personal property that is subject to such Contract shall be a Purchased Asset;

(c)     all machinery, equipment, furniture, fixtures, rolling stock and other items of tangible personal property;

(d)     (i) the real property set forth on Schedule 2.1(d)(i) (collectively, the "Owned Real Property") and (ii) all rights in respect of the real property set forth on Schedule 2.1(d)(ii) (collectively, the "Leased Real Property"), to the extent such rights may be transferred under applicable Law;

(e)     all Intellectual Property, including the Intellectual Property set forth on Schedule 2.1(e) (collectively, the "Purchased Intellectual Property");

(f)     all goodwill of the Seller;

(g)     to the extent transferable under applicable Law, all Governmental Authorizations held by the Seller;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such term in the Stalking Horse Asset Purchase Agreement.

EXHIBIT A

(h)     to the extent transferable under applicable Law, all books, records, files and papers, including all advertising materials, client and customer lists, supplier and vendor lists, purchase orders, sales and purchase invoices, production reports, personnel and employment records, and financial and accounting records other than the corporate books and records of the Seller;

(i)     all the assets of the Seller Employee Benefit Plans transferred pursuant to Article 10;

(j)     all of the Seller's claims, rights, credits, causes of action, defenses and rights of set-off against third parties relating to or arising from any of the Business, the Purchased Assets, or Assumed Liabilities, including unliquidated rights under manufacturers' and vendors' warranties;

(k)     all cash, cash equivalents, bank deposits, investment accounts, lockboxes, certificates of deposit, marketable securities, bank accounts, corporate credit cards and other similar cash items;

(l)     all notes, accounts receivable and other receivables;

(m)    all insurance policies, binders and claims and rights thereunder and proceeds thereof;

(n)     all deposits and pre-payments made by the Seller;

(o)     all rights to refunds, credits or similar benefits relating to Taxes and other governmental charges of whatever nature for any period, or portion of any period, ending on or prior to the Closing Date;

(p)     all surveys, plans, specifications, engineering studies, marketing studies and similar items with respect to the Business;

(q)     any and all claims or causes of action, whether filed or not, against the Purchaser or its Affiliates and against the Debtor's present and former directors, officers, or employees, including without limitation, any causes of action arising as a result of the commencement of the Bankruptcy Case, whether pursuant to the Bankruptcy Code or otherwise, and including all proceeds therefrom, to the extent related to activities or time periods prior to the Closing Date; and

(r)     any and all claims of the Seller under chapter 5 of the Bankruptcy Code, provided, however, that the Purchaser agrees and covenants not to sue, prosecute, or otherwise assert, any such Seller claims other than as a defense or offset to an affirmative claim or cause of action brought against the Purchaser based on any conduct, claim, action, or inaction arising prior to the Closing Date.

## II.    <u>Submissions and Due Diligence</u>

Any person or entity that is interested in becoming a potential purchaser or holder of a direct or indirect interest in the Purchased Assets, including, without limitation, each direct

or indirect equity holder of such prospective purchaser or holder and each trustee and beneficiary of any trust included therein (each a "Potential Bidder")[2] shall notify the Debtor and shall submit the following information:

A.    **Confidentiality Agreement**

If not previously executed and delivered in connection with the Sale, each Potential Bidder shall provide an executed confidentiality agreement substantially in the form annexed hereto as Exhibit __ with such changes as are reasonably acceptable to the Debtor (the "Confidentiality Agreement").

B.    **Due Diligence**

A Potential Bidder or Potential Bidder Group, as the case may be, who has executed a Confidentiality Agreement shall be given access to a data room for such purpose.

To the extent practicable, the Debtor shall provide each Potential Bidder or Potential Bidder Group, as the case may be, who has executed a Confidential Agreement with access to (i) the same confidential evaluation materials and information provided by the Debtor to each other Potential Bidder and the Proposed Buyers (as defined below) and (ii) such other financial information and other data related to the Debtor as the Potential Bidder may reasonably request, which requests may include reasonable access to the Debtor's senior management and advisors and shall be deemed to include, in any event, the Debtor's good faith estimate of the potential cure costs and rejection damages associated with each material contract and lease subject to assumption in conjunction with the Sale.

