Kevin M. Lippman (TX Bar No. 00784479)
Deborah M. Perry (TX Bar No. 24002755)
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Telephone:  (214) 855-7500
Facsimile:  (214) 855-7584
Email:   klippman@munsch.com
Email:   dperry@munsch.com

and

Jeffrey N. Pomerantz (CA Bar No. 143717)         Bradford J. Sandler (DE Bar No. 4142)
Pachulski Stang Ziehl & Jones LLP                Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor             919 N. Market Street, 17th Floor
Los Angeles, CA 90067                            P.O. Box 8705
Telephone:  (310) 277-6910                       Wilmington, DE  19899-8705 (Courier 19801)
Facsimile:  (310) 201-0760                       Telephone:  (302) 652-4100
Email:   jpomerantz@pszjlaw.com                  Facsimile:  (302) 652-4400
                                                 Email: bsandler@pszjlaw.com

*[Proposed] Counsel to the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFET PARTNERS, L.P., et al, | § | Case No. 14-30699-11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

**JOINT MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING
COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET**

TO THE HONORABLE HARLIN D. HALE, U.S. BANKRUPTCY JUDGE:

COME NOW, the Official Committee of Unsecured Creditors (the "***Committee***") of Buffet Partners, L.P., *et al.* (the "***Debtors***") in the above-captioned jointly administered case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") and the Debtors, and hereby file this motion (the "***Motion***") for an order, pursuant to Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving a global compromise of controversies in accordance with that certain *Term Sheet* (the "**Term Sheet**") annexed hereto as **Exhibit A**. The settlement embodied in the Term Sheet is a global settlement of all claims and issues between (i) the Committee, on the one hand, and (ii) the Debtors, and (iii) the Debtors' prepetition first lien lenders, Chatham Credit Management III, LLC, Chatham Investment Fund QPIII, LLC, Chatham Investment Fund III, LLC, Chatham Capital Management II, LLC, Chatham Investment Fund QPII, LLC, and Chatham Investment Fund II, LLC (collectively, the "**Lenders**") (including, Chatham Credit Management III, LLC (or its designee) in such capacity, as the stalking horse buyer of substantially all of the Debtors' assets pursuant to the Sale Motion (as defined below) (in such capacity, the "**Potential Purchaser**," and together with the Lenders, the "**Secured Lender Parties**"), on the other hand, which resolves all of the Committee's actual and potential objections to, among other things, the Sale Motion (as defined below) and the Cash Collateral Motion (as defined below). As discussed below, the settlement embodied in the Term Sheet provides for the payment of allowed administrative expense claims and allowed priority claims, avoids potentially costly and lengthy litigation, and provides a funding source for distributions to general unsecured creditors. In support of the Motion, the Committee and Debtors submit as follows:

**Preliminary Statement**

1. Since its appointment in these cases, the Committee has sought to achieve a fair recovery for the general unsecured creditors, while also seeing the Debtors' going concern business survive in a form that will benefit not only the general unsecured creditors, but also the

proposed buyer of the Debtors' assets, the Debtors' estates, and the other creditors and stakeholders in these cases. Toward that end, the Committee and the Debtors have worked with the Secured Lender Parties to develop a path that provides for the payment of allowed administrative expense claims and allowed priority claims and leads to a modest recovery for unsecured creditors while at the same time providing for a prompt going concern sale of substantially all of the Debtors' assets. Approval of the Term Sheet will also resolve the Committee's potential objections and disputes regarding the sale process and the amount, enforceability, validity, priority, extent and non-avoidability of the claims and liens asserted by the Secured Lender Parties, thereby avoiding unnecessary litigation costs and delay while providing certainty regarding the sale of the Debtors' assets.

