

U.S. BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 16, 2014**

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFET PARTNERS, L.P., et al, | § | Case No. 14-30699-11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

**ORDER GRANTING JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET, AS MODIFIED IN ACCORDANCE WITH THE COURT'S RULING**

CAME ON FOR HEARING on April 9, 2014 (the "*Hearing*"), the *Joint Motion of the Official Committee of Unsecured Creditors and the Debtors for Order Approving Compromise of Controversies in Accordance with the Term Sheet* [Docket No. 223] (the "*Motion*")[1], filed by the Official Committee of Unsecured Creditors (the "*Committee*") of the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") and the Debtors, whereby the Committee

---

[1] Capitalized terms not defined herein shall have the meanings used in the Motion.

**ORDER GRANTING JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS FOR ORDER APPROVING COMPROMISE OF CONTROVERSIES IN ACCORDANCE WITH THE TERM SHEET, AS MODIFIED IN ACCORDANCE WITH THE COURT'S RULING – Page 1**
775794-v1\DALDMS

and the Debtors sought entry of an order approving the Term Sheet in the form annexed as Exhibit A to the Motion and approval of the compromise of controversies between the Committee, on the one hand, and the Debtors, the Buyer and the Secured Lender Parties, on the other hand, pursuant to Bankruptcy Rule 9019; and the Court having considered the Motion, the Objection [Docket No. 245] to the Motion filed by the United States Trustee (the "*Objection*"), the evidence presented at the Hearing and the arguments of counsel finds that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) notice of the Motion and the Hearing was sufficient and proper; (d) the legal and factual bases set forth in the Motion, the evidence presented at the Hearing and the arguments of counsel establish just cause for the relief granted herein; and it appearing to the Court that the Motion should be approved, as modified herein for all of the reasons stated on the record at the Hearing, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED, as modified herein.

2. The Objection is DENIED.

3. The Term Sheet, attached hereto as Exhibit 1 (the "*Term Sheet*"), (including, without limitation, each and every (i) release; and (ii) covenant not to sue, each of the foregoing as set forth in Exhibit A thereto (collectively, the "*Release*"), which is incorporated herein by this reference, is approved in its entirety and shall be effective according to its terms as if set forth fully in this Order.

4. The Debtors are hereby authorized and directed to perform their obligations arising under the Term Sheet and this Order.

5. The Term Sheet may be amended without further Court order with the prior written consent of the Debtors, the Secured Lender Parties and the Committee so long as such amendment does not adversely affect the benefits provided to administrative claimants, priority claimants and unsecured creditors thereunder.

6. The Debtors, the Committee, and the Secured Lender Parties are authorized to take such steps as may be necessary or appropriate in order to implement the terms of the Term Sheet and this Order.

7. This Order and the Term Sheet shall be binding upon the parties referenced in the Term Sheet, any trustees appointed in these chapter 11 cases, any trustees appointed in any subsequent chapter 7 cases relating to the Debtors, and all other parties-in-interest in accordance with and subject to the terms of the Term Sheet.

8. Notwithstanding Bankruptcy Rule 6004(h) to the extent applicable, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

9. This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation of this Order.

# # # END OF ORDER # # #

BF DRAFT 4/9/2014

**Buffet Partners, L.P., et al.**

Term Sheet

April ___, 2014

This term sheet sets forth the terms of a settlement between the Settlement Parties (as specified below) and will be the basis for a motion brought by the Debtors and the Creditors' Committee to approve the settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "***Settlement Motion***"). The terms described in this term sheet will be embodied in, among other documents, an order approving the Settlement Motion, which order will be consistent with the terms set forth herein (the "***Settlement Approval Order***").

