

**U.S. BANKRUPTCY COURT**

**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**

**THE DATE OF ENTRY IS**

**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 12, 2014**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | **CASE NO. 14-30699-11** |
| **BUFFET PARTNERS, L.P., et al.** | § | |
| | § | **CHAPTER 11** |
| **DEBTORS.**[1] | § | |
| | § | **Jointly Administered** |
| | § | |

### ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

This matter having come before the Court upon the motion (the "Motion") of Buffet G.P., Inc. and Buffet Partners, L.P. (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order (I) approving the procedures (the "Sale Procedures") for (a) the sale of substantially all of the Debtor's assets (the

---

[1] The Debtors in these chapter 11 cases are Buffet Partners, L.P. and Buffet G.P., Inc.

776225-v8\DALDMS

"Sale") pursuant to that certain Asset Purchase Agreement, dated as of March 28, 2014, between the Debtor and Chatham Credit Management III, LLC (or its designee) (the "Purchaser"), a copy of which is attached hereto as Exhibit A (the "Purchase Agreement")[2] (the assets to be sold being more fully described in the Motion, and collectively defined in the Purchase Agreement, are hereinafter referred to as the "Acquired Assets"), free and clear of all liens, claims and encumbrances, other than Permitted Exceptions, (b) the assumption and assignment of certain executory contracts, and (c) the establishment of cure amounts, ((a) through (c) above collectively referred to herein as the "Transactions"), (II) setting a hearing date for the approval of the Sale (the "Sale Hearing") and (III) approving the form of notice of the Sale Hearing; and the Court having reviewed and considered the Motion and the Purchase Agreement, the objections thereto, if any, the arguments of counsel made, and the evidence adduced at the Sale Hearing, at which time all interested parties were offered an opportunity to be heard with respect to the Sale; and it appearing that the Sale is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and upon the record of the Sale Hearing and this Chapter 11 Case, and after due deliberation thereon, and good cause appearing therefore;

**THE COURT HEREBY FINDS, DETERMINES AND CONCLUDES THAT:[3]**

A.     **Sale Procedures Order**.  The Court entered an order on March 24, 2014 (Docket No. 216), granting certain of the relief requested in the Motion and setting the Sale Hearing to approve the Sale.

---

[2]     Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Purchase Agreement.

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

B.      **Jurisdiction and Venue**.   The Court has jurisdiction to authorize the Sale pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).  Venue of this Chapter 11 Case in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.      **Statutory Predicates**.   The statutory predicates for the relief granted herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

D.      **Notice**.   Notice of the Sale, including notice of the Sale Hearing (the "Sale Notice"), was transmitted to all parties who have previously expressed an interest in the Acquired Assets or who may have been interested in purchasing the Acquired Assets.

E.      **Opportunity to Object**.   A reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein has been given, in light of the circumstances, to all interested persons and entities.

F.      **Corporate Authority**.   The Debtor has the legal power and authority to convey all of its right, title and interest in and to the Acquired Assets.  The Debtor has (i) full power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and (ii) the necessary power and authority to consummate the Sale.  No consents or approvals, other than those expressly provided for in the Purchase Agreement or in the schedules thereto, are required for the Debtor to close the Sale.

G.      **Business Justification**.   Sound business reasons exist for the Sale.  Entry into the Purchase Agreement and consummation of the Transactions constitute the Debtor's exercise of sound business judgment and such acts are in the best interests of the Debtor, its estate, and all parties in interest.  The Court finds that the Debtor has articulated good and sufficient business

reasons justifying the Sale.  Such business reasons include, but are not limited to, the following: (i) the Purchase Agreement constitutes the highest and best offer for the Acquired Assets; (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going concern basis and avoid decline and devaluation of the Acquired Assets; and (iii) any plan would have likely yielded, at best, the same economic result (i.e., the sale of a substantial portion of the Debtor's assets creating a residual fund against which the Prepetition Secured Lenders would have secured claims).

