

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 23, 2014**

_____
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| BUFFET PARTNERS, L.P., et al. § | CASE NO. 14-30699-HDH-11 |
| § | |
| Debtors. § | |
| § | |
| § | |
| § | |

### RULING ON MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASES FOLLOWING SALE AND GRANTING RELATED RELIEF

This case presents the issue of whether a bankruptcy court can approve a structured dismissal of a chapter 11 case, instead of conversion or forcing the parties to confirm a plan, when dismissal is what the parties want and is in the interests of creditors.

CASE HISTORY

The Debtors in this case, Buffet Partners, L.P., owned and operated a buffet-style restaurant known as Furr's in the United States. On February 4, 2014, the Debtors filed this

1

chapter 11 bankruptcy case.  On February 11, 2014, the United States Trustee ("UST") appointed The Official Committee of Unsecured Creditors ("Committee") to represent the interests of all the unsecured creditors in this case.  On March 14, 2014, the Debtors filed a motion to approve the sale of substantially all of the assets of the Debtors under 11 U.S.C. § 363.  On May 12, 2014, this court approved the Sale Order [Docket No. 364] of substantially all of the Debtors' assets to Chatham Credit Management III, LLC ("Chatham") as the stalking horse bidder. Debtors, the Committee, and other parties, including the UST, were represented by good and respected counsel.  Unlike some large chapter 11 cases, this case has gone relatively smoothly.

After the appointment of the Committee, substantial due diligence was completed regarding the Debtors' business, the liens and claims against the Debtors' assets and estate, and various restructuring alternatives.  The Committee and Debtors proposed a joint motion ("Settlement Motion") to resolve the open issues in the case, pay the allowed administrative claims and allowed priority claims, and provide a meaningful recovery for the allowed general unsecured creditors.  Under the Settlement Motion: (1) all assets of the Debtors will be sold to Chatham or a third-party overbidder pursuant to the Sale Motion with support of the Committee, including all chapter 5 causes of action, but the buyer agrees not to prosecute these claims and only use them as a defense or to offset any claims brought against the buyer, (2) the buyer will pay $500,000 into a trust for the benefit of the unsecured creditors and the expenses of the trust, (3) the buyer assumes all the unpaid administrative expenses, excluding professional fees, as of the closing, (4) the buyer assumes the Debtors' unpaid professionals' fees and expenses in an amount not to exceed $600,000, (5) the aggregate amount of the Committee's fees are capped at $250,000, (6) the Committee will support the entry of a final cash collateral order, (7) Chatham

2

agrees it will not receive any distribution on account of its unsecured deficiency claim, and (8) Chatham, the Debtors, and the Committee agree to exchange releases in favor of each other.

The Settlement Motion was noticed out and the only objection received was from the UST.  The matter was tried and this court approved the Settlement Motion on April 16, 2014.

A public auction for substantially all of the Debtors' assets was held on April 25, 2014.  Chatham, as the stalking horse, had the winning bid at the auction.[1]  There now remains a fixed sum of money to be distributed.  On June 19, 2014, the Debtors and the Committee filed a joint motion to dismiss the chapter 11 cases following the sale.  The United States Trustee was the only party to object.

Under the terms of the Dismissal Motion, each of the chapter 11 cases will be dismissed upon certification that: (1) the Committee has completed its reconciliation process, (2) all UST fees attributable to the Debtors have been paid in full, (3) the Debtors have disbursed funds to general unsecured creditors pursuant to a schedule filed with this court, and (4) this court has entered orders with respect to final fee applications.  Despite 11 U.S.C. § 349, all prior orders of this court entered in the chapter 11 cases shall remain in effect and will survive the dismissal.  The Debtors are authorized to take appropriate action to wind up and dissolve as corporate entities under applicable state law without any further approval of the board of directors, shareholders, or any other party.  This court shall retain jurisdiction to review and approve the fees and expenses of the Debtors' and the Committee's professionals.  This court shall also retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or relating to the interpretation or implementation of the dismissal order and any other order entered in the chapter 11 cases.

---

[1] It should be noted that Chatham later sold the assets of the Debtors after the auction to a third party.

## THE LAW OR LACK THEREOF

Not much law, statutory or otherwise, exists regarding structured dismissals of this type. However, 11 U.S.C. § 1112(b) certainly contemplates that a dismissal may be granted when it is in the interests of creditors. Specifically, that section gives the court the option to convert or dismiss a chapter 11 case, "whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). As noted by *Collier on Bankruptcy*, ¶ 1112.04[5][b], Congress established chapter 11 to create an accommodating forum for a negotiated resolution of the case. *See* H. Rep. No. 595, 95th Cong. 1st Sess. 5 (1997) (stating that Congress intended the process to allow "greater protection for debtors, creditors, and the public interest.").