III.    **Submission of Bids**

Each offer, solicitation or proposal (a "Bid") from a Potential Bidder or Potential Bidders Group, as the case may be, must be in writing and must be received by (a) the Debtor's counsel, Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 75201 (Attn: John E. Mitchell, john.mitchell@bakermckenzie.com); (b) the counsel to the Prepetition Secured Lenders, Burr & Forman, 171 17th Street, NW, Suite 1100, Atlanta, Georgia 30363 (Attn: Erich Durlacher, edurlacher@burr.com), counsel for the Official Committee of Unsecured Creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com) and Brookwood Associates, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305 (Attn: Amy V. Forrestal, af@brookwoodassociates.com) (collectively, the "Interest Notice Parties"), on or before 5:00 p.m. (prevailing Central time) on April 22, 2014 (the "Bid Deadline").  As detailed in subparagraphs A through C below, a Potential Bidder or Potential Bidders Group, as the case may be, that submits a Bid on or before the Bid Deadline that includes an executed mark-up of the Purchase Agreement (as defined below), and a Deposit (as defined below), shall be deemed an "Acceptable Potential Bidder."

---

[2] If two or more Potential Bidders are part of a single group, such group of Potential Bidders shall be referred to herein as a "Potential Bidders Group."

A Potential Bidder or a Potential Bidders Group, as the case may be, that submits a Bid after the Bid Deadline shall not constitute an Acceptable Potential Bidder. Each Bid must be accompanied by:

### A. Mark-Up of Purchase Agreement

To facilitate the Auction and to assist the Debtor's CEO and Brookwood Associates (collectively, the "Debtor Auction Team") and other interested parties in assessing the terms of each Bid, each Potential Bidder or Potential Bidders Group, as the case may be, must work from the Asset Purchase Agreement (the "Purchase Agreement") between the Debtor and Chatham Credit Management III, LLC or its designee (the "Proposed Buyer" or the "Stalking Horse") to prepare its bid and shall submit as part of its Bid, a fully executed asset purchase agreement, marked to show all proposed changes to such Purchase Agreement. Each Bid shall include a summary term sheet including a summary of the material terms proposed to be included in the Bid.

To the extent practicable, the Debtor will make members of senior management and advisors available to discuss the terms of a Bid and seek to provide to each Acceptable Potential Bidder the disclosure schedules to the Acceptable Potential Bidder's Bid in connection with the preparation of such Bid.

### B. Deposit

Potential Bidders will be required to submit to the Debtor, in immediately available funds, letter of credit or other form of security reasonably acceptable to Debtor, a good faith deposit in an amount equal to US $1,000,000.00 (the "Deposit") at the time the Potential Bidder submits a Bid. The Deposit shall be returned to the respective Potential Bidder if such bidder is determined not to be a Qualified Bidder, or following the Auction if the Acceptable Potential Bidder is a Qualified Bidder but not the Backup Bidder (as defined below) or the Successful Bidder (as defined below). The Deposit shall be returned to the Backup Bidder on the earlier of: (i) the closing of the Sale to the Successful Bidder (as defined below) and (ii) 45 days after the close of the Auction.

## IV. Determining Qualified Bids and Qualified Bidders

### A. Terms and Conditions of a Qualified Bid

In addition to the requirements for an Acceptable Potential Bidder, in order for a Bid from an Acceptable Potential Bidder to be deemed a "Qualified Bid" and for the Acceptable Potential Bidder to be deemed a "Qualified Bidder", the Bid must: (i) satisfy each of the conditions listed below in paragraphs 1 through 7 and (ii) be submitted on or before the Bid Deadline. A Bid submitted after the Bid Deadline shall not constitute a Qualified Bid. The bid provided by the Stalking Horse (the "Stalking Horse Bid") shall become considered a Qualified Bid. In addition, the Prepetition Secured Lenders shall have the right, but not the obligation, pursuant to Section 363(k) of the Bankruptcy Code to credit bid up to the full amount of their secured claim.

The Debtor Auction Team may determine in its reasonable discretion, after consultation with the Committee, and whether an Acceptable Potential Bidder's Bid is a Qualified Bid.

Promptly after determining that any Acceptable Potential Bidder does not appear to be a Qualified Bidder, the Debtor Auction Team shall notify such Bidder of this determination and, not acting in bad faith, shall seek to resolve any impediment to the Acceptable Potential Bidder's becoming a Qualified Bidder if possible.

1.      Financial Capability

To the extent not previously provided, a Bid shall contain evidence (in the form of binding commitment letters, guarantees or otherwise) that the Acceptable Potential Bidder is able to fulfill all obligations in connection with the contemplated transactions.

2.      Corporate Authority

A Bid shall contain written evidence of each Acceptable Potential Bidder's boards of directors' (or comparable governing bodies) approval of the contemplated transaction.