2.  In summary, the Term Sheet provides for the following: (a) the sale of substantially all of the Debtors' assets (subject to the separately-filed Sale Motion (as defined below) and approval by the Court); (b) the assumption by the Buyer of pre-closing allowed and unpaid administrative expense claims (excluding professional fees and expenses except as set forth in the Term Sheet); (c) the assumption by the Buyer of pre-closing allowed and unpaid priority claims; (d) the transfer of $500,000 by the Buyer to a trust created for the benefit of general unsecured creditors, or to a segregated account to be maintained by the Debtors pending the potential creation of such a trust; (e) the Buyer's acquisition of the Debtors' causes of action (inclusive of avoidance actions) as part of the sale of the Debtors' assets (with an agreement not to prosecute the avoidance actions except as a defense or offset to certain affirmative claims or causes of action); (f) the assumption of the outstanding fees and expenses of the Debtors' retained restructuring professionals allowed by the Court in an amount not to exceed $600,000 in the aggregate to the extent not already paid; (g) the assumption of the outstanding fees and

expenses of the Committee's retained restructuring professionals not to exceed $250,000 to the extent not already paid; and (h) validation of the Secured Lender Parties' liens and claims and related releases.

3. The Term Sheet is supported by all major constituents in these cases, is in the best interests of the Debtors' estates, and represents an outstanding result for all stakeholders under the circumstances. By its terms, subject to Court approval, the Term Sheet is a binding settlement on all parties thereto, without need for further documentation.

### Statement of Facts

A. **Commencement of Cases**

4. On February 4, 2014 (the "*Petition Date*"), the Debtors commenced their voluntary cases under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Northern District of Texas.

5. On February 11, 2014, the United States Trustee appointed the Committee to represent the interests of all unsecured creditors in these cases pursuant to section 1102 of the Bankruptcy Code. The members of the Committee are: (i) Houlounnn, LLC; (ii) PepsiCo; (iii) The Richards Group, Inc.; and (iv) Valassis. Michael "Scooter" Heath, a representative of The Richards Group, is the Chairperson of the Committee.

B. **Cash Collateral and Sale Motions**

6. On February 4, 2014, the Debtors filed their *Emergency Motion for Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection to the Prepetition Secured Lender* [Docket No. 10] (the "**Cash Collateral Motion**").

7. On February 5, 2014, the Court entered the *Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 55] (the "**First Interim Order**").

8. On February 27, 2014, the Court entered the *Second Interim Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 122] (the "**Second Interim Order**").

9. On March 10, 2014, the Court entered the *Third Interim Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 160] (the "**Third Interim Order**").

10. On March 14, 2014, the Debtors filed the *Expedited Motion for an Order (I) Approving the Procedures for (A) the Sale of Substantially All Assets (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing Date for the Approval of the Sale* [Docket No. 184] (the "**Sale Motion**"). By the Sale Motion, the Debtors contemplate holding an auction for the sale of the Debtors' assets with Chatham Credit Management III, LLC (or its designee) to serve as the stalking horse bidder pursuant to the terms of the asset purchase agreement attached to the Sale Motion as Exhibit A.

C. **The Term Sheet**

11. Immediately after the Committee's appointment, the Committee's proposed counsel and financial advisors conducted substantial diligence regarding the following: (a) review of the Debtors' business operations, (b) review of the Secured Lender Parties' liens and claims against the Debtors and estate assets, and (c) review of various restructuring alternatives. As part of their diligence, the Committee's advisors met and conferred with the

Debtors' and Secured Lender Parties' advisors. Based on the diligence conducted by the Committee, the Committee believes that a sale and the settlement described herein is the best means to achieve a resolution of the open issues, paying allowed administrative expense claims and allowed priority claims and providing a modest recovery for the holders of valid and allowed general unsecured claims. The Term Sheet was negotiated in good faith over a several week period and achieves these goals. The salient terms of the Term Sheet are summarized below:[1]