| | |
|---|---|
| ***Settlement Parties*** | Creditors' Committee:  The official committee of unsecured creditors appointed in the Debtors' cases.<br>Debtors:  Buffet Partners, L.P. and Buffet G.P., Inc.<br>Chatham:  Chatham Credit Management III, LLC, in its capacity as administrative agent for the lenders (collectively, the "***Lenders***"). |
| ***Estate Assets and Disposition Thereof*** | Substantially all of the assets of the Debtors' estates, including the Debtors' cash, will be sold to Chatham or its designee, or a third party overbidder (in such capacity, the "***Buyer***"), pursuant to Bankruptcy Code section 363 (the "***Sale***"), the terms and conditions of which shall be consistent with this term sheet and will be set forth more fully in an asset purchase agreement between the Debtors and the Buyer (the "***APA***"), which APA may be amended from time to time provided it is consistent with this term sheet.  The Creditors' Committee will support, and will not contest or oppose, the Sale or the procedures for the sale proposed by the Debtors currently set for hearing on March 19, 2014, including Chatham's right to credit bid on the assets.<br><br>On the closing date of the Sale (the "***Closing Date***"), the Buyer shall transfer $500,000 free and clear of liens and claims of any person or entity (the "***Unencumbered Settlement Cash***") into a trust (the "***Trust***") for the benefit of general unsecured creditors and Trust-related expenses, provided that if the Trust is not created on or before the Closing Date, the Unencumbered Settlement Cash will be held by the Debtors' estates in a segregated account and in trust for the benefit of general unsecured creditors pending creation of the Trust or further order of the Bankruptcy Court.<br><br>All causes of actions that are property of the Debtors or of the Debtors' estates, including, without limitation, those arising under Chapter 5 of the Bankruptcy Code or any other state or federal law |

**EXHIBIT 1**

| | |
|---|---|
| | (collectively, the "***Debtor Claims***") will be sold as part of the Sale pursuant to the APA; provided, however, that the Buyer agrees and covenants not to sue, prosecute, or otherwise assert, any Debtor Claims that arise under Chapter 5 of the Bankruptcy Code other than as a defense or offset to an affirmative claim or cause of action brought against the Buyer based on any conduct, claim, action, or inaction arising prior to the Closing Date. Nothing in this term sheet shall expand or create any third party rights or claims against Buyer.<br><br>For the avoidance of doubt, neither the Lenders nor the Buyer shall have any funding obligations with respect to the Trust or the Debtors' estates from and after the closing of the Sale except those expressly contemplated herein. |
| ***Unpaid Amounts & Budget – Wind down and professional fees*** | As set forth in the APA, the Buyer shall assume all allowed and unpaid administrative expenses as of the Closing Date (excluding professional fees and expenses), including (1) allowed claims arising under section 503(b)(9) of the Bankruptcy Code that remain unpaid as of the Closing; (2) allowed claims arising under and the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("PACA") that remain unpaid as of the Closing; (3) trade accounts payable of the Seller to third parties incurred by the Seller in the ordinary course of business after the Petition Date and remain unpaid prior to the Closing; and (4) all allowed priority claims arising under Section 507(a)(4),(5), and (8) of the Bankruptcy Code that remain unpaid as of the Closing; provided, however, that the Debtors and Buyer reserve the right to object, in good faith, to the allowance of such claims. The Buyer shall pay such allowed claims upon the later of the Closing, the entry of an order allowing such claims, or such other date mutually agreed upon by the Buyer and such claimant.<br><br>As set forth in the APA, the Buyer shall also assume the then outstanding unpaid fees and expenses of the Debtors' retained restructuring professionals that are incurred prior to Closing and allowed by the Bankruptcy Court, in an amount not to exceed $600,000 in the aggregate, reduced by amounts actually paid to such restructuring professionals prior to Closing.<br><br>The aggregate sum of the fees and expenses of the Creditors' Committee's professionals (inclusive of expenses of members of the Creditors' Committee) with respect to the Debtors' cases shall equal $250,000 (the "***Committee Expense Cash***"), which amount, as reduced by any payments made by the Debtors prior to the Closing Date, shall be funded on the Closing Date by the Buyer to |