H.      **Arm's Length Sale**.   The Purchase Agreement and the Transactions were negotiated, and have been and are undertaken, by the Debtor and Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Debtor and Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.  Moreover, neither the Debtor nor Purchaser engaged in any conduct that would cause or permit the Purchase Agreement, the consummation of the Transactions or the assumption and assignment of the Assumable Executory Contracts to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

I.      **Good Faith Purchaser**.   The Purchaser is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to all of the protections afforded thereby.

J.      **Credit Bid**.   The Prepetition Secured Lenders hold secured claims in, on and against the Debtor, its estate and property of the estate, arising in connection with the Prepetition Financing, including a claim for principal and accrued interest, in an amount of not less than $39 million (the "Prepetition Secured Claims").   Prior to the Closing, the Prepetition Secured

Lenders shall assign to Purchaser, if necessary, a portion of the Prepetition Secured Claims. The Purchaser shall use a portion of the Prepetition Secured Claims, aggregating at least $21,900,000 million, to credit bid, and such credit bid is valid and proper pursuant to the sale procedures set forth in the Motion and Bankruptcy Code sections 363(b) and 363(k) (the "Credit Bid").

K.  **Consideration**.  The Purchase Price is the highest, best and only offer received by the Debtor, and the Purchase Price constitutes reasonably equivalent value for the Acquired Assets under the Bankruptcy Code and other applicable law.  A sale of the Acquired Assets other than one free and clear of all liens, claims and encumbrances (other than Permitted Exceptions) would materially and adversely impact the Debtor's bankruptcy estate, would yield substantially less value for the Debtor's estate, with less certainty than the available alternatives and thus the alternative would be of substantially less benefit to the Debtor's estate.  Purchaser would not have entered into the Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Acquired Assets, including the assignment of the Executory Contracts, to Purchaser was not free and clear of all liens, claims and encumbrances (other than Permitted Exceptions), or if Purchaser would, or in the future could, be liable for any such liens, claims or encumbrances.  Therefore, the Sale free and clear of all liens, claims and encumbrances, other than Permitted Exceptions, as contemplated by the Purchase Agreement, is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtor and the indirect benefits of such Sale for the Debtor's employees, the Debtor's vendors and suppliers, and the public served, directly and indirectly, by the functions performed by the Debtor's employees and the Debtor's business.

L. **Free and Clear**. The Debtor may sell the Acquired Assets free and clear of all liens, claims and encumbrances (other than any Permitted Exceptions) because, with respect to each creditor asserting a lien, claim or encumbrance, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders, if any, of liens, claims or encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims or encumbrances who did object fall within one or more of the other subsections of section 363(f) Bankruptcy Code.

M. **Assumption of Executory Contracts**. The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign and sell certain of the Assumable Executory Contracts (the "Assumed Executory Contracts"), including certain unexpired real property leases (the "Assumed Unexpired Leases"), to Purchaser in connection with the consummation of the Sale, and the assumption, assignment, and sale of the Assumed Executory Contracts and the Assumed Unexpired Leases is in the best interests of the Debtor, its estate, its creditors, and all parties in interest. The Executory Contracts being assigned and sold to Purchaser are an integral part of the Acquired Assets being purchased by Purchaser, and accordingly, the assumption, assignment, and sale of the Assumed Executory Contracts and Assumed Unexpired Leases are reasonable and enhance the value of the Debtor's estate.

N. **Cure/Adequate Assurance**. The Debtor has filed with the Court and served on all non-debtor parties to all known Executory Contracts that the Debtor may assume and assign to the Purchaser a notice setting forth, among other things, all such known Executory Contracts and the Debtor's estimate of cure costs with respect to each such Executory Contract according to the Debtor's books and records (the "Cure Notice"). For purposes of this Order, and

notwithstanding anything to the contrary which may be contained in this Order, the Executory Contracts (including unexpired leases) identified on Schedule A hereto shall not be deemed to be Assumed Executory Contracts or Assumed Unexpired Leases, Acquired Assets or Purchased Assets and instead any assumption or rejection of leases and contracts on Schedule A or cure amounts related thereto shall only be by further order of this Court, and all objections related thereto are expressly reserved.  Purchaser has provided or will provide adequate assurance of cure of any default existing with respect to any of the Assumed Executory Contracts and Assumed Unexpired Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code.  Purchaser has provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of the assignment and assumption of any of the Assumed Executory Contracts and Assumed Unexpired Leases within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Purchaser has provided adequate assurance of its future performance of and under any of the Assumed Executory Contracts and Assumed Unexpired Leases, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