However, this process is not perfect, and accommodating every interest and issue in a chapter 11 bankruptcy is not always possible. The Fifth Circuit has remarked, "when there is no reasonable likelihood that the statutory objective of reorganization can be realized . . . then the . . . statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interests of creditors, the intended beneficiaries." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 373 (5th Cir. 1987) (*en banc*), *aff'd*, 484 U.S. 365 (1988). Courts are charged with determining whether a conversion or dismissal is in the best interests of the creditors and the estate. There is no clear test to determine which is preferable, but:

> Section 1112(b)'s requirement that a court must examine the best interests of the estate, as well as the best interests of the creditors, strikes that balance. The best interests of the creditors test addresses the interests of the creditor body as a whole. It is inevitable that different creditors, even if similarly situated, will fare differently outside of bankruptcy. Therefore, the best interests of creditors test focuses on the interest of the entire creditor body; it does not focus on individual creditor interests. The interests of individual creditors are protected by the requirement that a court examine the best interests of the estate. The focus of that test is upon the economic value of the debtor; it compares the economic value of the debtor in a converted case to its value after dismissal. *In re Staff Inv. Co.*, 146

4

>    B.R. 256 (Bankr. E.D. Cal. 1992) ("The element of the best interest of the estate
>    focuses upon whether the economic value of the estate is greater inside or outside
>    of bankruptcy. The estate is defined in terms of interests in property."). A
>    bankruptcy court cannot insure that all creditors will make a pro-rata recovery of
>    their debts after dismissal of a bankruptcy case. But, when a court determines that
>    a debtor's economic value is likely to be greater by dismissing the case rather than
>    converting it, the court maximizes the opportunity of individual creditors to
>    recover their claims.

*In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006). The UST in this case has moved for either a conversion of this case to chapter 7, or, in the alternative, requiring that a chapter 11 plan be confirmed and implemented. In this court's judgment, both of these alternatives would add significant and unnecessary time and expense. In truth, in the present case, there is not much in the way of assets left to be administered. As noted by the *In re OptInRealBig.com* court, the economic value of the Debtor in this case will be served by dismissing the case, rather than converting it. Converting this case to chapter 7 would interfere with prompt and efficient payment to creditors, a primary goal of chapter 11. The parties with the skin in the game do not wish to prolong the distribution of funds to creditors by a conversion to chapter 7, which undoubtedly will do just that. Nor do those parties want to go through the time and expense of a plan, which will cause the pool of money left to be greatly diminished.

On a smaller scale, structured dismissals occur regularly in this and other bankruptcy courts. Often the parties enter the case on the eve of foreclosure, work out their differences through a sale or giveback of property, and the parties enter an agreement submitted to this court for approval that results in the dismissal of the case. This court begins its look at deals struck in this court with the eye that "it's not my money." If appropriate notice is given and the process is fair and does not illegally or unfairly trample on the rights of parties, the proposal should be approved.

## SOME GUIDANCE FROM THE CIRCUIT

Despite the court's deferential starting point, parties do not have carte blanche to enter into any settlement they choose.  It is certainly true that the Fifth Circuit has established parameters in the settlement context to guide bankruptcy courts.  First, it is well-settled in the Fifth Circuit that a court may only approve a settlement or compromise when such is "fair and equitable."  *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984).  A settlement is only fair and equitable in the context of a reorganization when "senior interests are entitled to full priority over junior ones."  *Id.* (internal citations omitted).  No junior interests in the present case are given priority over any senior interests.  Thus, the proposed settlement does not violate the "fair and equitable" rule.  Second, debtors in this circuit are not allowed to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets."  *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983).  Although certain aspects of this dismissal are "structured," it does not rise to the level of a *sub rosa* plan.  Third, the absolute priority rule provides that a plan must "not discriminate unfairly, and" must be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).  No party with an economic stake objects to the proposal, likely because the alternatives would reduce their dividend.  There are no non-consenting creditors in the present case.  Most administrative claims have been satisfied by the sale and we are basically down to fee applications and unsecured claims.  The proposed structured dismissal appears fair and equitable.  While the proposed dismissal does have certain plan aspects, it does not cut off the rights of any parties without giving them the chance to voice an objection and it does not violate the absolute

priority rule.  Therefore, this sort of structured dismissal is well within the parameters established by the Fifth Circuit and the Bankruptcy Code.

It is important to emphasize that not one party with an economic stake in the case has objected to the dismissal in this manner.  While this fact is not outcome determinative, it is still worthy of consideration.  All of the following parties affirmatively assent to the proposed dismissal: the Debtor, the Lender, and the Committee, which represents a large portion of the unsecured debt.  The UST is the sole objecting party.  This court does note that the UST is well within its rights to file the objection.  The Bankruptcy Code gives thee UST standing.  *See* 11 U.S.C. § 1109(b).  In fact, this court looks to the UST to raise issues to cause it to stop and completely consider a matter even when no creditor objects.

## CONCLUSION

11 U.S.C. §§ 1112(b) and 105(a) provide this court with the requisite authority to fashion the dismissal order that the parties seek.  Although this process is not explicitly spelled out in § 1112(b), it is clearly within the sphere of authority Congress intended to grant to bankruptcy courts in the context of dismissing chapter 11 cases.  This dismissal, which all of the economically-interested parties support, is in the best interests of the creditors and the estate.  For the following reasons, the proposed dismissal is hereby **GRANTED**.

###END OF RULING###