3.      Nature of Bids for Purchased Assets and Minimum Overbid

The Bid must describe the amount of cash consideration to be paid and must be for all of the Purchased Assets.

The Bid must also be at least US $22,900,000 ($250,000.00 greater than the total value of the Stalking Horse Bid as evidenced by the Purchase Agreement) and include assumption of all liabilities and financial obligations assumed in the Purchase Agreement. The foregoing overbid amount includes the sum of $750,000, which is comprised of the Unencumbered Settlement Cash and the Committee Expense Cash (as such capitalized terms are defined in the Purchase Agreement). The overbid will be reduced by the amount of any payments made by the Debtors prior to the Closing Date with respect to the Committee Expense Cash.

In addition to the foregoing consideration, any overbid must assume the following liabilities:

(s)      all (i) allowed administrative expenses incurred from the Petition Date through the Closing and remain unpaid as of the Closing (except professional fees and expenses), including Liabilities arising under section 503(b)(9) of the Bankruptcy Code, the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("PACA"), and trade accounts payable of the Seller to third parties set forth on Schedule 2.3(a) or incurred by the Seller in the ordinary course of business after the Petition Date and remain unpaid prior to the Closing, and (ii) the then outstanding unpaid fees and expenses of the Debtor's retained restructuring professionals that are incurred prior to Closing and allowed by the Bankruptcy Court, in an amount not to exceed $600,000 in the aggregate, reduced by amounts actually paid to such restructuring professionals prior to Closing; provided, however, that the Purchaser reserves the right to object, in good faith, to the allowance of such claims;

(t)     all Liabilities for Taxes imposed on the Purchaser pursuant to Section 9.1;

(u)     all Liabilities of the Seller arising after the Closing under the Included Contracts and the Governmental Authorizations included in the Purchased Assets;

(v)     to the extent set forth next to any Included Contract on <u>Schedule 2.3(d)</u>, any Cure Amount with respect to such Included Contract;

(w)     all Liabilities relating to the employment of Transferred Employees arising after the Closing;

(x)     all Liabilities assumed by the Purchaser pursuant to Article 10;

(y)     all Liabilities associated with the Owned Real Property and the Leased Real Property arising after the Closing;

(z)     all Liabilities associated with the Purchased Assets relating to or arising out of environmental matters, including those arising under any Environmental Law, and arising after the Closing;

(aa)     all Liabilities specifically identified on <u>Schedule 2.3(i)</u>;

(bb)     all allowed priority claims arising under Section 507(a)(4),(5), and (8) of the Bankruptcy Code remaining unpaid as of the Closing; provided, however, that the Purchaser reserves the right to object, in good faith, to the allowance of such claims; and

(cc)     all other Liabilities arising out of, relating to or incurred in connection with the Business or the Purchased Assets arising after the Closing including (i) the operation of the Business after the Closing, (ii) the use by the Purchaser or its permitted licensees of Purchased Intellectual Property and (iii) any other condition arising after the Closing with respect to the Purchased Assets.

     4.     Asset Purchase Agreement and Ancillary Agreements

As stated above in Section III.A, a Bid must include a fully executed form of asset purchase agreement marked against the Purchase Agreement and must also include any agreements ancillary to the Sale, each executed by an Acceptable Potential Bidder.

     5.     Approval

Contain a representation that the bid is not conditional on any unperformed due diligence, debtor equity financing or any corporate approval.

     6.     Other Bid Requirements

A Bid must: (i) provide that the bidder's offer is irrevocable until the earlier of (x) consummation of the Sale of the Purchased Assets, (y) the close of the Auction unless the Potential Bidder is selected as the Successful Bidder or the Backup Bidder and (z) 45 days after the close of the Auction if the Potential Bidder is selected as the Backup Bidder; (ii) contain the

form of Sale Order (marked against the proposed order) the bidder would request the Debtor to seek court approval of at the Sale Hearing; and (iii) include evidence of the bidder's ability to provide adequate assurance of future performance of such contracts, permits and licenses it would require the Debtor to assume and assign.