> Disposition of Estate Assets. Substantially all of the assets of the Debtors' estates, including the Debtors' cash, will be sold to the Potential Purchaser, or a third party overbidder (in such capacity, the "**Buyer**"), pursuant to Bankruptcy Code section 363 (the "**Sale**"), the terms and conditions of which shall be consistent with this term sheet and will be set forth more fully in an asset purchase agreement between the Debtors and the Buyer (the "**APA**"), which APA may be amended from time to time provided it is consistent with the Term Sheet. The Committee will support, and will not contest or oppose, the Sale or the procedures for the Sale proposed by the Debtors, including the Potential Purchaser's right to credit bid on the assets.
>
> Unencumbered Settlement Cash. On the closing date of the Sale ("*Closing Date*"), the Buyer shall transfer $500,000 (the "*Unencumbered Settlement Cash*"), free and clear of liens and claims of any person or entity, into a trust (the "*Trust*") for the benefit of general unsecured creditors and Trust-related expenses, provided that if the Trust is not created on or before the Closing Date, the Unencumbered Settlement Cash will be held by the Debtors' estates in a segregated account and in trust for the benefit of general unsecured creditors pending creation of the Trust or further order of the Bankruptcy Court.
>
> Purchase of Debtors' Claims. All causes of action that are property of the Debtors or of the Debtors' estates, including, without limitation, those arising under Chapter 5 of the Bankruptcy Code or any other state or federal law (collectively, the "*Debtor Claims*"), will be sold as part of the Sale pursuant to the APA; *provided, however*, that the Buyer agrees and covenants not to sue, prosecute, or otherwise assert, any Debtor Claims that arise under Chapter 5 of the Bankruptcy Code other than as a defense or offset to an affirmative claim or cause of action brought against the Buyer based on any conduct, claim, action, or inaction arising prior to the Closing Date. Nothing in the Term Sheet shall expand or create any third party rights or claims against the Buyer.
>
> Unpaid Claims. As set forth in the APA, the Buyer shall assume all allowed and unpaid administrative expenses as of the Closing Date (excluding professional fees and expenses), including (1) allowed claims arising under section 503(b)(9) of the

---

[1] In the event of any inconsistency between this summary and the Term Sheet, the Term Sheet shall control.

**JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET – Page 6**

Bankruptcy Code that remain unpaid as of the Closing; (2) allowed claims arising under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("PACA") that remain unpaid as of the Closing; (3) trade accounts payable of the Seller to third parties incurred by the Seller in the ordinary course of business after the Petition Date that remain unpaid prior to the Closing; and (4) all allowed priority claims arising under Section 507(a)(4),(5), and (8) of the Bankruptcy Code that remain unpaid as of the Closing; provided, however, that the Debtors and Buyer reserve the right to object, in good faith, to the allowance of such claims. The Buyer shall pay such allowed claims upon the later of the Closing, the entry of an order allowing such claims, or such other date mutually agreed upon by the Buyer and such claimant.

As set forth in the APA, the Buyer shall also assume the then outstanding unpaid fees and expenses of the Debtors' retained restructuring professionals that are incurred prior to Closing and allowed by the Bankruptcy Court, in an amount not to exceed $600,000 in the aggregate, reduced by amounts actually paid to such restructuring professionals prior to Closing.

The aggregate sum of the fees and expenses of the Committee's professionals (inclusive of expenses of members of the Committee) with respect to the Debtors' cases shall equal $250,000 (the "**Committee Expense Cash**"), which amount, as reduced by any payments made by the Debtors prior to the Closing Date, shall be funded on the Closing Date by the Buyer to the trust account of Committee's counsel. The Committee Expense Cash is inclusive of all amounts incurred or to be incurred by the Committee's professionals for the period prior to and following the Closing Date. The Committee Expense Cash may be allocated amongst the professionals (and members) of the Committee as determined by the Committee and its professionals. Neither the Debtors nor the Buyer shall be obligated to satisfy any amounts incurred by the Committee's professionals (or members) in excess of the Committee Expense Cash. The Buyer's payment of the Committee Expense Cash shall satisfy any and all obligations of Lenders under the Final Cash Collateral Order with respect to the "Carveout" for the Committee's professionals (and members).

Exit Mechanism. The Debtors and the Committee, in consultation with the Secured Lender Parties, will work in good faith to negotiate an appropriate exit strategy for these cases (*i.e.*, liquidation plan, conversion, or structured dismissal), subject to the limitations specified in the Term Sheet.

Treatment of Deficiency Claims. With respect to any deficiency claims of the Lenders remaining after the Closing Date, the Lenders agree that such claims shall receive no distribution from the Debtors' Unencumbered Settlement Cash.

Exculpation and Releases, Lien Validation, Sale Support. The Settlement Approval Order, and any order confirming a plan or providing for a structured dismissal of the Debtors' cases, will approve releases of the Secured Lender Parties by the Debtors' estates and the Committee, and exculpations of each of the Debtors, the Creditors' Committee, and the Secured Lender Parties, which releases and exculpations shall extend

to each such parties' respective officers, directors, managements, members, professionals, representatives and other customary released parties and be substantially in the form attached to the Term Sheet as Exhibit "A".