2

| | |
|---|---|
| | the trust account of Creditors' Committee's counsel.  The Committee Expense Cash is inclusive of all amounts incurred or to be incurred by the Creditors' Committee's professionals for the period prior to and following the Closing Date.  The Committee Expense Cash may be allocated amongst the professionals (and members) of the Creditors' Committee as determined by the Creditors' Committee and its professionals.  Neither the Debtors nor the Buyer shall be obligated to satisfy any amounts incurred by the Creditors' Committee's professionals (or members) in excess of the Committee Expense Cash.  The Buyer's payment of the Committee Expense Cash shall satisfy any and all obligations of Lenders under the Final Cash Collateral Order with respect to the "Carveout" for the Committee's professionals (and members). |
| *Final Cash Collateral Order* | The Creditors' Committee will support, and will not contest or oppose, entry of a final cash collateral order in the form previously agreed upon by the parties (the "***Final Cash Collateral Order***"), and the Creditors' Committee shall not assert any "Challenge" as defined therein.  The Debtors intend to present the Final Cash Collateral Order for approval by the Bankruptcy Court at the earliest practicable date after the approval of this Term Sheet; provided, however, if the Bankruptcy Court does not approve all of the terms of this Term Sheet, the Parties shall be restored to their respective positions, status quo ante, with respect to the Challenge.  The Committee agrees to cease any of its investigation and preparation activities for challenging the validity, priority, and extent of Chatham's claims and liens against the Debtor and its assets, as well as any other claims it may assert against Chatham except any claims directly from Chatham's intentional breach of the Term Sheet, pending the Bankruptcy Court's approval of this Term Sheet. |
| *Exit Mechanism* | The Debtors and the Creditors' Committee will negotiate in good faith the appropriate exit strategy for these cases whether through confirmation of a liquidating plan, conversion, or a structured dismissal; provided, however, that no exit strategy shall be in any respect inconsistent with, or threaten, hinder, or prevent the implementation of, any terms of this term sheet, the APA, or the Final Cash Collateral Order.  Any order dismissing the Debtors' cases shall be in form and substance reasonably acceptable to Lenders and shall provide that notwithstanding the dismissal of the Debtors' cases under Section 349 of the Bankruptcy Code, all final orders, judgments, and decrees of the Bankruptcy Court entered in the Debtors' cases, including without limitation, the Sale Approval Order, Settlement Approval Order, and the Final Cash Collateral Order, shall survive and remain binding and in full force and effect |

3

| | |
|---|---|
| | following dismissal of the bankruptcy cases, and the Bankruptcy Court shall retain jurisdiction to enforce and support such final orders. |
| *Treatment of Deficiency Claims* | With respect to any deficiency claims of the Lenders remaining after the Closing Date, the Lenders agree that such claims shall receive no distributions from the Debtors' Unencumbered Settlement Cash. |
| *Releases* | The Settlement Approval Order, and any order confirming a plan or providing for a structured dismissal of the Debtors' cases, will approve releases of Chatham and the Buyer by the Debtors' estates and the Creditors' Committee, which releases shall extend to each such parties' respective officers, directors, managements, members, professionals, representatives and other customary released parties and be substantially in the form attached hereto as Exhibit "A". |
| *Implementation* | Each of the Parties shall use good faith and best efforts to obtain Bankruptcy Court approval of the terms of this Term Sheet on or before the date that the Bankruptcy Court enters an order approving the Sale. The Bankruptcy Court shall enter an order approving the Sale by no later than May 15, 2014. |

IN WITNESS WHEREOF, the parties hereto have caused this Term Sheet to be executed by their respective officers thereunto duly authorized, as of the date first written above.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF BUFFET PARTNERS, L.P. AND BUFFET G.P., INC.


By: _____

Name: _____

Title: Chairperson of Creditors' Committee


BUFFET PARTNERS, L.P.


By: _____

Name: _____

Title: _____


BUFFET G.P., INC.