O.    **No Intentional Fraudulent Transfer**.  The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

P.    **Purchaser Not a Successor**.  Purchaser is not holding itself out to the public as a continuation of the Debtor.  The Sale and related Transactions are not and do not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtor and/or the Debtor's estate, there is not substantial continuity between Purchaser and the Debtor, there is no continuity of

enterprise between the Debtor and Purchaser, Purchaser is not a mere continuation of the Debtor or the Debtor's estate, and Purchaser does not constitute a successor to the Debtor or the Debtor's estate to the extent allowed under state law.

Q.    **Legal, Valid Transfer**.  The transfer of the Acquired Assets to Purchaser will be a legal, valid, and effective transfer of the Acquired Assets, and will vest Purchaser with all right, title, and interest of the Debtor to the Acquired Assets free and clear of all liens, claims and encumbrances, other than Permitted Exceptions, including, but not limited to all claims arising under doctrines of successor liability, to the extent allowed under state law.

R.    **Not a Sub Rosa Plan**.  The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of Debtor's creditors nor impermissibly dictates a liquidating plan for the Debtor.

S.    **Prompt Consummation**.  Time is of the essence in consummating the Sale. Accordingly, to maximize the value of the Debtor's assets, it is essential that the sale of the Acquired Assets occur as soon as practicable.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006.  Approval of the Purchase Agreement and assumption, assignment, and sale of the Assumed Executory Contracts and Assumed Unexpired Leases, and consummation of the Sale of the Acquired Assets at this time are in the best interests of the Debtor, its creditors, its estate, and all parties in interest.

Based upon all of the foregoing, and after due deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES THAT:**

I.      **SALE OF THE ACQUIRED ASSETS**

1.      Any objections to the entry of this Order or the relief granted herein that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, hereby are denied and overruled on the merits with prejudice.

2.      The Purchase Agreement (including without limitation the Credit Bid) and the Sale of the Acquired Assets to Purchaser, are hereby approved and authorized in all respects.

3.      The consideration provided by Purchaser for the Acquired Assets under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed on or awarded against any party in interest in these bankruptcy cases under section 363(n) or any other provision, of the Bankruptcy Code.

4.      The Sale and the Transactions are undertaken by Purchaser in good faith. Purchaser is a purchaser in good faith of the Acquired Assets as that term is used in section 363(m) of the Bankruptcy Code, and Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption, assignment, and sale of any of the Assumed Executory Contracts and Assumed Unexpired Leases), unless such authorization is duly stayed pending such appeal.

5.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, upon the Closing Date, under the Purchase Agreement, the Acquired Assets shall be transferred to Purchaser free and clear of (a) all liens, claims and encumbrances, other than Permitted Exceptions, (b) any restriction on the use, voting, transfer, receipt of income or other exercise of

any attributes of ownership of the Acquired Assets and (c) any claim, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, arising under doctrines of successor liability, to the extent allowed under state law.

6.      Except as expressly provided in the Purchase Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor, to the extent allowed under state law, or otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Purchase Agreement, or any liabilities calculable by reference to the Debtor or its operations or the Acquired Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor liability, to the extent allowed under state law, or otherwise, against Purchaser or any affiliate of Purchaser.

7.      The Debtor is authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the Sale (including, without limitation, to convey to Purchaser any and all of the Acquired Assets intended to be conveyed pursuant to the Purchase Agreement) and the Closing of the Transactions in accordance with the Purchase Agreement and this Order; and (b) perform, consummate, implement and close fully the Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement.  The Debtor and Purchaser shall have no obligation to proceed with the Closing of the Purchase Agreement until all conditions precedent to their obligations to do so as set forth in the Purchase Agreement have been satisfied or waived.  The obligations of Purchaser under the Purchase Agreement to consummate the transactions

contemplated therein at the Closing are subject to the satisfaction of the conditions precedent set forth in Article VI of the Purchase Agreement on the Closing Date.