7.      Adequate Assurance of Future Performance

Any Bid submitted by a Potential Bidder or Potential Bidders Group must include a good faith showing of adequate assurance of future performance with respect to Executory Contracts proposed to be assumed and assigned to the Potential Bidder or Potential Bidders Group. With respect to unexpired leases of non residential real property, such information must include, but is not limited to, the following:

To constitute a "Qualified Bid," a bid must be received by the Bid Deadline (as defined in the Bidding Procedures) and otherwise comply with all of the applicable provisions of the Bidding Procedures, including without limitation the requirement that all bids contain, at a minimum, the following information:

(i)      The exact legal name of the bidder, the entity that would take assignment of any non-residential real property leases, and any entities that may provide guaranties or other security in connection with the assignment of the any non-residential real property leases (collectively, the "Proposed Assignees");

(ii)     A description of the Proposed Assignees' experience in operating restaurants generally and specifically buffet-style restaurants;

(iii)    The number of restaurants the Proposed Assignees operate and all trade names that the Proposed Assignees use; and

(iv)     A statement setting forth the Proposed Assignees' intended use of the premises leased pursuant to any assigned non-residential real property leases.

**B.      Qualified Bidders**

Only the Acceptable Potential Bidders who have satisfied the foregoing requirements, shall be Qualified Bidders. If no Qualified Bid in addition to the Stalking Horse Bid is timely received, the Debtor will not conduct an Auction and instead may present such bid to the Bankruptcy Court for approval at the Sale Hearing.

**C.      Notification by the Debtor of the Best Qualified Bid**

On or prior to 5:00 p.m. (prevailing Eastern time) on the April 23, 2014, the Debtor Auction Team shall provide each Qualified Bidder that has submitted a Qualified Bid and each counterparty to an Executory Contract who has executed a reasonable Confidentiality Agreement: (i) written notice of the Auction and (ii) notice of the Qualified Bid with

which the Debtor intends to commence the Auction (the "Best Qualified Bid") and (iii) copies of all Qualified Bids.

## V.      The Auction

If more than one Qualified Bid is timely received, the Auction will be conducted at the offices of Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 75201 commencing on April 25, 2014, at 10:00 a.m. (Prevailing Central Time) to determine the highest or otherwise best bid with respect to the Purchased Assets.

### A.      Participation in the Auction

Only Qualified Bidders who have submitted a Qualified Bid shall be eligible to participate in the Auction.

### B.      The Auction Process

All Bids made at the Auction after the commencement thereof (each, an "Overbid") shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtor Auction Team shall maintain a transcript of all Overbids made and announced at the Auction, including the Successful Bid (as defined below).  The Debtor Auction Team, in its reasonable discretion, may extend the Auction deadline and/or adjourn, continue or suspend the Auction and/or the hearing to approve the Sale of the Purchased Assets for any reason, including to seek further clarification from the Bankruptcy Court regarding any issues, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Qualified Bidders.

The Debtor Auction Team shall announce at the Auction the material terms of each Overbid, and in consultation with the Committee, the total consideration offered in each such Overbid to provide a floor for further bidding. The current highest or best offer for the Purchased Assets, as determined by the Debtor Auction Team in consultation with the Committee shall represent the new Best Qualified Bid. A Qualified Bidder need not make an Overbid in any particular Auction round to maintain their ability to make a later Overbid.

Any Overbid shall be made in overbid increments of at least US $250,000.00 greater than the Best Qualified Bid.

Except as modified below, an Overbid must comply with the conditions for a Qualified Bid as set forth above.

To the extent not previously provided (which shall be determined by the Debtor in consultation with the Committee, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in consultation with the Committee) demonstrating such Qualified Bidder's ability to close the proposed transaction.

Except as expressly provided herein, the procedures set forth herein cannot be amended or modified without the approval of the Bankruptcy Court.  The Bankruptcy Court shall retain exclusive jurisdiction to construe these Bidding Procedures and determine any disputes arising under them.

## VI.    Identification of the Successful Bidder and Acceptance of Successful Bid

### A.    Identification of the Successful Bidder

At the close of the Auction, the Debtor Auction Team, in consultation with the Committee, shall determine and announce which Qualified Bidder had the highest or best bid (the "Successful Bid," and such bidder being the "Successful Bidder"). The Debtor Auction Team reserves the right to determine, in its reasonable business judgment and in consultation with the Committee, which bid is the highest or otherwise best (recognizing that, in determining same, a critical consideration shall be which bid provides the greatest net proceeds available for distribution to creditors by the estates.

After the Debtor Auction Team, in consultation with the Committee, so determines the Successful Bid, the Auction will be closed. The Debtor Auction Team, in consultation with the Committee, will then determine and announce which bid has been determined to be the second highest or otherwise best bid (the "Backup Bid" and such bidder being the "Backup Bidder"). In determining which bid is the Backup Bid, the Debtor, in consultation with the Committee, will use its reasonable business judgment.