**D.     The Releases Set Forth in the Term Sheet**

12.    Exhibit A to the Term Sheet contains certain releases, exculpations and covenants not to sue (collectively, the "***Releases***").[2] The Releases include releases of the Pre-Petition Lender Released Parties and the Buyer Released Parties (as defined therein). The Debtors and the Committee support the Releases and jointly seek their approval in their entirety. Pursuant to the proposed order approving this Motion, the Releases made by and received by the Debtors' estates, the Pre-Petition Lender Released Parties and the Buyer Released Parties, bind the Debtors' estates and the Committee.

## Basis for the Relief Requested

13.    Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) in turn states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

14.    Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). The Supreme Court has recognized that "in administering reorganization proceedings in an economical and practical manner it will often be

---

[2] The Releases are set forth in full in Exhibit A of the Term Sheet. In the event of any inconsistency between statements in this Motion and Exhibit A of the Term Sheet, Exhibit A of the Term Sheet shall control.

**JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET – Page 8**

wise to arrange the settlement of claims in which there are substantial and reasonable doubts."

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (applying the former Bankruptcy Act).

    15.    In determining the fairness of a proposed compromise, the Court should:

> form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.

*TMT Trailer*, 390 U.S. at 414, 424-25.

    16.    The Fifth Circuit, has directed courts to consider the following three factors when assessing whether a settlement is fair and equitable and in the best interest of the estate:

> (i)     the probability of success in the litigation with due consideration for the uncertainty in law and fact;
>
> (ii)     the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and
>
> (iii)     all other factors bearing on the wisdom of compromise.

*Connecticut General Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania*

*Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd without opinion*, 8 F.3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

17. In relation to the last of the above three factors, the Fifth Circuit has identified two sub-factors to consider: (i) the best interest of creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length bargaining, and not fraud or collusion. *See Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997).

18. Approval of a compromise is within the "sound discretion" of the bankruptcy court. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). The bankruptcy court must determine whether the proposed compromise and the settlement are in the "best interests of the estate." *See In the Matter of Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989). The bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). The bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

**The Term Sheet Satisfies the Foster Mortgage Factors and Should Be
Approved Under Bankruptcy Rule 9019**

19. Approval of the Term Sheet is in the best interests of the estates because it will fully and finally resolve the pending and potential disputes among the Committee, the Debtors, and the Secured Lender Parties relating to the Sale and the stipulations and agreements regarding liens and claims treated under the interim cash collateral orders, which issues are still pending. In addition, the Term Sheet also ensures that the Debtors' estates will benefit by (a) the assumption of allowed administrative expense claims, (b) the assumption of allowed priority claims, (c) the Unencumbered Settlement Cash that will be used to provide a modest distribution to the holders of valid unsecured claims, and (d) the payment of certain fees incurred by estate professionals. While all of the applicable *Foster Mortgage* factors support approval of the Term Sheet, the Committee and Debtors believe that the benefit to the Debtors' estates is the most important factor that the Court should consider in determining whether to approve the Term Sheet under these particular facts and circumstances.

20. Unsecured creditors will benefit if the Term Sheet is approved. Specifically, the Buyer will (a) assume a significant amount of liabilities under the APA, (b) transfer the Unencumbered Settlement Cash ($500,000) to the Trust[3] for the exclusive benefit of the holders of allowed general unsecured claims, and (c)(i) purchase the Debtors' Causes of Action and Avoidance Actions under the APA, and (ii) agree not to prosecute the Avoidance Actions or any claims that are released under the Term Sheet, except in response to certain affirmative claims or causes of action. The distributions to the holders of valid unsecured claims

---

[3] If the Trust is not created at the time of the Closing, the Unencumbered Settlement Funds shall be held in a segregated account of the Debtors in trust exclusively for the benefit of holders of allowed general unsecured claims and Trust expenses.

**JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET – Page 11**

are further enhanced by the fact that the Lenders will not receive any distribution from the Debtors' Unencumbered Settlement Cash on account of any deficiency claim they may have.

21. The Term Sheet will benefit the Debtors' estates because the Buyer is assuming the payment of allowed administrative and priority claims.