By: _____

Name: _____

Title: _____


CHATHAM CREDIT MANAGEMENT III, LLC, in its capacity as administrative agents for the Lenders

By: Chatham Capital Holdings, Inc., its Manager


By: _____

Name: _____

Title: _____

# EXHIBIT "A"

# RELEASE

This RELEASE (this "Release") is made as of _____ ____, 2014, by and among (i) Buffet Partners, L.P., a Texas limited partnership (the "Seller") and Buffet G.P., Inc., a Texas corporation (the "GP," and together with the Seller, sometimes hereinafter referred to as the "Debtors"); (ii) Chatham Credit Management III, LLC, in its capacity as administrative agent for the Pre-Petition Lenders (defined herein) the "Agent"), and each of the Lenders identified in the Pre-Petition Financing (the "Pre-Petition Lenders"); (iii) Chatham Credit Management III, LLC and/or its designee, acting in its capacity as buyer ("Buyer"); and (iv) the Official Committee of Unsecured Creditors of the Sellers (the "Creditors' Committee").  Notwithstanding anything to the contrary contained herein, this Release does not affect any claims that may be asserted by any individual member of the Committee in its individual capacity.

WHEREAS, the Debtors are currently debtors in Chapter 11 proceedings (the "Bankruptcy Cases") being jointly administered in the case styled *In re Buffet Partners, L.P.,* United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 14-30699-11.

WHEREAS, this Release is being entered into in connection with (i) the Term Sheet, dated as of April ____, 2014, by and among the Creditors' Committee, the Debtors, the Pre-Petition Lenders, and Buyer (the "Settlement Term Sheet"), and (ii) that certain Asset Purchase Agreement, dated as of March 28, 2014, by and among Seller and the Buyer (the "Asset Purchase Agreement"; capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement).

NOW, THEREFORE, in consideration of the consideration provided in the Asset Purchase Agreement, the mutual covenants, agreements, promises and releases set forth herein, and for other good and valuable consideration, the parties hereto agree as follows:

1. Release of the Pre-Petition Lender Released Parties.

a. Effective as of, and subject to the occurrence of the entry of, the Order of the Bankruptcy Court approving the Settlement Term Sheet (the "Settlement Order") and the Closing Date, the Debtors, on behalf of themselves, their respective bankruptcy estates, and their respective employees, officers, managers, directors, representatives, agents, successors, assigns (excluding Buyer) and attorneys (whether acting as Seller or otherwise, each a "Debtor Party," and collectively, the "Debtor Parties") and the Creditors' Committee, on behalf of itself and its representatives, agents, successors, assigns and professionals (each a "Creditors' Committee Party," and collectively, the "Creditors' Committee Parties"), each hereby release, acquit and forever discharge the Agent, the Pre-Petition Lenders and each of their respective Affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equityholders, successors, predecessors and assigns (each a "Pre-Petition Lender Released Party," and collectively the "Pre-Petition Lender Released Parties"), from any and all claims, rights, demands, causes of action, suits, debts, obligations, liabilities, damages, losses, fees, costs and expenses (including attorneys' fees, costs and expenses), whether based on

federal, state, local, statutory or common law or any other Law, rule or regulation, of any kind, nature and/or description, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, actual or potential, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not asserted, threatened, alleged or liquidated, at law, equity or otherwise (collectively, "Claims"), that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of law, matter or cause occurring or arising prior to the Closing Date or attributable to such period, in each case which any of the Debtor Parties or Creditors' Committee Parties has had, now has, or may have in the future (including any Claims transferred to Buyer pursuant to the Asset Purchase Agreement) against any of the Pre-Petition Lender Released Parties in connection with or arising out of (i) that certain Second Amended and Restated Loan Agreement by and between Seller, as Borrower; Agent; and the Pre-Petition Lenders dated as of April 3, 2009 (together with any and all related documents, exhibits and/or amendments thereto, the "Loan Agreement"), any transactions contemplated thereby or any action or omission in connection therewith, (ii) Debtors or their businesses, and (iii) the Bankruptcy Cases (the foregoing release being the "Pre-Petition Lender Release"); provided, that the Pre-Petition Lender Release shall not include (x) Claims arising from the willful misconduct or fraud of the Pre-Petition Lender Released Parties as finally determined by a court of competent jurisdiction or (y) Claims in connection with or arising out of this Release, the Settlement Term Sheet, the Asset Purchase Agreement and the agreements entered into in connection with and/or otherwise contemplated by the Asset Purchase Agreement.

b.   It is the intention of the Debtor Parties and Creditors' Committee Parties in executing this Release that, upon the entry of the Settlement Order and the Closing Date, this Release shall be effective as a bar to each and every Claim mentioned or implied in Section 1(a), and each Debtor Party and Creditors' Committee Party hereby knowingly and voluntarily waives any and all such Claims. Each Debtor Party and Creditors' Committee Party expressly consents that this Release shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected Claims, demands, charges and causes of action (notwithstanding any state statute that expressly limits the effectiveness of a general release of the unknown, unsuspected and unanticipated Claims).