8.     Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Acquired Assets and the Assumed Executory Contracts and Assumed Unexpired Leases among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Acquired Assets or the rights under any of the Assumed Executory Contracts or Assumed Unexpired Leases to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Purchase Agreement, and the Debtor shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.

## II.     ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

9.     The Debtor is hereby authorized, pursuant to the Purchase Agreement and in accordance with sections 105(a), 363, 365(b)(1) and (f)(2) of the Bankruptcy Code, to: (a) assume the Assumed Executory Contracts and Assumed Unexpired Leases; (b) sell, assign and transfer to Purchaser each of the Assumed Executory Contracts and Assumed Unexpired Leases designated by Purchaser at Closing in each case free and clear of all liens, claims and encumbrances (other than Permitted Exceptions, to the extent applicable); and (c) execute and deliver to Purchaser such assignment documents as may be necessary to sell, assign and transfer the Assumed Executory Contracts and Assumed Unexpired Leases.  Within three (3) Business Days after Closing, the Debtor shall file with the Court a list of the Executory Contracts comprising the Assumed Executory Contracts and Assumed Unexpired Leases that are actually assumed by the Debtor and assigned to the Purchaser.  Notwithstanding anything to the contrary

which may be contained herein, all rights of the counterparties to the Executory Contracts set forth on Schedule A to oppose assumption and/or assumption and assignment and/or rejection, and / or the proposed cure amounts as it relates to the assumption, assignment, or rejection of such Executory Contracts are expressly reserved.

10.    The Assumed Executory Contracts and Assumed Unexpired Leases, upon assignment and sale to Purchaser, shall be deemed valid and binding, in full force and effect in accordance with their terms.  Upon assignment and sale to Purchaser pursuant to the Purchase Agreement, and in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of the Debtor in, to or under each Assumed Executory Contract and Assumed Unexpired Lease.

11.    All defaults or other obligations of the Debtor under the Assumed Executory Contracts and Assumed Unexpired Leases arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the payment or other satisfaction of the amounts (the "Cure Amounts") set forth in the Cure Notice or as otherwise agreed to by the parties thereto.  Unless a non-debtor party to an Executory Contract that may become an Assumed Executory Contract or an Assumed Unexpired Lease filed an Assumption Objection with respect to the Cure Amount by the Cure Objection Deadline, (i) such Cure Amount shall be controlling at the amount set forth in the applicable Cure Notice and the non-debtor party to such Assumed Executory Contract or Assumed Unexpired Lease is hereby forever bound by such Cure Amount; (ii) payment of such Cure Amount shall constitute a cure of all defaults under such Executory Contract; (iii) payment of such Cure Amount shall constitute consent to the assignment of such Executory Contract to Purchaser; and (iv) such Cure

Amount is not subject to further dispute or audit, including based on performance prior to the assumption, assignment and sale thereof, irrespective of whether such Assumed Executory Contract or Assumed Unexpired Lease contains an audit or similar clause.

12.     Any Assumption Objections (as to the Executory Contracts identified in Schedule A) not resolved at the Sale Hearing shall be resolved at such other hearing scheduled on the Assumption Objection that is reasonably acceptable to Purchaser, Debtor and Assumption Objection party.  With respect to any Executory Contract to which an Assumption Objection is filed, the Executory Contract shall not become an Assumed Executory Contract or Assumed Unexpired Lease until (i) the date on which the Assumption Objection is consensually resolved by the parties or an order of the Court, and (ii) the Court approves assumption of such Executory Contract.  On the date upon which any Executory Contract becomes an Assumed Executory Contract or an Assumed Unexpired Lease, Purchaser shall assume and undertake to pay, perform and discharge when due or required to be performed all of the Debtor's obligations under such Assumed Executory Contract or Assumed Unexpired Lease.

13.     Purchaser shall pay or otherwise satisfy the Cure Amounts as soon as reasonably practicable following the date upon which any Executory Contract or Unexpired Lease becomes an Assumed Executory Contract or an Assumed Unexpired Lease as a condition to the assumption and assignment of such Executory Contract.