Notwithstanding anything herein to the contrary, the Debtor, in its reasonable discretion and in consultation with the Committee, reserves the right to reject at any time prior to entry of a court order approving an offer, without liability, any offer (other than the offer submitted by the Proposed Buyers) that the Debtor deems to be:  (x) inadequate or insufficient, (y) contrary to the best interests of the Debtor and its estate, or (z) with the advice of counsel, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein.

The presentation of a particular Bid to the Bankruptcy Court for approval shall not constitute the Debtor's acceptance of the Bid. The Debtor will be deemed to have accepted the Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### B.    Acceptance of Bid From Successful Bidder

The Debtor presently intends to sell the Purchased Assets to the Successful Bidder, pursuant to the terms of the Successful Bid. The Debtor shall be bound by the Successful Bid only when such Bid has been approved by the Bankruptcy Court at the Sale Hearing.

Except as otherwise provided in the Successful Bid agreed to by the Debtor, all of the Debtor's right, title and interest in and to the Purchased Assets shall be sold free and clear of all liens, claims, encumbrances, and interests thereon and there against (except Permitted Encumbrances) (collectively, the "Transferred Liens"), with such Transferred Liens attaching

to the proceeds of the Purchased Assets with the same validity and priority as the Transferred Liens had on the Purchased Assets immediately prior to the Sale.

## VII.  The Sale Hearing

The Sale Hearing shall be held in the Bankruptcy Court on April 29, 2014 if the Stalking Horse Bidder is the Successful Bidder; provided that, if a Qualified Bidder other than the Stalking Horse Bidder is the Successful Bidder, then the Sale Hearing shall be held in the Bankruptcy Court on May 5, 2014. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than an announcement in open court at the Sale Hearing. Any objections to the approval of the sale of the Purchased Assets shall be argued at the Sale Hearing.

## VIII.  Closing with the Backup Bidder(s)

Without any further order of the Bankruptcy Court after Confirmation, if for any reason the Successful Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor's Auction Team, in its sole discretion after consultation with the Committee, the Backup Bidder will be deemed to have submitted the highest or best bid and the Debtor and the Backup Bidder are authorized to effect the Sale to the Backup Bidder as soon as is commercially reasonable. If the Stalking Horse is neither the Successful Bidder nor the Backup Bidder, but is a Qualified Bidder, and the Backup Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor's Auction Team, in its sole discretion after consultation with the Committee, the Debtor and the Stalking Horse are authorized to effect the Sale to the Stalking Horse.

Following the Sale, (i) if such failure to consummate the Sale is the result of a breach by the Successful Bidder or the Backup Bidder, the Successful Bidder or the Backup Bidder, as the case may be, shall be deemed to have forfeited its Deposit and the Debtor additionally reserves the right to seek all available damages from any defaulting Bidder, and (ii) if such failure to consummate the Sale is the result of a breach by the Debtor, the Successful Bidder or Backup Bidder, as the case may be, shall have no recourse against the Debtor other than for recovery of its deposit.

Dated: _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 14-30699-11 |
| BUFFET PARTNERS, L.P., et al. | § § | CHAPTER 11 |
| DEBTORS.[1] | § § § | Jointly Administered |

## NOTICE OF SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

**Please take notice that:**

1.      On February 4, 2014, (the "Petition Date"), the Debtors filed a voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"). The Debtors continue to manage and operate their business as a debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the chapter 11 case. A creditors' committee (the "UCC") has been appointed in this chapter 11 case (the "Chapter 11 Case") by the United States Trustee.

2.      **The Sale**. The Prepetition Secured Lenders are owed in excess of $39 million, including accrued and unpaid principal, interest, fees, costs and expenses. Pursuant to the Debtors' Motion for an Order (I) Approving the procedures for (a) the Sale of Substantially all Assets (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (c) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing Date for the Approval of the Sale (the "Sale Procedures Motion"), the Debtor is in the process of auctioning substantially all of its assets (the "Assets") to the Successful Bidder in the auction (the "Proposed Sale"). An entity formed by the Prepetition Secured Lenders is the stalking horse bidder ("Stalking Horse Bidder") pursuant to an asset purchase agreement (the "Purchase Agreement") for an amount less than the aggregate amount owed to the Prepetition Secured Lenders.