22. The remaining *Foster Mortgage* factors support approval of the Term Sheet. Litigation among the Committee, the Debtors, and the Lenders over the amount, nature, enforceability, validity, priority, extent and non-avoidability of the Lenders' respective liens and claims would be complex, protracted and costly. The outcome of such litigation would be highly uncertain. Even if the Committee were able to prevail in challenging the amount, nature, enforceability, validity, priority or extent of the Secured Lender Parties' liens and claims pursuing such theories would likely not result in any recoveries for unsecured creditors in these cases, including because (a) the proceeds of any unencumbered assets would need to first be used to satisfy significant unpaid administrative expenses (which would not be satisfied absent the settlement), (b) the Lenders' respective deficiency claims would swamp the claims of other general unsecured creditors, (c) even if there were any assets that do not secure the Debtors' prepetition obligations to the Lenders, such assets secure the adequate protection claims of the Lenders, and (d) the nature and structure of the Sale contemplated by the APA would foreclose unsecured creditors from receiving any recovery on their claims in any event. The Term Sheet takes into account the Committee's views and fairly allocates value among all stakeholders.

23. In addition, the Term Sheet provides for the Committee's support of the Sale of the Debtors' assets without any litigation and provides certainty that unsecured creditors will receive some distributions and the payment of administrative expense claims and priority claims will occur pursuant to the APA, thereby benefiting the Debtors' estates. While the

ultimate result of any challenge of the Lenders' claims is currently unknown, all creditors of the Debtors would have to trade the certainty of the distributions contemplated under the Term Sheet for the uncertainty of whether they would receive any recoveries given the liens of the Lenders that encumber most of the Debtors' assets, as well as the cost and delays attendant to pursuing litigation to obtain any such recoveries.

24. Thus, the Committee and Debtors believe that the return to unsecured creditors will be maximized and expedited as a result of the Term Sheet, while the Debtors avoid protracted litigation of uncertain outcome that would act as a drain on their estates. It should also be noted that distributions to unsecured creditors are enhanced by the waiving of any recovery on any deficiency claims of the Lenders from the Debtors' Unencumbered Settlement Cash. Accordingly, the Term Sheet and the proposed compromises contemplated thereby satisfy the *Foster Mortgage* factors and should be approved.[4]

## Conclusion

25. The Committee and Debtors believe that the consideration to be paid to unsecured creditors set forth in the Term Sheet and summarized above is the best possible outcome for <u>all</u> unsecured creditors given the difficult economic circumstances of these chapter 11 cases and respectfully request that the Court approve the Term Sheet.

---

[4] To the extent Rule 6004(h) is applicable, the Debtors and the Committee seek waiver of the 14 day stay imposed by such rule.

**JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET – Page 13**

WHEREFORE, the Committee and the Debtors respectfully request that the Court grant the Motion, and grant such other and further relief as the Court may deem just and proper.

Dated: March 25, 2014    **MUNSCH HARDT KOPF & HARR, P.C**.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail: klippman@munsch.com
E-mail: dperry@munsch.com

By: /s/ Deborah M. Perry
Kevin M. Lippman
Texas Bar No. 00784479
Deborah M. Perry
Texas Bar No. 24002755

and

Jeffrey N. Pomerantz (CA Bar No. 143717)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com

Bradford J. Sandler (DE Bar No. 4142)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjlaw.com

**(PROPOSED) COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

and

**BAKER & MCKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Telephone: (214) 978-3037
Email: john.mitchell@bakermckenzie.com

By: /s/ John E. Mitchell (by permission (DMP))
    John E. Mitchell
    Texas Bar No. 00797095

**COUNSEL FOR DEBTORS**

**CERTIFICATE OF SERVICE**

On March 25, 2014, a true and correct copy of the foregoing Motion was served on (i) all parties entitled to ECF notification in the cases by electronic transmission, (ii) by e-mail transmission on all parties to the Master Service List [Docket No. 166] to the extent noted thereon, and (iii) all parties to the Master Service List [Docket No. 166] by First Class, U.S. Mail, postage prepaid.

    /s/ Deborah M. Perry
    Deborah M. Perry

MHDocs 5008620_1 14559.1