2.   Release of the Buyer Released Parties.

a.   Effective as of, and subject to the occurrence of, the entry of the Settlement Order and the Closing Date, each of the Debtor Parties and Creditors' Committee Parties hereby releases, acquits and forever discharges Buyer and each of its Affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equityholders, successors, predecessors and assigns (collectively, the "Buyer Released Parties" and together with the Pre-petition Lender Released Parties, the "Released Parties"), from any and all Claims, that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of Law, matter or cause occurring or arising prior to the Closing Date or attributable to such period, in each case which any of the Debtor Parties or Creditors' Committee Parties has had, now has, or may have in the future against any of the

2

Buyer Released Parties in connection with or arising out of (i) the Loan Agreement, any transactions contemplated under such agreement, or any action or omission in connection with such agreement; (ii) Debtors or their businesses; and (iii) the Bankruptcy Cases (the foregoing release being the "Buyer Release"); provided, that the Buyer Release shall not include (x) Claims arising from the willful misconduct or fraud of the Buyer Released Parties as finally determined by a court of competent jurisdiction or (y) Claims in connection with or arising out of this Release, the Settlement Term Sheet, the Asset Purchase Agreement and the agreements entered into in connection with and/or otherwise contemplated by, the Asset Purchase Agreement.

b. It is the intention of the Debtor Parties and Creditors' Committee Parties in executing this Release that, upon the entry of the Settlement Order and the Closing Date, this Release shall be effective as a bar to each and every Claim mentioned or implied in Section 2(a), and each Debtor Party and Creditors' Committee Parties hereby knowingly and voluntarily waives any and all such Claims. Each Debtor Party and Creditors' Committee Party expressly consents that this Release shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected Claims, demands, charges and causes of action (notwithstanding any state statute that expressly limits the effectiveness of a general release of the unknown, unsuspected and anticipated Claims).

3. Claims Transferred to Buyer Under Asset Purchase Agreement. Notwithstanding anything to the contrary in this Release, all of Debtors' Claims and causes of action, including Claims and causes of action arising under Chapter 5 of the Bankruptcy Code (whether or not asserted as of the Closing Date) and all recoveries and proceeds thereof shall be transferred to Buyer under the Asset Purchase Agreement; provided that, Buyer agrees and covenants not to sue, prosecute, or otherwise assert, any Debtor Claims that arise under Chapter 5 of the Bankruptcy Code other than as a defense or offset to an affirmative claim or cause of action brought against the Buyer based on any conduct, claim, action, or inaction arising prior to the Closing Date, which rights are expressly preserved, and not released, by Buyer.

4. Covenant Not to Sue. Each of the Debtor Parties and Creditors' Committee Parties hereby represents that it has not commenced or filed, and covenants that it will not commence or file, with any local, state or federal agency, court or arbitrator any complaints, charges, claims, lawsuits or grievances, or actions of any kind, whether civil, criminal or administrative, against any of the Released Parties with respect to any Claim released by it pursuant to this Release, and further represents that it has not assigned or transferred any Claim or any interest therein to any other person or entity other than as set forth in the Asset Purchase Agreement.

5. Intentionally Deleted.

6. Representation. In entering into this Release, each of the parties consulted with, and has been represented by, legal counsel and expressly disclaims any reliance on any representations, acts or omissions by any of the Released Parties and hereby agrees and acknowledges that the validity and effectiveness of the releases set forth above do not depend in any way on any such representations, acts and/or omissions or the accuracy, completeness or validity thereof.

3