14.     Upon the assumption and assignment of an Assumed Executory Contract or Assumed Unexpired Lease, each non-Debtor party to such Assumed Executory Contract or Assumed Unexpired Lease is hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser or the Acquired Assets any default, additional amounts or other claims existing as of the date of such assumption and assignment related to such Assumed

Executory Contract or Assumed Unexpired Lease, whether declared or undeclared or known or unknown, and such non-Debtor parties to an Assumed Executory Contract or Assumed Unexpired Lease are also forever barred, estopped, and permanently enjoined from asserting against Purchaser any counterclaim, defense or setoff, or any other claim, lien or interest, asserted or assertable against the Debtor related to such Assumed Executory Contract or Assumed Unexpired Lease.

15.     There shall be no rent accelerations, assignment fees, increases or any other fees charged or chargeable to Purchaser as a result of the assumption, assignment and sale of the Assumed Executory Contracts and Assumed Unexpired Leases.  Any provisions in any Assumed Executory Contract or Assumed Unexpired Lease that prohibit or condition the assignment of such contract or lease, allow the party to such contract or lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such contract or lease, constitute unenforceable anti-assignment provisions, and are void and of no force and effect.  The validity of the assumption, assignment and sale of the Assumed Executory Contracts and Assumed Unexpired Leases to Purchaser shall not be affected by any existing dispute between the Debtor and any non-Debtor party to such contracts or leases.  Any party that may have had the right to consent to the assignment of its Executory Contract is determined to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

16.     The designation of an agreement as an Assumed Executory Contract or Assumed Unexpired Lease shall not be a determination that such agreement is an executory contract within the meaning of section 365 of the Bankruptcy Code.

### III.    LIMITATIONS ON LIABILITY AND RELEASE OF ENCUMBRANCES

17.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.   Except as set forth in the Purchase Agreement, no brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions.

18.    Upon the Closing, (a) pursuant to the terms of the Purchase Agreement, the Debtor is hereby authorized to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Acquired Assets to Purchaser free and clear of any and all liens, claims and encumbrances, other than Permitted Exceptions, and (b) except as otherwise expressly provided in the Purchase Agreement, all liens, claims and encumbrances, other than Permitted Exceptions, shall be and hereby are released, terminated and discharged as to Purchaser and the Acquired Assets.

19.    Upon the Closing, and except as otherwise expressly provided in the Purchase Agreement, Purchaser shall not be liable for any claims against, and liabilities and obligations of, the Debtor or any of the Debtor's predecessors or affiliates.   Without limiting the generality of the foregoing, (a) other than as specifically set forth in the Purchase Agreement, Purchaser shall have no liability or obligation (x) to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or any other payment to employees of the Debtor, or (y) in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which the Debtor is a party (including, without limitation, liabilities or obligations arising from or related to the rejection or

other termination of any such plan, program agreement or benefit), and (b) other than as specifically set forth in the Purchase Agreement, Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against Purchaser any claims arising from or relating to such employee benefit, agreement, plan or program.

20.    Any and all notices, if any, required to be given to Debtor's employees pursuant to the Worker Adjustment and Retraining Adjustment Act (the "WARN Act"), or any similar federal or state law, shall be the sole responsibility and obligation of the Debtor, and Purchaser shall have no responsibility or liability therefore.

21.    Purchaser shall not be deemed a successor of or to the Debtor or the Debtor's estate with respect to any liens, claims and encumbrances (other than Permitted Exceptions) against the Debtor or the Acquired Assets, to the extent allowed under state law, and Purchaser shall not be liable in any way for any such liens, claims and encumbrances (other than Permitted Exceptions) including, without limitation, the Excluded Assets.  Upon Closing the Sale, all creditors, employees and equityholders of the Debtor are permanently and forever barred, restrained and enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Purchaser or the Acquired Assets on account of any of the liens, claims and encumbrances, other than Permitted Exceptions, or (b) asserting any claims or enforcing remedies under any theory of successor liability, to the extent allowed under state law, *de facto* merger, substantial continuity or similar theory.

22.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to Purchaser, on the Closing Date pursuant to the terms of the Purchase Agreement.