3.      **The Auction Process**. Pursuant to the Bankruptcy Court's Order (I) Approving the Procedures for (A) the Sale of Substantially All Assets (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing Date for the Approval of the Sale (the "Sale Procedures Order"), entered on April 21, 2014, an auction (the "Auction") for the sale of the Assets will be held on April 25, 2014, 10:00 a.m. (prevailing Central Time) (the "Auction Date") at the offices of Debtor's counsel, Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 75201. Further, pursuant to the Sale Procedures Motion, the deadline by which competing bids (each a

---

[1]      The Debtors in these chapter 11 cases are Buffet Partners, L.P. and Buffet G.P., Inc.

EXHIBIT B

"Competing Bid") to the Proposed Sale will be considered for the Auction is April 22, 2014, 5:00 p.m. (Prevailing Central Time) (the "Bid Deadline"), provided that such Competing Bids are submitted in writing and served, so as to be received by the Bid Deadline, on: (a) the Debtor's counsel, Baker & McKenzie LLP, 2001 Ross Avenue, Suite 2300, Dallas, Texas 775201 (Attn: John E. Mitchell, john.mitchell@bakermckenzie.com); (b) the counsel to the Prepetition Secured Lenders, Burr & Forman, 171 17th Street, NW, Suite 1100, Atlanta, Georgia 30363 (Attn: Erich Durlacher, edurlacher@burr.com); (c) counsel to the Official Committee of Unsecured Creditors (the "UCC"), Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com); and (d) Brookwood Associates, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305 (Attn: Amy V. Forrestal, af@brookwoodassociates.com) (collectively, the "Interest Notice Parties").

4.     **The Bid Procedures**. The Debtor Auction Team which consists of the Debtor's investment banker and chief executive officer, in consultation with the UCC, will consider Competing Bids from interested parties pursuant to the Auction process, provided that any such bid is in compliance with the Court approved Bid Procedures which are attached to the Sale Procedures Order and in general provide that such bid must: (i) be received in writing by the Interest Notice Parties on or before the Bid Deadline, (ii) includes an executed copy of an alternative purchase agreement that reflects any substantive changes to the Purchase Agreement, (iii) indicates the approximate amount of cash consideration the party is willing to pay for the Assets which amount must be no less than $22,900,000; (iv) includes written evidence of available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Debtor's Auction Team (in consultation with the UCC) may request; (v) includes all of the Assets proposed to be purchased by the Stalking Horse Bidder; (vi) assumes at least the same liabilities as the Stalking Horse Bidder proposes to assume; (vii) includes a copy of a board resolution or similar document demonstrating the authority of the bidding party to make a binding and irrevocable bid on the terms proposed; (viii) is not conditional on the outcome of any unperformed due diligence, the receipt of equity or debt financing, or the approval of any Board of Directors, shareholder, or other corporate approval; (ix) includes any pertinent factual information regarding the proposed bidder's operations that would assist the Debtor's Auction Team's analysis of issues (if any) arising with respect to any regulatory or statutory issues; (x) includes evidence regarding ability to adequately perform the terms of any executory contract sought to be assumed or assigned; and (xi) is reasonably likely to close no later than the date that the Proposed Sale with the Stalking Horse Bidder would close. In addition, the bid must include a deposit in the amount of $1,000,000, as described in the Bid Procedures.

5.     **The Sale Hearing**. A hearing (the "**Sale Hearing**") at which the Bankruptcy Court will consider approving the Proposed Sale to the Stalking Horse Bidder, if the Stalking Horse Bidder is the Successful Bidder, will be held on April 29, 2014 at 2:00 p.m. **(Prevailing Central time) at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Courtroom 3, 14**[th] **Floor, 1100 Commerce Street, Dallas, Texas 75242-1496** (the "Bankruptcy Court"), before the

Honorable Harlin D. Hale, United States Bankruptcy Judge.  All objections to the Proposed Sale must be filed on or before April 16, 2014 at 4:00 p.m. (Prevailing Central time) with the Bankruptcy Court, and served so as to be received by the Interest Notice Parties referenced in paragraph 3 above by such deadline.  If a Potential Bidder is the Successful Bidder, the Sale Hearing will be conducted on May 5, 2014 at 1:30 p.m., at the Bankruptcy Court, with objections due by 4:00 p.m. (Prevailing Central Time) on May 1, 2014.

Dated:  March 21, 2014                    Respectfully submitted,

**BAKER & McKENZIE LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201
Tel:  (214) 978-3000
Fax:  (214) 978-3099
Emails:  john.mitchell@bakermckenzie.com
            rosa.shirley@bakermckenzie.com

By:   */s/ John E. Mitchell*
        John E. Mitchell, SBT # 00797095
        Rosa A. Shirley, SBT #24056313

**ATTORNEYS FOR THE DEBTORS**