23.     This Order is and shall be (a) effective as a determination that, upon Closing, all liens, claims and encumbrances (other than Permitted Exceptions) existing as to the Acquired Assets conveyed to Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets conveyed to Purchaser.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded liens, claims and encumbrances (other than Permitted Exceptions) against the Acquired Assets from their records, official and otherwise.

24.     If any person or entity that has filed statements or other documents or agreements evidencing liens, claims and encumbrances (other than Permitted Exceptions) on or in the Acquired Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of all such liens, claims or encumbrances, the Debtor or Purchaser are hereby

authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

25.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

26.     Any and all Acquired Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtor shall be transferred to Purchaser free and clear of liens, claims and encumbrances, other than and Permitted Exceptions.

27.     On the Closing Date, each active employee who becomes an employee of the Purchaser (each an "Affected Employee") and who has an account balance under the 401(k) Plan maintained by the Debtor prior to the Closing Date (the "401(k) Plan") shall be 100% vested in such account effective at the Closing Date, notwithstanding any vesting schedule otherwise provided under the 401(k) Plan. Within 180 days following the Closing Date, Purchaser shall establish a defined contribution plan and trust intended to qualify under Section 401(a) and Section 501(a) of the Internal Revenue Code (the "New Furr's Plan"). Promptly following the establishment of the New Furr's Plan, Debtor shall direct the trustee of the 401(k) Plan to transfer directly from the trust established under the 401(k) Plan to the trust established under the New Furr's Plan an amount of assets equal to the aggregate account balances under the 401(k) Plan of all Affected Employees, valued as of the day immediately preceding the date of transfer. Upon such transfer, the New Furr's Plan shall assume all liabilities for accrued benefits under the 401(k) Plan in respect of Affected Employees and the 401(k) Plan shall be relieved of

all such liabilities.  Assets shall be transferred in cash with the exception that outstanding loans of Affected Employees from the 401(k) Plan shall be transferred in-kind.  Pending such transfer, Debtor shall maintain the 401(k) Plan accounts of the Affected Employees on the same basis as other former employees of Debtor.  The New Furr's Plan will (i) provide that the Affected Employees are 100% vested in the amounts transferred from the 401(k) Plan (and any subsequent investment earnings on such amounts), (ii) accommodate the in-kind transfer of the outstanding loans and honor such loans in accordance with their terms, and (iii) provide for such other benefits, rights and features as required in order to satisfy Internal Revenue Code Section 411(d)(6).  The parties shall cooperate in the filing of the documents required by the transfer of assets and liabilities described in this paragraph 27.

## IV.    VALIDITY OF PREPETITION LIENS

28.    The obligations of and claims against the Debtor or its estate under or arising from the Prepetition Financing (the "Prepetition Obligations") shall constitute the legal valid and binding obligations of the Debtor and its estate.  No portion of the Prepetition Obligations shall be subject to avoidance, recharacterization, subordination or recovery pursuant the Bankruptcy Code or applicable non-bankruptcy law.

29.    The Debtor and its bankruptcy estate shall forever release any claims, counterclaims, causes of action, defenses, set-offs and challenges to the validity, enforceability, priority or amount of the claims, liens and security interests granted for the benefit of the Prepetition Secured Lenders whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Lenders, and their respective affiliates, agents, officers, directors, employees, attorneys, and advisors with respect to the Prepetition Obligations.

## V.    USE OF PROCEEDS AND SATISFACTION OF PREPETITION SECURED CLAIMS

30.    Upon the Closing, the Prepetition Obligations shall be deemed to be satisfied in an amount equal to the amount of such Prepetition Obligations used in connection with the Credit Bid.  Upon Closing, the liens on the Acquired Assets granted under the Prepetition Financing to secure the Prepetition Obligations shall be deemed released and the Prepetition Secured Lenders (as defined in the Motion) shall take all reasonable actions to confirm removal of any such liens.  Any portion of the Prepetition Obligations that is not used as part of the Credit Bid and any liens on assets (other than the Acquired Assets) granted under the Prepetition Financing and related security agreements to secure the Prepetition Obligations shall not be affected by this Order or the Closing.

## VI.    RESOLUTIONS OF OBJECTIONS

31.    Resolution of Informal Objection of State of Texas.  Debtor shall timely file final sales tax and franchise tax returns as required by applicable state law and by 28 U.S.C. §§ 959(b) and 960.

32.    Resolution of Objection of Certain Local Tax Authorities [Docket Nos. 197, 283 and 286].  Notwithstanding anything else in this Order, any ad valorem taxes plus accrued statutory interest related to the Purchased Assets that are currently due and owing (including any delinquent taxes) shall be paid at Closing.  The Purchased Assets shall be sold subject to the liens for ad valorem taxes which have been incurred but for which bills have not yet been received or which are not yet due (the "Current Taxes"); liability for these Current Taxes shall be assumed and paid by the Purchaser in the ordinary course of business

33.     Resolution of Objection of Boston & Mays, LLC [Docket No. 242].

Debtors and Boston and Mays, LLC have resolved this objection and agree that Debtors paid

certain amounts to Boston and Mays, LLC for the February 2014 and March 2014 CAM amounts

as post petition obligations.  Debtors and Boston and Mays, LLC further agree that the amounts

listed on the Cure Notice for February 2014 rent and January 2014 CAM are correct.

**VII.     ADDITIONAL PROVISIONS**

34.     This Order and the Purchase Agreement shall be binding in all respects

upon all creditors and interestholders of the Debtor, all non-Debtor parties to the Assumed

Executory Contracts and Assumed Unexpired Leases, all successors and assigns of the Debtor

and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other

fiduciaries appointed in the Debtor's bankruptcy case or upon a conversion to chapter 7 under

the Bankruptcy Code, and the Purchase Agreement and related documents shall not be subject to

rejection or avoidance under any circumstances.

35.     The Purchase Agreement may be modified, amended, or supplemented by

the parties thereto, in a writing signed by the parties thereto, and in accordance with the terms

thereof, without further order of the Court, provided that any such modification, amendment or

supplement does not have a material adverse effect on the Debtor's estate.

36.     Nothing contained in any order entered in the above-captioned bankruptcy

case subsequent to entry of this Order, nor in any chapter 11 plan confirmed in this Chapter 11

Case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms

of this Order.

37.     This Order shall be effective immediately upon entry, and any stay of

orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the

Bankruptcy Code or Bankruptcy Rules shall not apply, is expressly lifted and this Order is immediately effective and enforceable.

38. The provisions of this Order are nonseverable and mutually dependent.

39. The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety.

40. To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court (a) to allow Purchaser to give the Debtor any notice provided for in the Purchase Agreement, and (b) to allow Purchaser to take any and all actions permitted by the Purchase Agreement.

41. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit relating to the operation of the Acquired Assets sold, transferred or conveyed to Purchaser on account of the filing or pendency of this Chapter 11 Case or the consummation of the Sale.

42. The transfer of the Acquired Assets pursuant to the Sale is a transfer pursuant to section 1146(a) of the Bankruptcy Code, and accordingly, the "issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(a).

43. This Court retains jurisdiction, even after the closing of this Chapter 11 Case, to: (a) interpret, implement and enforce the terms and provisions of this Order (including

the injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder; (b) protect Purchaser, or any of the Acquired Assets, from and against any of the liens, claims or encumbrances; (c) compel delivery of all Acquired Assets to Purchaser; and (d) resolve any disputes arising under or related to the Purchase Agreement, the Sale or the Transactions, or Purchaser's peaceful use and enjoyment of the Acquired Assets.

# # # END OF ORDER # # #

## SCHEDULE A
## EXECUTORY CONTRACTS TO BE ASSUMED OR REJECTED BY FURTHER COURT ORDER

All Executory Contracts subject to the following objections:

| Objection | Docket No. |
|---|---|
| *Inland Diversified Dallas Wheatland, L.L.C.'s Objection to Debtor's Expedited Motion for an Order (I) Approving the Procedures for (A) the Sale of Substantially all Assets (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing for the Approval of the Sale*, filed by Inland Diversified Dallas Wheatland, L.L.C. | 201 |
| *San Juan Plaza Partners, LP's Joinder in Objection to Debtor's Expedited Motion for an Order (I) Approving the Procedures for (A) the Sale of Substantially all Assets (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing for the Approval of the Sale*, filed by San Juan Plaza Partners | 204 |
| *Objection of National Retail Properties to the Debtors' Expedited Motion to Approve Sale Procedures for the Sale of Substantially all of the Debtors' Assets*, filed by National Retail Properties, Inc. | 207 |
| *Objection of Consolidated Edison Solutions, Inc. to the Proposed Cure Amount*, filed by Consolidated Edison Solutions, Inc. | 260 |
| *Limited Objections of Hume Investment Advisors, LLC and Hume Arizona Holdings LLC to the Sale Motion*, filed by Hume Investment Advisors, LLC and Hume Arizona Holdings LLC | 271 |
| *Objection of Arthur N. Rupe Foundation to the Proposed Cure Amount*, filed by Arthur N. Rupe Foundation | 276 |
| *Limited Objections of The Richards Group, Inc. to the Sale Motion*, filed by The Richards Group, Inc. | 277 |
| *Limited Objection of Bottling Group, LLC to Cure Notice and Proposed Assumption and Assignment of Executory Contracts*, filed by Bottling Group, LLC | 280 |
| *Objection of PACCAR Financial Corp. to the Debtors' Proposed Assumption and Assignment of "Tractor Lease,"* filed by PACCAR Financial Corp. | 282 |
| *505 Cordova, LLC's Objection to Cure Notice and Proposed Assumption and Assignment of Real Property Lease (Furr's Store #116 Santa Fe, NM)*, filed by 505 Cordova, LLC | 288 |
| *BRE/DP TX LLC's Objection to Cure Claim*, filed by BRE/DP TX LLC | 289 |
| *Objection to Proposed Cure Amount*, filed by ARC CAFEUSA001, LLC | 292 |

| Objection | Docket No. |
|---|---|
| *Inland Diversified Dallas Wheatland, L.L.C.'s Objection to Debtor's Expedited Motion for an Order (I) Approving the Procedures for (A) the Sale of Substantially all Assets (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing for the Approval of the Sale*, filed by Inland Diversified Dallas Wheatland, L.L.C. | 294 |
| *San151NNN, LLC's Objection to Cure Notice and Proposed Assumption and Assignment of Real Property Lease*, filed by San151NNN, LLC | 295 |
| *National Retail Properties' (I) Objection to the Debtors' (A) Proposed Assumption and Assignment of Leases to Stalking Horse Bidder or Its Designee, (B) Proposed Cured Amounts, and (II) Demand for Security Required Pursuant to 11 U.S.C. 365(l)*, filed by National Retail Properties, Inc. | 296 |
| *Objection of N3 335 Plano TX, LLC to Proposed Cure Amount*, filed by N3 335 Plano TX, LLC | 297 |
| *Inland Diversified Dallas Wheatland, L.L.C.'s Supplement to Its Objection to Debtor's Expedited Motion for an Order (I) Approving the Procedures for (A) the Sale of Substantially all Assets (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (C) the Establishment of Cure Amounts, (II) Approving Form of Notice and (III) Setting a Hearing for the Approval of the Sale*, filed by Inland Diversified Dallas Wheatland, L.L.C. | 310 |
| *Objection of Las Palmas Riocan, L.P, as Successors to A.D.D. Holdings, L.P. to Amended Cure Notice*, filed by Las Palmas Riocan, L.P, as Successors to A.D.D. Holdings, L.P. | 314 |
| *Amended Objection to Cure Notice and Proposed Assumption and Assignment of Real Property Lease*, filed by San151NNN, LLC | 330 |
| *Objection to Proposed Assumption and Assignment of Real Property Lease*, filed by San Juan Associates. | 343 |
| *BRE/DP TX LLC's Supplement to its Objection to Cure Claim*, filed by BRE/DP TX LLC | 347 |

Prepared and submitted by:

**BAKER & McKENZIE LLP**

<u>/s/ *John E. Mitchell*    </u>
John Mitchell
State Bar No. 24056313
Rosa A. Shirley
State Bar No. 24056313
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099
Email:  john.mitchell@bakermckenzie.com
Email:  rosa.shirley@bakermckenzie.com

**ATTORNEYS FOR THE DEBTORS**